TRACY L. WILKISON
United States Attorney
THOMAS D. COKER
Assistant United States Attorney
Chief, Tax Division
GAVIN L. GREENE (Cal. Bar No. 230807)
Assistant United States Attorney
     Federal Building, Suite 7211
     300 North Los Angeles Street
     Los Angeles, California 90012
     Telephone: (213) 894-4600
     Facsimile: (213) 894-0115
     E-mail: Gavin.Greene@usdoj.gov

Attorneys for the United States of America

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>    v.<br><br>Denise Dimacale, et al.,<br><br>    Defendants.<br><hr>And related Cross and Counterclaim Actions. | Case No. 2:21-cv-06012-CBM-RAO<br><br>Notice of Motion and Motion for Summary Judgment; Memorandum of Points and Authorities; Declarations<br><br>Date: Tuesday, July 19, 2022<br>Time: 10:00 a.m.<br>Courtroom: 8D<br>Location: First Street Courthouse<br>350 West First Street<br>Los Angeles, California |

PLEASE TAKE NOTICE that at the above captioned date and time, the United States of America will and hereby does make the following motion. Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, the United States moves this Court for summary judgment to foreclose the tax liability of Denise Dimacale for tax year 1996 against the property located at 1794 Port Tiffin Circle in Newport Beach, California, held in the name of NDC Qualified Personal Residence Trust.

1

As grounds for this motion, the United States submits that there is no genuine issue as to any material fact, and the United States is entitled to summary adjudication in its favor as a matter of law.

This motion is based upon this Notice of Motion, accompanying Memorandum of Points and Authorities and declarations filed concurrently, the pleadings and papers on file herein, and such other oral and documentary evidence as may be presented at the hearing on this matter.

This motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on December 15, 2021.

Lien priority has previously been established with the New Residential Mortgage Loan Trust 2020-2 (formerly held by Saxon Mortgage), DLJ Mortgage Capital, Inc (formerly held by The CIT Group/Consumer Finance, Inc.), and the State of California Franchise Tax Board. ECF document numbers 72 and 76. Default has been entered against Midland Funding. ECF document number 74.

Respectfully submitted,

TRACY L. WILKISON
United States Attorney
THOMAS D. COKER
Assistant United States Attorney
Chief, Tax Division

Dated: June 21, 2022

/s/
GAVIN GREENE
Assistant United States Attorney
Attorneys for the United States of America

# Contents

I. Introduction ................................................................................. 1

II. Statement of Facts........................................................................ 2

    A. FTC Judgment Against the Dimacales for $1.7 million ................... 2

    B. Formation of the Trust ............................................................. 2

    C. IRS asserted an additional tax liability for tax year 1996 and the Dimacales filed a petition in Tax Court........................................ 3

    D. Mortgage application with Kastlepoint Mortgage........................... 4

    E. Mortgage of $850,000 from Saxon to Refinance the Property .......... 4

    F. CIT Loan for $100,000 Line of Credit ....................................... 5

    G. Stipulated Decision in Tax Court............................................... 5

    H. Transfer Back to Trust............................................................. 6

    I. Assessment of Income Tax Liability for Tax Year 1996 ................. 6

    J. Tax Liabilities Reduced to Judgment ......................................... 6

    K. Re-Recorded NFTL................................................................ 7

    L. Balance Due from Denise Dimacale ........................................... 7

III. Statement of Issues....................................................................... 8

IV. Law and Analysis ........................................................................ 8

    A. Standard for Summary Judgment and Burden of Proof .................. 8

    B. First Claim for Relief: Foreclosure of Federal Tax Liens Against Real Property ......................................................................... 9

        Assessment of a tax liability creates a tax lien that attaches to all property and rights to property owned by the taxpayer................................................................................ 9

        Nominee Overview ................................................................ 10

        Nominee under California law.................................................... 11

        Factors demonstrating that the Trust held the property as a nominee for Denise Dimacale in this case............................ 12

        The United States is entitled to foreclose on the Property ......... 15

    C. Second Claim for Relief: Set Aside Fraudulent Transfer ............... 16

i

Property transferred to hinder, delay, or defraud the IRS ......... 16

Property transferred for less than fair value and Denise
   Dimacale should have known that she would not be
   able to pay her liability to the IRS ..................................... 18

The United States is entitled to foreclose on the Property ......... 19

V. Conclusion ................................................................................. 20

**CASES**

*Aquilino v. United States*, 363 U.S. 509 (1960) ............................................. 11

*Caligiuri v. Commissioner*, 549 F.2d 1155 (8th Cir. 1977)...................... 12, 17

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)............................................... 8

*Criner v. Commissioner*, T.C. Memo. 2003-328 ............................................. 9

*Drye v. United States*, 528 U.S. 49 (1999)................................................... 11

*Estate of Schuler v. Commissioner*, 282 F.3d 575 (8th Cir. 2002)................ 12

*Fourth Inv. LP v. United States*, 720 F.3d 1058 (9th Cir. 2013) ............ 10, 11

*G.M. Leasing Corp. v. United States*, 429 U.S. 338 (1977)........................ 9, 15

*Liodas v. Sahadi*, 19 Cal. 3d 278, 137 Cal. Rptr. 635 (1977) ....................... 17

*Luciano-Salas v. Commissioner*, 2014 WL 3908147 (T.C. Aug. 11, 2014).... 15

*Menick v. Goldy*, 131 Cal. App. 2d 542 (1955) ............................................ 17

*Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95 (9th Cir. 1983)8

*Parth v. Pomona Valley Hosp. Med. Ctr.*, 630 F.3d 794 (9th Cir. 2010) ......... 8

*Prompt Staffing, Inc. v. United States*, 321 F. Supp. 3d 1157 (C.D. Cal. 2018)10

*Rivera v. Philip Morris, Inc.*, 395 F.3d 1142 (9th Cir. 2005)........................... 9

*Spotts v. United States*, 429 F.3d 248 (6th Cir. 2005) ................................... 12

*Towe Antique Ford Found. v. IRS*, 999 F.2d 1387 (9th Cir. 1993)............... 12

*United States v. Craft*, 535 U.S. 274 (2002)................................................. 10

*United States v. Miller Bros. Constr. Co.*, 505 F.2d 1031 (10th Cir. 1974)9

*United States v. Nat'l Bank of Commerce*, 472 U.S. 713 (1985)...................... 9

*United States v. Rodgers*, 461 U.S. 677 (1983) ............................................. 15

*Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054 (9th Cir. 2002) ............. 9

**STATUTES**

26 U.S.C. § 163(a)......................................................................................... 15

26 U.S.C. § 6065 .......................................................................................... 15

26 U.S.C. § 6213(a) ................................................................................. 13

26 U.S.C. § 6321 ....................................................................................... 9

26 U.S.C. § 6322 ....................................................................................... 9

26 U.S.C. § 7403 ..................................................................................... 15

Cal. Civ. Code § 3439.04(a)(1) ............................................................. 16

Cal. Civ. Code § 3439.04(a)(2)(B) ................................................. 16, 19

Cal. Civ. Code § 3439.04(b) ................................................................. 17

Cal. Civ. Code § 3439.07(a)(1) ............................................................. 16

**REGULATIONS**

26 C.F.R. § 1.163–1(b) ......................................................................... 15

**RULES**

Fed. R. Civ. P. 56(a) ............................................................................... 8

Fed. R. Civ. P. 56(e) ............................................................................... 8

## Memorandum of Points and Authorities

### I. Introduction

In 1997, after Denise Dimacale (Dimacale) was ordered to pay the Federal Trade Commission over $1,700,000 to settle charges of operating a pyramid scheme, Dimacale transferred her residence to a Trust that she created, and installed her husband's aunt, Felicima Reyes, as the trustee. The transfer occurred mere months before Dimacale filed her federal income tax return for 1996 that understated her income tax liability by over $600,000. After transferring the subject property to the Trust, Dimacale continued living at the property and paying all the expenses.

The IRS audited Dimacale for tax year 1996, determined that she understated her tax liability, and sent her a statutory notice of deficiency. In 2002, Dimacale filed a petition with the United States Tax Court to challenge the proposed deficiency. In the Tax Court proceeding, Dimacale ultimately agreed that the deficiency asserted by the IRS was substantially correct.

In the fourth quarter of 2002, Dimacale: affirmed to banks that she owned the subject property; transferred the subject property from the Trust to herself as an individual; refinanced the property and cashed out approximately $300,000 in equity; and then transferred the property back to the Trust.

Between March and April of 2003: the property was transferred from the Trust to Dimacale; a line of credit was secured against the property for an additional $100,000; Dimacale stipulated to entry of a Decision in Tax Court; and she transferred the property back to the Trust with herself as the Trustee. The Trustee was then changed in 2004 to Felicima Reyes, and in 2006 to Dimacale's daughter, Nicole Dimacale.

1

When Dimacale's tax liability for tax year 1996 was assessed, it created a tax lien that attached to all her property and rights to property. The Trust holds the subject property merely as the nominee of Denise Dimacale, so the tax lien attaches to the property. Alternatively, the transfer of the property after the Tax Court Decision, from Denise Dimacale to the Trust, was a fraudulent transfer. In any event, the tax lien attaches to the property and should be foreclosed to pay the outstanding tax liability of Denise Dimacale.

## II. Statement of Facts

Denise and Daniel Dimacale (collectively "the Dimacales") have been married to each other since 1983. Statement of Undisputed Facts (SUF) 1. On June 3, 1996, the Dimacales purchased real property located at 1794 Port Tiffin Circle in Newport Beach, California (the subject Property). SUF 2. The Property was purchased for $888,000 and initially had a mortgage of $577,500. SUF 3.

**A. FTC Judgment Against the Dimacales for $1.7 million**

Denise Dimacale was an owner, Secretary, and director of a business known as World Class Network, Inc. (WCN). SUF 4. Daniel Dimacale was co-owner of WCN and the Chairman of the Board of Directors. SUF 5. On February 28, 1997, the Federal Trade Commission (FTC) brought suit against WCN, Daniel Dimacale, Denise Dimacale, and others in the case of *Federal Trade Commission v. World Class Network, Inc. et al.* SUF 6. On May 6, 1997, the district court entered judgment against the Dimacales in the amount of $1,702,000. SUF 7.

**B. Formation of the Trust**

Three months after the $1.7 million judgment was entered against them, on August 12, 1997, the Dimacales formed the NDC Qualified Personal Residence Trust (the Trust). SUF 8. On August 20, 1997, a Grant Deed was recorded transferring the Property from the Dimacales to

2

Felicisima Reyes, as trustee of the Trust. SUF 9. Felicisima Reyes is the aunt of Daniel Dimacale. SUF 10.

From the date the Trust was formed to the present, the Dimacales have had the right, rent free, to the exclusive use, possession, and enjoyment of the Property. SUF 11. From the date the Trust was formed to the present, the Dimacales paid utilities, maintenance, ordinary repairs and improvements, insurance, and taxes associated with the Property. SUF 12. The Trust has never had a bank account and has not engaged in any financial transactions. SUF 13.

For tax years 2016 through 2020, the Dimacales claimed the home mortgage interest deduction on Schedule A of their U.S. Individual Income Tax Returns in the amount of $44,470 for 2016, $50,482 for 2017, $49,372 for 2018, $51,572 for 2019, and $40,714 for 2020 (SUF 14-18).

**C. IRS asserted an additional tax liability for tax year 1996 and the Dimacales filed a petition in Tax Court**

On October 17, 1997, the Dimacales filed their joint U.S. Individual Income Tax Return (Form 1040) for tax year 1996. SUF 19. They reported taxable income of $315,960, and a tax liability of $105,280. SUF 20-21. They would later admit that they understated their taxable income by $1,596,219 and underreported their tax liability by $637,361. SUF 22-23.

On November 30, 2001, The IRS issued a statutory notice of income tax deficiency to the Dimacales for tax years 1996 and 1997, and on March 13, 2002, they filed a petition in the United States Tax Court for a redetermination of their tax liabilities. SUF 24-25.

On July 18, 2002, a Quitclaim Deed was recorded transferring the Property from Felicisima Reyes, as trustee of the Trust, to Denise Dimacale as trustee for the Trust. SUF 26.

3

**D. Mortgage application with Kastlepoint Mortgage**

Two months later, in September of 2002, Denise Dimacale applied for a loan with Kastlepoint Mortgage Inc. SUF 27. Denise Dimacale was listed as the borrower, her present address was listed as the Property securing the loan, and a box was checked indicating that she had owned the Property for six years. SUF 28-30. Assets were listed totaling $1,504,200 (including $1,400,000 for the value of the Property) and Total Liabilities of $641,626, including the existing mortgage on the Property of $537,112. SUF 31-32. Denise Dimacale signed the September Loan Application on October 2, 2002. SUF 33.[1]

**E. Mortgage of $850,000 from Saxon to Refinance the Property**

On December 12, 2002, Denise Dimacale signed a Uniform Residential Loan Application (Saxon Loan Application) to apply for a loan of $850,000. SUF 34. Denise Dimacale was listed as the borrower, her present address was listed as the Property, and a box was checked indicating that she had owned the Property for six years. SUF 35-37. The only asset listed was the Property valued at $1,400,000. SUF 38. Liabilities were listed totaling $77,152 in revolving credit and installment liabilities. SUF 39. However, in the section titled "Details of Transaction", $754,773 was listed for the refinance, including debts to be paid off. SUF 40.

The loan for $850,000 was funded by Saxon Mortgage. SUF 41. On December 19, 2002, a Grant Deed was recorded transferring the Property from Denise Dimacale, as trustee of the Trust, to Denise Dimacale as her sole and separate Property. SUF 42. The same day, a Deed of Trust was recorded for the benefit of Saxon Mortgage, secured by the Property. SUF 43.

---

[1] Even though Denise Dimacale did not ultimately get a loan with Kastlepoint Mortgage, the application indicates that she believed that she was the owner of the Property, and it provides information as to her assets and liabilities at the time.

On December 20, 2002, a Grant Deed was recorded granting the Property from Denise Dimacale to Denise Dimacale, as trustee for the Trust. SUF 44.

**F. CIT Loan for $100,000 Line of Credit**

Even though the property was held by Denise Dimacale, as trustee for the Trust, on or about December 20, 2002, the Dimacales signed a Uniform Residential Loan Application (CIT Loan Application) to apply for a $100,000 line of credit with The CIT Group. SUF 45.

Denise Dimacale was listed as the borrower, her present address was listed as the Property, and a box was checked indicating that she owned the Property for 6 years. SUF 46-48. Daniel Dimacale was listed as the co-borrower. SUF 49. In the section titled "Liabilities" the total unpaid balance was $910,171 (including the Saxon Mortgage of $850,00). SUF 50. In the section titled "Assets", the only assets listed were two Washington Mutual accounts totaling $6,200. SUF 51. The section titled "Schedule of Real Estate Owned" listed the Property. SUF 52.

On January 6, 2003, an Interspousal Transfer Grant Deed was recorded purporting to transfer any interest of Daniel Dimacale to Denise Dimacale. SUF 53. On March 14, 2003, a Grant Deed was recorded transferring the Property from Denise Dimacale, as trustee for the Trust, to the Dimacales, husband and wife as joint tenants. SUF 54. On March 14, 2003, a Deed of Trust was recorded for the benefit of The CIT Group/Consumer Finance, Inc., secured by the Property. SUF 55. The Deed of Trust recorded March 14, 2003, for the benefit of The CIT Group/Consumer Finance, Inc., secured a line of credit on the Property in favor of the Dimacles in the amount of $100,000. SUF 56.

**G. Stipulated Decision in Tax Court**

On April 1, 2003, the Tax Court entered a stipulated Decision for tax year 1996 which established a deficiency in the Dimacales' 1996 income

taxes in the amount of $637,361.88 plus an accuracy-related penalty pursuant to 26 U.S.C. § 6662(a) in the amount of $76,483.42. SUF 57-58.

**H. Transfer Back to Trust**

On April 23, 2003, a Quitclaim Deed was recorded transferring the Property from the Dimacales to Denise Dimacale, as her sole and separate property. SUF 59. The same day, a Quitclaim Deed was recorded transferring the Property from Denise Dimacale to Denise Dimacale, as trustee of the Trust. SUF 60. The transferring of the Property on April 23, 2003, from Denise Dimacale the Trust was for no consideration. SUF 61-62. At the time, Denise Dimacale had income tax liabilities (including penalties and interest) of over $700,000. SUF 63.

**I. Assessment of Income Tax Liability for Tax Year 1996**

On September 8, 2003, the IRS assessed the additional tax and penalty for tax year 1996 pursuant to the stipulated Tax Court Decision. SUF 64. On April 6, 2004, the IRS recorded a notice of federal tax lien (NFTL) against the Dimacales with the Orange County Recorder's Office for tax year 1996. SUF 65. On October 12, 2004, a Quitclaim Deed was recorded transferring the Property from Denise Dimacale, as trustee of the Trust, to Felicisima Reyes, as trustee of the Trust. SUF 66.

**J. Tax Liabilities Reduced to Judgment**

On September 21, 2012, the United States filed suit against Denise Dimacale to reduce tax assessments to judgment, case number 8:12-cv-12-1601-CBM, document number 1. SUF 67. On January 6, 2014, the Court entered an order against Denise Dimacale which reduced to judgment her income tax liability for tax year 1996 in the amount of $1,901,763.57 as of September 18, 2012. SUF 68. On January 30, 2014, the Court entered judgment, which erroneously listed tax year 2006 instead of 1996 (document number 92). SUF 69. The United States recorded an abstract of judgment

based on the Judgment. SUF 70. On July 17, 2014, the Court entered an Amended Judgment that correctly referenced tax year 1996. SUF 71. On July 7, 2015, the United States recorded an abstract of judgment based on the Amended Judgment. SUF 72.

**K. Re-Recorded NFTL**

The notice of federal tax lien recorded April 6, 2004, provided that "unless notice of the lien is refiled by [October 8, 2013] this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a)." SUF 73. The IRS failed to refile the NFTL by October 8, 2013. SUF 74. On September 16, 2015, the IRS recorded a Revocation of Certificate of Release of Federal Tax Lien regarding the Dimacales for tax year 1996. SUF 75.

On October 15, 2015, a Quitclaim Deed was recorded transferring the Property from Felicisima Reyes, as trustee of the Trust to Nicole Dimacale as trustee of the Trust. SUF 77.

On September 13, 2018, the IRS recorded a notice of federal tax lien against Denise Dimacale for tax year 1996. SUF 80. On December 13, 2019, the IRS recorded another notice of federal tax lien against Denise Dimacale for tax year 1996 to make clear that the lien "does not attach to any property of the kind specified in 11 U.S.C. § 541(a)(2) that was acquired after the commencement of the bankruptcy case of Daniel Dimacale on March 15, 2005 and subject to the discharge in 11 U.S.C. § 524(a)(3)." SUF  81-82.

**L. Balance Due from Denise Dimacale**

As of August 10, 2020, the balance due from Denise Dimacale was $2,505,817.25 for tax year 1996. SUF 83.

7

1

### III. Statement of Issues

2      1.     Whether the Trust holds the Property as a nominee of Denise

3  Dimacale.

4      2.     Whether the transfer of the Property from Denise Dimacale to the

5  Trust on April 23, 2003 was a fraudulent transfer pursuant to Cal. Civ. Code

6  § 3439.04(a)(1) because the transfer was an attempt to hinder, delay, or

7  defraud the IRS.

8      3.     Whether the transfer of the Property from Denise Dimacale to the

9  Trust on April 23, 2003 was a fraudulent transfer pursuant to Cal. Civ. Code

10  § 3439.04(a)(2)(B) because the transfer was for less than fair value and the

11  debtor should have known that the debts would be beyond her ability to pay

12  as they became due.

### IV. Law and Analysis

**A. Standard for Summary Judgment and Burden of Proof**

Summary judgment shall be granted when a movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, summary judgment should be entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Parth v. Pomona Valley Hosp. Med. Ctr.*, 630 F.3d 794, 798–99 (9th Cir. 2010) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

To defeat a summary judgment motion, the non-moving party may not merely rely on its pleadings or on conclusory statements. Fed. R. Civ. P. 56(e). Nor may the non-moving party merely attack or discredit the moving party's evidence. *Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983). The non-moving party must affirmatively present specific evidence sufficient to create a genuine issue of material fact for trial. *See*

8

*Celotex Corp.*, 477 U.S. at 324. Uncorroborated and self-serving testimony does not create a genuine issue of material fact and preclude summary judgment. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). Indeed, a "mere scintilla of evidence supporting the non-moving party's position is insufficient; there must be evidence on which a jury could reasonably find for the nonmoving party." *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).

**B. First Claim for Relief: Foreclosure of Federal Tax Liens Against Real Property**

**Assessment of a tax liability creates a tax lien that attaches to all property and rights to property owned by the taxpayer**

A lien for unpaid tax liabilities arises in favor of the United States against all property and rights to property owned by the taxpayer as of the assessment date. 26 U.S.C. §§ 6321 and 6322. The Supreme Court has made it clear that the statutory language governing tax liens "is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 719-20 (1985); *see also Drye v. United States*, 528 U.S. 49, 56 (1999). Thus, 26 U.S.C. § 6321 extends "not only [to] the property and rights to property owned by the delinquent taxpayer, but also property held by a third party if it is determined that the third party is holding the property as a nominee or alter ego of the delinquent taxpayer." *Spotts v. United States,* 429 F.3d at 251. "Among the property interests reached by section 6321 is an equitable interest owned by or for the benefit of a taxpayer in property titled in the name of a nominee." *Criner v. Commissioner*, T.C. Memo. 2003-328 *9 (citing *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350-51 (1977); *United States v. Miller Bros. Constr. Co.*, 505 F.2d 1031 (10th Cir. 1974)).

1    **Nominee Overview**

2       The nominee doctrine is an equitable device to prevent debtors or

3    taxpayers from evading liability by shielding property from collection

4    through fake transfers of the property to another entity. *Prompt Staffing,*

5    *Inc. v. United States*, 321 F. Supp. 3d 1157, 1170 (C.D. Cal. 2018) (J. Wilson)

6    (citation omitted). When a debtor transfers property to another entity, but

7    continues to exercise ownership over that property, the law treats the debtor

8    as the true owner of the property for liability purposes. *Id.* (citations

9    omitted). The nominee doctrine addresses the relationship between the

10   taxpayer and the property sought to be accessed. *Id.* It asks whether the

11   taxpayer treats the property as his own and enjoys the benefits of true

12   ownership even though another entity holds legal title. *Id.* (citing *Fourth Inv.*

13   *LP v. United States*, 720 F.3d 1058, 1066 (9th Cir. 2013) (holding that "[a]

14   nominee is one who holds bare legal title to property for the benefit of

15   another")).

16       The nominee doctrine requires the application of federal and state

17   common law. *Id.* at 1170-71. State law creates the property right and federal

18   law attaches consequences to that property right. *Id.* at 1171 (citing *United*

19   *States v. Craft*, 535 U.S. 274, 278 (2002)). When attaching a tax lien to

20   property, a court's analysis requires two steps. First, the court looks to state

21   law to determine what rights the taxpayer has in the property the

22   Government seeks to reach. *Id.* Second, if the court determines that the

23   taxpayer has a property interest under state law, it then looks to federal law

24   to determine whether the taxpayer's state-delineated rights qualify as

25   property or rights to property within the compass of the federal tax lien

26   legislation. *Id.*

27

28

**Nominee under California law**

In determining whether taxpayers hold property rights to which a tax lien may attach, the District Court must look to state law. *United States v. Craft*, 535 U.S. 274, 278 (2002) (the federal tax lien statute attaches federal consequences to rights created under state law); *Drye v. United States*, 528 U.S. 49, 58 (1999) (state law determines what rights a taxpayer has in property; then federal law determines whether those rights qualify as property sufficient for a lien to attach under 26 U.S.C. § 6321); *Aquilino v. United States*, 363 U.S. 509, 513 (1960).

The Ninth Circuit has confirmed that "California law recognizes a nominee theory of property ownership." *Fourth Inv. LP v. United States*, 720 F.3d at 1069. Furthermore, the Ninth Circuit has predicted that "if the California Supreme Court had occasion to evaluate the factors relevant to determining nominee ownership under California law, it would adopt the uniform set of factors generally recognized by federal courts." *Id.* . The following six factors are generally considered when evaluating whether property is held by a nominee:

1. Whether inadequate or no consideration was paid by the nominee;
2. Whether the properties were placed in the nominee's name in anticipation of a lawsuit or other liability while the transferor remains in control of the property;
3. Whether there is a close relationship between the nominee and the transferor;
4. Failure to record the conveyances;
5. Whether the transferor retained possession; and
6. Whether the transferor continues to enjoy the benefits of the transferred property.

11

1   *Id.* at 1070. *See also Towe Antique Ford Found. v. IRS*, 999 F.2d 1387, 1391
2   (9th Cir. 1993); *Spotts v. United States*, 429 F.3d 248, fn. 2 (6th Cir. 2005).
3   Moreover, because there are family members on both sides of the transfer,
4   the Court "must give particularly close scrutiny to the facts." *Caligiuri v.*
5   *Commissioner*, 549 F.2d 1155, 1157 (8th Cir. 1977) (analyzing intra-family
6   debt); *Estate of Schuler v. Commissioner*, 282 F.3d 575, 579 (8th Cir. 2002)
7   (intrafamily transfers demand "close scrutiny" precisely because the
8   genuineness of the transaction cannot reasonably be inferred from
9   assurances from the taxpayer).

10   **Factors demonstrating that the Trust held the property as a**
11   **nominee for Denise Dimacale in this case**
12   <u>1. Inadequate consideration</u>
13   In 1996, the Dimacales acquired the Property as joint tenants for
14   $888,000, with a mortgage of $557,500. In 1997, a few months after a
15   judgment of $1,702,000 was entered against the Dimacales, they transferred
16   the Property to the Trust. In 2002, Denise Dimacale reported that the
17   Property was worth $1,400,000, encumbered by a mortgage of approximately
18   $540,000, which was increased to $850,000 when the Property was
19   refinanced.

20   In 2003, a line of credit of $100,000 was secured by the Dimacales. At
21   that time, Denise Dimacale listed total unpaid liabilities of $910,171 against
22   the Property, including the first mortgage of $850,000, and assets of only
23   $6,200 beyond the value of the Property.

24   Denise Dimacale applied for both the mortgage and line of credit, had
25   the Property transferred to her name to complete the transactions, and then
26   transferred the Property back to the Trust for no consideration. Before these
27   transactions, the Property was worth approximately $1,400,000 and had a
28   mortgage of approximately $540,000, leaving equity in the Property of

12

$860,000. After the new mortgage of $850,000, and the line of credit of $100,000, the Property still had equity of at least $450,000. Multiple transfers of title to the Property from Denise Dimacale to the Trust for no consideration for the benefit to Dimacale establishes that the Trust holds the Property as her nominee.

2. Property transferred in anticipation of liabilities

For tax year 1996, Denise Dimacale reported an income tax of approximately $109,000 which understated her liability by approximately $637,000. After an audit, the IRS determined a deficiency in her tax liability and issued a Statutory Notice of Liability in accordance with law. In March, 2002, she filed a petition in Tax Court seeking a redetermination of her tax liability for the year 1996. Pursuant to 26 U.S.C. § 6213(a), the Tax Court petition prohibited the IRS from assessing or collecting the additional tax liability until the Decision of the Tax Court (Decision) became final. The Tax Court case was pending just over one year, and during that short time, Denise Dimacale refinanced the Property – increasing the mortgage from approximately $540,000 to $850,000 – and secured a line of credit of $100,000.

While the Tax Court proceeding was pending, the property was held in the name of Denise Dimacale as her sole and separate property, and later the Dimacales held it jointly as joint tenants. After the Decision was entered on April 1, 2003, Daniel Dimacale transferred his interest to Denise Dimacale, and she transferred the Property to the Trust before the tax liability could be assessed. Extracting and draining hundreds of thousands of dollars in equity from the Property, and then placing the Property in the name of a trust right before the additional tax could be assessed supports the finding that the Trust holds title to the Property as the nominee of Denise Dimacale.

### 3. Close relationship with the nominee

Felicisima Reyes is the aunt of Daniel Dimacale. In 1997, the Dimacales formed the Trust, naming Felicisima Reyes as the original trustee for the Trust. In subsequent years, the trustee has always been either: (a) Denise Dimacale, (b) Felicisima Reyes, or (c) the Dimacales' daughter Nicole Dimacale. Denise Dimacale's close relationship with the trustees supports the finding that the Trust held title to the Property as her nominee.

### 4. Failure to record conveyances

Denise Dimacale recorded the conveyance from herself to herself as trustee of the Trust. While failing to record a transfer would be strong evidence of a nominee relationship in some situations, recording the transfer was essential in this case in an effort to shield Denise Dimacale's Property from her creditors, in particular the IRS, and is consistent with a finding that the Trust holds title to the Property as the nominee of Denise Dimacale.

### 5. Denise Dimacale retained possession of the Property

Denise Dimacale has continuously lived in the Property since purchasing the Property in 1996. Retaining continuous possession despite multiple transfers back and forth from the Trust supports a finding that the Trust holds title to the Property as the nominee of Denise Dimacale.

### 6. Denise Dimacale continued to enjoy the benefits of the Property

From the date the Trust was formed in 1997 to the present, the Dimacales have had the right, rent free, to the exclusive use, possession, and enjoyment of the Property. They paid utilities, maintenance, ordinary repairs and improvements, insurance and real estate taxes associated with the Property, and they claimed the mortgage interest deduction on their Federal tax return (while proactively attempting to evade the collection of their tax liability by the IRS). By claiming the mortgage interest deduction, Denise Dimacale asserted that she owns the Property. In general, taxpayers

14

are "allowed as a deduction all interest paid or accrued within the taxable year on indebtedness." 26 U.S.C. § 163(a). "Interest paid by the taxpayer on a mortgage upon real estate of which he is the *legal or equitable owner* … may be deducted as interest on his indebtedness." 26 C.F.R. § 1.163–1(b) (emphasis added). The United States Tax Court has "disallowed a deduction for mortgage interest where the taxpayer is unable to establish legal, equitable, or beneficial ownership of mortgaged property." *Luciano-Salas v. Commissioner*, 2014 WL 3908147, at *4 (T.C. Aug. 11, 2014) (citations omitted). A taxpayer must verify her tax return by written declaration that the tax return is made under the penalties of perjury. 26 U.S.C. § 6065. By claiming the mortgage interest deduction on her income tax returns under penalties of perjury for the years 2016 through 2020, Denise Dimacale asserted that she is the "legal or equitable owner" of the Property. Furthermore, by retaining the benefits of living in the Property, and the burdens of paying the expenses, Denise Dimacale has demonstrated herself to be the true owner with an equitable interest in the property, and the Trust is merely her nominee.

**The United States is entitled to foreclose on the Property**

Once the United States establishes that a taxpayer has an interest in property, and the tax lien of the United States has attached to such interest, it is well settled that the United States may foreclose its lien against the taxpayer's interest in the property. *Id.* § 7403; *United States v. Rodgers*, 461 U.S. 677 (1983). This applies even if the property is held by a nominee. *See G.M. Leasing Corp.* 429 U.S. at 350-51 (1977) (an entity that is the nominee or alter ego of a taxpayer will be ignored for federal tax collection purposes). As discussed above, the Trust holds the Property as the nominee of Denise Dimacale, so the lien arising from her individual income tax liability

attaches to the Property, and the United States is entitled to foreclose on it to pay her outstanding tax liability.

**C. Second Claim for Relief: Set Aside Fraudulent Transfer**

As explained above, since the Trust is a mere nominee of Denise Dimacale, then the United States' tax lien attaches to the Property as a matter of state and federal law. Even assuming arguendo that Denise Dimacale could prove that the Trust is not her nominee, the United States has an independent basis to foreclose its tax lien on the Property: the Property was fraudulently transferred to the Trust and thus that transfer to Trust should be set aside as a matter of law. First, the transfer by Denise Dimacale was an attempt to hinder, delay, or defraud the IRS. Cal. Civ. Code § 3439.04(a)(1). Second, the transfer by Denise Dimacale was for less than fair market value and she should have known that her debts would be beyond her ability to pay as they became due. Cal. Civ. Code § 3439.04(a)(2)(B).

**Property transferred to hinder, delay, or defraud the IRS**

A fraudulent transfer may be avoided to the extent necessary to satisfy the creditor's claim. Cal. Civ. Code § 3439.07(a)(1). A transfer made by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made, if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor of the debtor. Cal. Civ. Code § 3439.04(a)(1). In determining actual intent, the court may consider the following non-exclusive list of factors:

1. Whether the debtor retained possession or control of the property transferred after the transfer;

2. Whether before the transfer was made, the debtor had been sued or threatened with suit;,

3. Whether the transfer was of substantially all the debtor's assets;

16

4. Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred;, and

5. Whether the debtor was insolvent or became insolvent shortly after the transfer.

Cal. Civ. Code § 3439.04(b). In California, the burden is on the plaintiff to establish "actual intent" by a preponderance of the evidence. *Liodas v. Sahadi*, 19 Cal. 3d 278, 137 Cal. Rptr. 635 (1977). Actual intent is established from the circumstances surrounding the transfer of the assets involved. *Menick v. Goldy*, 131 Cal. App. 2d 542 (1955). As with the nominee analysis, because there are family members on both sides of the transfer, the Court "must give particularly close scrutiny to the facts." *Caligiuri v. Commissioner*, 549 F.2d at 1157.

<u>1. Retained possession after the transfer</u>

Denise Dimacale has lived in the Property continuously since she purchased it in 1996. The Trust explicitly provided the Dimacales with the right, rent free, to the exclusive use, possession, and enjoyment of the Property.

<u>2. Awareness of legal action prior to transfer</u>

On March 13, 2002, the Dimacales filed a petition with the Tax Court for a redetermination of their tax liability for tax year 1996. On April 1, 2003, the Tax Court entered the stipulated Decision establishing the Dimacales' tax liability for the year 1996 of $637,361.88, plus penalty and interest. The fraudulent transfer from Denise Dimacale to the Trust occurred later that same month on April 23, 2003, in anticipation of the collection efforts of the IRS.

<u>3. Transfer for no consideration</u>

The transfer of the Property by Quitclaim Deed on April 23, 2003, from Denise Dimacale to herself as trustee of the Trust, was for no consideration.

17

1

### 4. Transfer of substantially all the debtor's assets

At the time of the transfer, the Property represented substantially all of Denise Dimacale's assets. On her contemporaneous loan applications, the Property was valued at $1,400,000, and she listed other assets totaling $6,200. The 1996 tax liability due to the IRS, pursuant to the Decision was $637,361.88, plus penalty and interest.

### 5. Insolvency after the transfer

Since the mortgage liability could not be transferred without approval by the bank, the transfer of the Property rendered Denise Dimacale insolvent. On April 23, 2003, before the transfer of the Property to the Trust, Denise Dimacale had assets of approximately $1,400,000 and liabilities of at least $1,550,000 ($850,000 mortgage plus over $700,000 in tax, penalty, and interest for tax year 1996). After the transfer of the Property to the Trust, Denise Dimacale was insolvent as her assets were less than her liabilities.

Based on the foregoing, the transfer of Property to the Trust on April 23, 2003 was fraudulent because (1) it made Denise Dimacale insolvent and (2) was done with the intent to hinder, delay, or defraud the IRS by preventing it from collecting the tax liabilities for tax year 1996. As such, the transfer should be avoided to the extent necessary to satisfy the claims of the United States.

**Property transferred for less than fair value and Denise Dimacale should have known that she would not be able to pay her liability to the IRS**

A transfer made by a debtor is fraudulent as to a creditor, whether the creditor's claim arose *before or after* the transfer was made, if (1) the debtor made the transfer without receiving reasonably equivalent value in exchange for the transfer and (2) the debtor intended to incur, or believed or

reasonably should have believed that he would incur, debts beyond his ability to pay as they became due. Cal. Civ. Code § 3439.04(a)(2)(B).

The transfer of the Property by Quitclaim Deed on April 23, 2003 from Denise Dimacale to Denise Dimacale, as trustee of the Trust, was for no consideration. At the time, the fair market value of the Property was approximately $1,400,000 and the encumbrances on the Property were at least $850,000. As the Property had equity of approximately $550,000, the transfer to the Trust for no consideration was a transfer made without receiving a reasonably equivalent value.

On April 23, 2003, before the transfer of the Property, Denise Dimacale had assets of approximately $1,400,000 and liabilities of at least $1,550,000 ($850,000 mortgage plus over $700,000 in tax, penalty, and interest for tax year 1996). After the transfer, she had essentially no assets. The stipulated Decision had already been entered on April 1, 2003, so Denise Dimacale intended to incur, or believed or reasonably should have believed that she would incur, debts beyond her ability to pay as they became due. As such, the transfer of Property to the Trust on April 23, 2003 was fraudulent and should be avoided to the extent necessary to satisfy the claims of the United States.

**The United States is entitled to foreclose on the Property**

As discussed above, the transfer of the Property from Denise Dimacale to the Trust on April 23, 2003, was fraudulent and should be avoided. As Denise Dimacale actually owns, and is the true owner of the Property, the United States is entitled to foreclose to pay the outstanding tax liability of Denise Dimacale.

1

## V. Conclusion

2        Based on the foregoing, the United States is entitled to summary

3  judgment against Denise Dimacale and foreclosure on the Property to pay

4  the outstanding tax liability of Denise Dimacale for tax year 1996.

5

6                              Respectfully submitted,

7                              TRACY L. WILKISON
United States Attorney

8                              THOMAS D. COKER
Assistant United States Attorney

9                              Chief, Tax Division

10

11  Dated: June 21, 2022                 /s/
GAVIN GREENE

12                              Assistant United States Attorney

13                              Attorneys for the United States of America

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28