E. MARTIN ESTRADA
United States Attorney
THOMAS D. COKER
Assistant United States Attorney
Chief, Tax Division
GAVIN L. GREENE (Cal. Bar No. 230807)
Assistant United States Attorney
      Federal Building, Suite 7211
      300 North Los Angeles Street
      Los Angeles, California 90012
      Telephone: (213) 894-4600
      Facsimile: (213) 894-0115
      E-mail: Gavin.Greene@usdoj.gov

Attorneys for the United States of America

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>    v.<br><br>Denise Dimacale, et al.,<br><br>    Defendants.<br><br>And related Cross and Counterclaim Actions. | Case No. 2:21-cv-06012-CBM-RAO<br><br>Plaintiff's Memorandum of Contentions of Fact and Law<br><br>Local Rule 16-4<br><br>Honorable Consuelo B. Marshall<br><br>Pretrial Conference: March 7, 2023<br>Time: 2:30 p.m.<br>Courtroom: 8D<br>Location: First Street Courthouse<br>350 West First Street<br>Los Angeles, California |

1     Pursuant to Local Rule 16-4, the United States of America hereby

2  submits its Memorandum of Contentions of Fact and Law.[1]

4                                    Respectfully submitted,

6                                    E. MARTIN ESTRADA
                                     United States Attorney
7                                    THOMAS D. COKER
                                     Assistant United States Attorney
8                                    Chief, Tax Division

11  Dated: February 14, 2023         /s/
                                     GAVIN GREENE
12                                   Assistant United States Attorney
                                     Attorneys for the United States of America

[1] All references to document numbers refer to the ECF document numbers
for this case, docket number 2:21-cv-06012-CBM-RAO.

2

# Contents

I. Claims and Defenses ............................................................................. 1

   A. Summary statement of Plaintiff's claims ......................................... 1

   B. Elements required to establish Plaintiff's claim .............................. 1

      Elements to establish the Property is held by a nominee ............ 2

      Elements to establish fraudulent transfer pursuant to Cal.
        Civ. Code § 3439.04(a)(1) ...................................................... 4

      Elements to establish fraudulent transfer pursuant to Cal.
        Civ. Code § 3439.04(a)(2)(B) ................................................. 5

      The United States is entitled to foreclose on the Property ........... 6

   C. Brief description of the key evidence in support of each of
     Plaintiff's claims ....................................................................... 6

      Purchase of Property ................................................................. 6

      FTC Judgment .......................................................................... 7

      Use of Property Under the Trust ............................................... 7

      Additional Tax Liability for Tax Year 1996............................... 7

      Mortgage application with Kastlepoint Mortgage....................... 8

      Mortgage to Refinance the Property .......................................... 8

      CIT Loan for $100,000 Line of Credit ..................................... 9

      Stipulated Decision in Tax Court .............................................. 10

      Transfer Back to Trust .............................................................. 10

      Assessment of Income Tax Liability for Tax Year 1996............. 10

      Tax Liabilities Reduced to Judgment ........................................ 10

      Factors demonstrating that the Trust held the property as a
        nominee for Denise Dimacale in this case......................... 11

      Factors demonstrating that the transfer was fraudulent
        pursuant to Cal. Civ. Code § 3439.04(a)(1)....................... 14

      Factors demonstrating that the transfer was fraudulent
        pursuant to Cal. Civ. Code § 3439.04(a)(2)(B)................... 16

   D. Summary statement of Defendant's affirmative defenses .............. 16

   E. Elements required to establish Defendant's affirmative

i

defenses .............................................................................................. 17

F. Description of evidence relied on in support of each affirmative defense ............................................................................................. 17

G. Status of other defendants .................................................................. 17

H. Anticipated evidentiary issues ............................................................ 18

Previously admitted facts and documents ................................... 18

I. Issues of law which are germane to the case .................................... 18

II. Bifurcation of Issues ................................................................................... 18

III. Bench Trial ................................................................................................... 18

IV. Attorney's Fees ........................................................................................... 18

V. Abandonment of Issues ............................................................................. 19

## **CASES**

*Aquilino v. United States*, 363 U.S. 509 (1960) ................................................. 3

*Caligiuri v. Commissioner*, 549 F.2d 1155 (8th Cir. 1977) ......................... 4, 5

*Drye v. United States*, 528 U.S. 49 (1999) ............................................... 2, 3

*Estate of Schuler v. Commissioner*, 282 F.3d 575 (8th Cir. 2002) ................... 4

*Fourth Inv. LP v. United States*, 720 F.3d 1058 (9th Cir. 2013) ............. 2, 3, 4

*G.M. Leasing Corp. v. United States*, 429 U.S. 338 (1977) ........................ 2, 6

*Liodas v. Sahadi*, 19 Cal. 3d 278, 137 Cal. Rptr. 635 (1977) ........................ 5

*Luciano-Salas v. Commissioner*, 2014 WL 3908147 (T.C. Aug. 11, 2014) .... 14

*Menick v. Goldy*, 131 Cal. App. 2d 542 (1955) ........................................... 5

*Prompt Staffing, Inc. v. United States*, 321 F. Supp. 3d 1157 (C.D. Cal.
    2018) ............................................................................................... 2

*Towe Antique Ford Found. v. IRS*, 999 F.2d 1387 (9th Cir. 1993) ................. 3

*United States v. Craft*, 535 U.S. 274 (2002) ............................................. 2

*United States v. Nat'l Bank of Commerce*, 472 U.S. 713 (1985) ..................... 2

*United States v. Rodgers*, 461 U.S. 677 (1983) ......................................... 6

## **STATUTES**

26 U.S.C. § 163(a) ................................................................................. 14

26 U.S.C. § 6065 ................................................................................... 14

26 U.S.C. § 6213(a) ............................................................................... 12

26 U.S.C. § 6321 ................................................................................... 1

26 U.S.C. § 6322 ................................................................................... 1

Cal. Civ. Code § 3439.04(b) ...................................................................... 5

Cal. Civ. Code § 3439.07(a)(1) ................................................................. 4

## **RULES**

Fed. R. Civ. Proc. 36 ............................................................................. 18

# I. Claims and Defenses

## A. Summary statement of Plaintiff's claims

The United States filed suit to foreclose on a tax lien against defendant Denise Dimacale for tax year 1996 against real property located at 1794 Port Tiffin Circle in Newport Beach, California (the Property). As of April 4, 2023, the balance due from Denise Dimacale will be $2,782,816.09 for tax year 1996. The property is held in the name of the NCD Qualified Personal Residence Trust (the Trust). The United States asserts that the tax lien attaches to the property because:

1. The Trust holds the Property as a nominee of Denise Dimacale;
2. The transfer of the Property from Denise Dimacale to the Trust on April 23, 2003, was a fraudulent transfer pursuant to Cal. Civ. Code § 3439.04(a)(1) because the transfer was an attempt to hinder, delay, or defraud the IRS; or
3. The transfer of the Property from Denise Dimacale to the Trust on April 23, 2003, was a fraudulent transfer pursuant to Cal. Civ. Code § 3439.04(a)(2)(B) because the transfer was for less than fair value and the debtor should have known that her debts would be beyond her ability to pay as they became due.

If the United States establishes any of the theories described above, the tax lien attaches to the Property and the United States is entitled to foreclose on the property.

## B. Elements required to establish Plaintiff's claim

A lien for unpaid tax liabilities arises in favor of the United States against all property and rights to property owned by the taxpayer as of the assessment date. 26 U.S.C. §§ 6321, 6322. The Supreme Court has held that the statutory language governing tax liens "is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer

might have." *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 719–20 (1985); *see also Drye v. United States*, 528 U.S. 49, 56 (1999). Thus, 26 U.S.C. § 6321 extends not only to the property and rights to property owned by the delinquent taxpayer, but also property held by a third party if it is determined that the third party is holding the property as a nominee or alter ego of the delinquent taxpayer. *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350-51 (1977); *Fourth Inv. LP v. United States*, 720 F.3d 1058, 1066 (9th Cir. 2013).

### Elements to establish the Property is held by a nominee

The nominee doctrine is an equitable device to prevent debtors or taxpayers from evading liability by shielding property from collection through fake transfers of the property to another entity. *Prompt Staffing, Inc. v. United States*, 321 F. Supp. 3d 1157, 1170 (C.D. Cal. 2018). When a debtor transfers property to another entity, but continues to exercise ownership over that property, the law treats the debtor as the true owner of the property for liability purposes. *Id*. The nominee doctrine addresses the relationship between the taxpayer and the property sought to be accessed. *Id*. It asks whether the taxpayer treats the property as his own and enjoys the benefits of true ownership even though another entity holds legal title. *Id*. (citing *Fourth Inv. LP*, 720 F.3d at 1066 (holding that "[a] nominee is one who holds bare legal title to property for the benefit of another.")).

The nominee doctrine requires the application of federal and state common law. *Prompt Staffing, Inc*. at 1170–71. State law creates the property right and federal law attaches consequences to that property right. *Id*. at 1171 (citing *United States v. Craft*, 535 U.S. 274, 278 (2002)). To determine when a tax lien attaches to property, a court first looks to state law to determine what rights the taxpayer has in the property the Government seeks to reach. *Prompt Staffing, Inc*. at 1171. Second, if the

taxpayer has a property interest under state law, then federal law determines if the lien attaches. *Id.*; *Drye*, 528 U.S. at 58 (state law determines what rights a taxpayer has in property; then federal law determines whether those rights qualify as property sufficient for a lien to attach under 26 U.S.C. § 6321); *Aquilino v. United States*, 363 U.S. 509, 513 (1960).

The Ninth Circuit has held that "California law recognizes a nominee theory of property ownership." *Fourth Inv. LP*, 720 F.3d at 1069. Furthermore, the Ninth Circuit has determined that "if the California Supreme Court had occasion to evaluate the factors relevant to determining nominee ownership under California law, it would adopt the uniform set of factors generally recognized by federal courts." *Id*. The following six factors are considered when evaluating whether property is held by a nominee:

(1)  Whether inadequate or no consideration was paid by the nominee;

(2)  Whether the properties were placed in the nominee's name in anticipation of a lawsuit or other liability while the transferor remains in control of the property;

(3)  Whether there is a close relationship between the nominee and the transferor;

(4)  Whether there was a failure to record the conveyances;

(5)  Whether the transferor retained possession; and

(6)  Whether the transferor continues to enjoy the benefits of the transferred property.

*Id.* at 1070. *See also Towe Antique Ford Found. v. IRS*, 999 F.2d 1387, 1391 (9th Cir. 1993). Moreover, the Court "must give particularly close scrutiny to the facts" when there are family members on both sides of the transfer.

3

*Caligiuri v. Commissioner*, 549 F.2d 1155, 1157 (8th Cir. 1977) (analyzing intra-family debt); *Estate of Schuler v. Commissioner*, 282 F.3d 575, 579 (8th Cir. 2002) (intrafamily transfers demand "close scrutiny" precisely because the genuineness of the transaction cannot reasonably be inferred from assurances from the taxpayer).

Nominee status is determined based on the totality of the circumstances, with no single factor being dispositive. *Fourth Inv. LP* , 720 F.3d at 1070. Rather, the "overarching consideration" is whether the taxpayer exercised active or substantial control over the property. *Id*.

**Elements to establish fraudulent transfer pursuant to Cal. Civ. Code § 3439.04(a)(1)**

A fraudulent transfer may be avoided to the extent necessary to satisfy a creditor's claim. Cal. Civ. Code § 3439.07(a)(1). A transfer made by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made, if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor of the debtor. Cal. Civ. Code § 3439.04(a)(1). In determining actual intent, the court may consider the following non-exclusive list of factors:

(1)    Whether the transfer or obligation was to an insider;

(2)    Whether the debtor retained possession or control of the property transferred after the transfer;

(3)    Whether the transfer or obligation was disclosed or concealed;

(4)    Whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5)    Whether the transfer was of substantially all the debtor's assets;

(6)    Whether the debtor absconded;

(7)    Whether the debtor removed or concealed assets;

4

(8)   Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9)   Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

(10)  Whether the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11)  Whether the debtor transferred the essential assets of the business to a lienor that transferred the assets to an insider of the debtor.

Cal. Civ. Code § 3439.04(b). In California, the burden is on the plaintiff to establish "actual intent" by a preponderance of the evidence. *Liodas v. Sahadi*, 19 Cal. 3d 278, 137 Cal. Rptr. 635 (1977). Actual intent is established from the circumstances surrounding the transfer of the assets involved. *Menick v. Goldy*, 131 Cal. App. 2d 542 (1955). As with the nominee analysis, because there are family members on both sides of the transfer, the Court "must give particularly close scrutiny to the facts." *Caligiuri*, 549 F.2d at 1157.

**Elements to establish fraudulent transfer pursuant to Cal. Civ. Code § 3439.04(a)(2)(B)**

A transfer made by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made, if (1) the debtor made the transfer without receiving reasonably equivalent value in exchange for the transfer and (2) the debtor intended to incur, or believed or reasonably should have believed that she would incur, debts beyond her ability to pay as they became due. Cal. Civ. Code § 3439.04(a)(2)(B).

Under any of the three legal theories described above – nominee, fraudulent transfer with actual intent to defraud, or fraudulent transfer for less than fair value – the tax liens attach to the Property, and the United States is entitled to foreclose.

**The United States is entitled to foreclose on the Property**

Once the United States establishes that a taxpayer has an interest in property, and the tax lien of the United States has attached to such interest, it is well settled that the United States may foreclose its lien against the taxpayer's interest in the property. 26 U.S.C. § 7403; *United States v. Rodgers*, 461 U.S. 677 (1983). This applies even if the property is held by a nominee. *See G.M. Leasing Corp.* 429 U.S. at 350-51 (1977) (an entity that is the nominee or alter ego of a taxpayer will be ignored for federal tax collection purposes). As discussed above, the Trust holds the Property as the nominee of Denise Dimacale, so the lien arising from her individual income tax liability attaches to the Property, and the United States is entitled to foreclose on it to pay her outstanding tax liability.

**C. Brief description of the key evidence in support of each of Plaintiff's claims**

The following is a summary of the undisputed facts that demonstrate that the Property is held by Denise Dimacale's nominee, and that the transfer of the Property to the Trust was a fraudulent transfer:

**Purchase of Property**

Denise and Daniel Dimacale have been married since 1983. Their only child is Nicole Dimacale. On June 3, 1996, Daniel and Denise Dimacale (the Dimacales) purchased real property located at 1794 Port Tiffin Circle in Newport Beach, California (the Property). The Property was purchased for $888,000 and initially had a mortgage of $577,500.

**FTC Judgment**

Denise Dimacale was an owner, secretary, and director of a business known as World Class Network, Inc. (WCN). Daniel Dimacale was co-owner of WCN and the chairman of the board of directors. On February 28, 1997, the Federal Trade Commission (FTC) sued WCN, Daniel Dimacale, Denise Dimacale, and others in the case of *Federal Trade Commission v. World Class Network, Inc. et al*. On May 6, 1997, the district court entered judgment against the Dimacales in the amount of $1,702,000.

**Use of Property Under the Trust**

On August 12, 1997, three months after the $1.7 million judgment was entered against them, the Dimacales formed the NCD Qualified Personal Residence Trust (the Trust).

On August 20, 1997, a grant deed was recorded transferring the Property from the Dimacales to Felicisima Reyes, as trustee of the Trust. Felicisima Reyes is the aunt of Daniel Dimacale. The Dimacales have lived rent-free in the property since the Trust was formed.

From the date the Trust was formed to the present, the Dimacales paid the utilities; maintenance, repair and improvement costs; insurance; and taxes associated with the Property. The Trust has never had a bank account.

For tax years 2016 through 2020, the Dimacales claimed the home mortgage interest deduction on Schedule A of their U.S. Individual Income Tax Returns in the amount of $44,470 for 2016, $50,482 for 2017, $49,372 for 2018, $51,572 for 2019, and $40,714 for 2020.

**Additional Tax Liability for Tax Year 1996**

On October 17, 1997, the Dimacales filed their joint U.S. Individual Income Tax Return (Form 1040) for tax year 1996, in which they reported taxable income of $315,960, and a tax liability of $105,280. They later

admitted when they stipulated to the entry of the Tax Court decision that they underreported their tax liability by $637,361 for tax year 1996.

On November 30, 2001, the IRS issued a statutory notice of income tax deficiency to the Dimacales for tax years 1996 and 1997, and on March 13, 2002, they filed a petition in the United States Tax Court for a redetermination of their tax liabilities.

On July 18, 2002, a Quitclaim Deed was recorded transferring the Property from Felicisima Reyes, as trustee of the Trust, to Denise Dimacale as trustee for the Trust.

**Mortgage application with Kastlepoint Mortgage**

In September of 2002, Denise Dimacale applied for a loan with Kastlepoint Mortgage Inc. Denise Dimacale was listed as the borrower, her present address was listed as the Property securing the loan, and a box was checked indicating that she had owned the Property for six years. Assets were listed totaling $1,504,200 (including $1,400,000 for the value of the Property) and total liabilities of $641,626, including the existing mortgage on the Property of $537,112. Denise Dimacale signed the September Loan Application on October 2, 2002. However, she did not obtain a loan from Kastlepoint.

**Mortgage to Refinance the Property**

On December 12, 2002, Denise Dimacale signed a Uniform Residential Loan Application (Saxon Loan Application) to apply for a loan of $850,000. On the Saxon Loan Application, Denise Dimacale was listed as the borrower, her present address was listed as the Property, and a box was checked indicating that she had owned the Property for six years. The only asset listed was the Property valued at $1,400,000. Liabilities were listed totaling $77,152 in revolving credit and installment liabilities. However, in the

section titled "Details of Transaction", $754,773 was listed for the refinance, including debts to be paid off.

The loan for $850,000 was funded by Saxon Mortgage. On December 19, 2002, a Grant Deed was recorded transferring the Property from Denise Dimacale, as trustee of the Trust, to Denise Dimacale as her sole and separate Property. The same day, a Deed of Trust was recorded for the benefit of Saxon Mortgage, secured by the Property. On December 20, 2002, a Grant Deed was recorded granting the Property from Denise Dimacale to Denise Dimacale, as trustee for the Trust. The Dimacales paid personal debts with some of the proceeds from the Saxon Mortgage.

**CIT Loan for $100,000 Line of Credit**

On or about December 20, 2002, Denise and Daniel Dimacale signed a Uniform Residential Loan Application (CIT Loan Application) to apply for a $100,000 line of credit with The CIT Group. Denise Dimacale was listed as the borrower, her present address was listed as the Property, and a box was checked indicating that she owned the Property for 6 years. Daniel Dimacale was listed as the co-borrower. In the section titled "Liabilities" the total unpaid balance was $910,171 (including the Saxon Mortgage of $850,00). In the section titled "Assets", the only assets listed were two Washington Mutual accounts totaling $6,200. The section titled "Schedule of Real Estate Owned" listed the Property.

On January 6, 2003, an Interspousal Transfer Grant Deed was recorded purporting to transfer any interest of Daniel Dimacale in the Property to Denise Dimacale. On March 14, 2003, a Grant Deed was recorded transferring the Property from Denise Dimacale, as trustee for the Trust, to the Dimacales, husband and wife as joint tenants. On March 14, 2003, a Deed of Trust was recorded for the benefit of The CIT

Group/Consumer Finance, Inc., secured by the Property. This Deed of Trust secured a $100,000 line of credit issued to the Dimacles.

**Stipulated Decision in Tax Court**

On April 1, 2003, the Tax Court entered a stipulated Decision for tax year 1996 which established a deficiency in the Dimacales' 1996 income taxes in the amount of $637,361.88 plus an accuracy-related penalty pursuant to 26 U.S.C. § 6662(a) in the amount of $76,483.42.

**Transfer Back to Trust**

On April 23, 2003, a quitclaim deed was recorded transferring the Property from the Dimacales to Denise Dimacale, as her sole and separate property. The same day, a Quitclaim Deed was recorded transferring the Property from Denise Dimacale to Denise Dimacale, as trustee of the Trust. The transfer of the Property on April 23, 2003, from Denise Dimacale to the Trust – as with all the transfers to and from the Trust – was for no consideration.

**Assessment of Income Tax Liability for Tax Year 1996**

On September 8, 2003, the IRS assessed the additional tax and penalty for tax year 1996 pursuant to the stipulated Tax Court Decision. On April 6, 2004, the IRS recorded a notice of federal tax lien (NFTL) against the Dimacales with the Orange County Recorder's Office for tax year 1996. On October 12, 2004, a Quitclaim Deed was recorded transferring the Property from Denise Dimacale, as trustee of the Trust, to Felicisima Reyes, as trustee of the Trust.

**Tax Liabilities Reduced to Judgment**

On September 21, 2012, the United States filed suit against Denise Dimacale to reduce her tax liability to judgment, which was assigned to this Court. On January 6, 2014, the Court entered an order against Denise

Dimacale which reduced to judgment her income tax liability for tax year 1996 in the amount of $1,901,763.57 as of September 18, 2012.

On October 15, 2015, a Quitclaim Deed was recorded transferring the Property from Felicisima Reyes, as trustee of the Trust, to Nicole Dimacale, as trustee of the Trust.

As of April 4, 2023, the balance due from Denise Dimacale will be $2,782,816.09 for tax year 1996.

**Factors demonstrating that the Trust held the property as a nominee for Denise Dimacale in this case**

<u>1. Inadequate consideration</u>

In 1996, the Dimacales acquired the Property as joint tenants for $888,000, with a mortgage of $557,500. In 1997, a few months after a judgment of $1,702,000 was entered against the Dimacales, they transferred the Property to the Trust. In 2002, Denise Dimacale reported that the Property was worth $1,400,000, encumbered by a mortgage of about $540,000, which was increased to $850,000 when the Property was refinanced.

In 2003, a line of credit of $100,000 was secured by the Dimacales. At that time, Denise Dimacale listed total unpaid liabilities of $910,171 against the Property, including the first mortgage of $850,000, and assets of only $6,200 beyond the value of the Property.

Denise Dimacale applied for both the mortgage and line of credit, had the Property transferred to her name to complete the transactions, and then transferred the Property back to the Trust for no consideration. Before these transactions, the Property was worth about $1,400,000 and had a mortgage of about $540,000, leaving equity in the Property of $860,000. After the new mortgage of $850,000, and the line of credit of $100,000, the Property still had equity of at least $450,000. Multiple transfers of title to the Property

11

from Denise Dimacale to the Trust and back, depending on the whims of the Dimicales, shows that the Dimicales disregarded the existence of the Trust and establishes that the Trust holds the Property merely as Denise's nominee.

### 2. Property transferred in anticipation of liabilities

For tax year 1996, Denise Dimacale reported an income tax of about $109,000 which, as established by the Dimicales' stipulation in the Tax Court, understated her liability by about $637,000. After an audit, the IRS determined a deficiency in her tax liability and issued a Statutory Notice of Deficiency. In March 2002, she filed a petition in Tax Court seeking a redetermination of her tax liability for the year 1996. Pursuant to 26 U.S.C. § 6213(a), the Tax Court petition prohibited the IRS from assessing or collecting the additional tax liability until the Decision of the Tax Court (Decision) became final. The Tax Court case was pending for just over one year, and during that short time, Denise Dimacale refinanced the Property – increasing the mortgage from about $540,000 to $850,000 – and secured a line of credit of $100,000.

While the Tax Court proceeding was pending, the property was held in the name of Denise Dimacale as her sole and separate property, and later the Dimacales held it as joint tenants. After the Decision was entered on April 1, 2003, Daniel Dimacale transferred his interest to Denise Dimacale, and she transferred the Property to the Trust before the tax liability could be assessed. Extracting and draining hundreds of thousands of dollars in equity from the Property, and then placing the Property in the name of a trust right before the additional tax could be assessed shows that the Trust holds title to the Property as the nominee of Denise Dimacale.

### 3. Close relationship with the nominee

Felicisima Reyes is the aunt of Daniel Dimacale. In 1997, the Dimacales formed the Trust, naming Felicisima Reyes as the original trustee for the Trust. In subsequent years, the trustee has always been either: (a) Denise Dimacale, (b) Felicisima Reyes, or (c) the Dimacales' daughter Nicole Dimacale. Denise Dimacale's close relationship with the trustees supports the finding that the Trust held title to the Property as her nominee. Denise Dimicale had unfettered control over the trust and the Property, as shown by the transfers of title between the Trust and Denise individually, depending on what suited her as the occasion arose.

### 4. Failure to record conveyances

Denise Dimacale recorded the conveyance from herself to herself as trustee of the Trust. While failing to record a transfer is evidence of a nominee relationship in some situations, recording the transfer was essential in this case to try to shield Denise Dimacale's Property from her creditors, in particular the IRS, and is consistent with a finding that the Trust holds title to the Property as the nominee of Denise Dimacale.

### 5. Denise Dimacale retained possession of the Property

Denise Dimacale has continuously lived in the Property since purchasing the Property in 1996. Retaining continuous possession despite multiple transfers back and forth between Denise and the Trust supports a finding that the Trust holds title to the Property as the nominee of Denise Dimacale.

### 6. Denise Dimacale continued to enjoy the benefits of the Property

From the date the Trust was formed in 1997 to the present, the Dimacales have had the right, rent free, to the exclusive use, possession, and enjoyment of the Property. They paid utilities, maintenance, ordinary repairs and improvements, insurance, and real estate taxes associated with

the Property, and they claimed the mortgage interest deduction on their Federal tax return (while proactively attempting to evade the collection of their tax liability by the IRS). By claiming the mortgage interest deduction, Denise Dimacale asserted that she owns the Property. In general, taxpayers are "allowed as a deduction all interest paid or accrued within the taxable year on indebtedness." 26 U.S.C. § 163(a). "Interest paid by the taxpayer on a mortgage upon real estate of which he is the *legal or equitable owner* … may be deducted as interest on his indebtedness." 26 C.F.R. § 1.163–1(b) (emphasis added). The United States Tax Court has "disallowed a deduction for mortgage interest where the taxpayer is unable to establish legal, equitable, or beneficial ownership of mortgaged property." *Luciano-Salas v. Commissioner*, 2014 WL 3908147, at *4 (T.C. Aug. 11, 2014) (citations omitted). A taxpayer must verify her tax return by written declaration that the tax return is made under the penalties of perjury. 26 U.S.C. § 6065. By claiming the mortgage interest deduction on her income tax returns under penalties of perjury for the years 2016 through 2020, Denise Dimacale asserted that she is the "legal or equitable owner" of the Property. Furthermore, by retaining the benefits of living in the Property, and the burdens of paying the expenses, Denise Dimacale has demonstrated herself to be the true owner with an equitable interest in the property, and the Trust is merely her nominee.

**Factors demonstrating that the transfer was fraudulent pursuant to Cal. Civ. Code § 3439.04(a)(1)**

<u>1. Retained possession after the transfer</u>

Denise Dimacale has lived in the Property continuously since she purchased it in 1996. The Trust explicitly provided the Dimacales with the right, rent free, to the exclusive use, possession, and enjoyment of the Property.

1    2. Awareness of legal action prior to transfer

2    On March 13, 2002, the Dimacales filed a petition with the Tax Court

3    for a redetermination of their tax liability for tax year 1996. On April 1,

4    2003, the Tax Court entered the stipulated Decision establishing the

5    Dimacales' tax liability for the year 1996 of $637,361.88, plus penalty and

6    interest. The fraudulent transfer from Denise Dimacale to the Trust occurred

7    later that same month on April 23, 2003, in anticipation of the collection

8    efforts of the IRS.

9    3. Transfer for no consideration

10    The transfer of the Property by Quitclaim Deed on April 23, 2003, from

11    Denise Dimacale to herself as trustee of the Trust, was for no consideration.

12    4. Transfer of substantially all the debtor's assets

13    At the time of the transfer, the Property represented substantially all

14    of Denise Dimacale's assets. On her contemporaneous loan applications, the

15    Property was valued at $1,400,000, and she listed other assets totaling

16    $6,200. The 1996 tax liability due to the IRS, pursuant to the Decision was

17    $637,361.88, plus penalty and interest.

18    5. Insolvency after the transfer

19    Since Denise Dimacale was still liable for the mortgage, she was

20    insolvent after she transferred the Property to the Trust. On April 23, 2003,

21    before the transfer of the Property to the Trust, Denise Dimacale had assets

22    of about $1,400,000 and liabilities of at least $1,550,000 ($850,000 mortgage

23    plus over $700,000 in tax, penalty, and interest for tax year 1996). After the

24    transfer of the Property to the Trust, Denise Dimacale was insolvent as her

25    assets were less than her liabilities.

26    Based on the foregoing, the transfer of Property to the Trust on April

27    23, 2003 was fraudulent because (1) it made Denise Dimacale insolvent and

28    (2) was done with the intent to hinder, delay, or defraud the IRS by

preventing it from collecting the tax liabilities for tax year 1996. As such, the transfer should be avoided to the extent necessary to satisfy the claims of the United States.

### Factors demonstrating that the transfer was fraudulent pursuant to Cal. Civ. Code § 3439.04(a)(2)(B)

The transfer of the Property by Quitclaim Deed on April 23, 2003, from Denise Dimacale to Denise Dimacale, as trustee of the Trust, was for no consideration. At the time, the fair market value of the Property was about $1,400,000 and the encumbrances on the Property were at least $850,000. As the Property had equity of about $550,000, the transfer to the Trust for no consideration was a transfer made without receiving a reasonably equivalent value.

On April 23, 2003, before the transfer of the Property, Denise Dimacale had assets of about $1,400,000 and liabilities of at least $1,550,000 ($850,000 mortgage plus over $700,000 in tax, penalty, and interest for tax year 1996). After the transfer, she had essentially no assets. The stipulated Decision had already been entered on April 1, 2003, so Denise Dimacale intended to incur, or believed or reasonably should have believed that she would incur, debts beyond her ability to pay as they became due. As such, the transfer of Property to the Trust on April 23, 2003, was fraudulent and should be avoided to the extent necessary to satisfy the claims of the United States.

**D. Summary statement of Defendant's affirmative defenses**

Denise, Daniel, and Nicole Dimacale have raised the following affirmative defenses:

(1) Failure to state a claim;

(2) Res judicata; and

(3) Statute of limitations.

Denise and Daniel Dimacale have also raised the following affirmative defenses:

(4) Violation of discharge injunction; and

(5) Request that the Court exercise its discretion to not order the sale of the Property.

All the affirmative defenses were raised in the oppositions to the United States' motion for summary judgment (*see* document numbers 80 and 81). The Court rejected the claim that this case is barred by res judicata (document number 91, 16:18-20) and found that there is a valid IRS tax lien against Denise Dimacale (document number 91, 18:4-5). The Court did not adopt any of Defendants' other affirmative defenses.

**E. Elements required to establish Defendant's affirmative defenses**

Not applicable.

**F. Description of evidence relied on in support of each affirmative defense**

Not applicable.

**G. Status of other defendants**

Lien priority has previously been established with the New Residential Mortgage Loan Trust 2020-2 (formerly held by Saxon Mortgage), DLJ Mortgage Capital, Inc (formerly held by The CIT Group/Consumer Finance, Inc.), and the State of California Franchise Tax Board. ECF document numbers 72 and 76. Default has been entered against Midland Funding. ECF document number 74. The State of California Franchise Tax Board has been excused from participation at trial. ECF document number 95.

**H. Anticipated evidentiary issues**

**Previously admitted facts and documents**

Defendant has previously made numerous admissions pursuant to Fed. R. Civ. Proc. 36 regarding facts and documents. To the extent that Defendant is unwilling to stipulate to those facts or documents for trial, the United States intends to read Defendant's admissions into evidence.

**I. Issues of law which are germane to the case**

As discussed above, the relevant issues of law regarding nominee and fraudulent transfer have already been set forth by the Court in its Order re: Plaintiff's Motion for Summary Judgment, document number 91.

## II. Bifurcation of Issues

The United States does not request the bifurcation of issues

## III. Bench Trial

No jury demand has been filed in this case. This case will be presented to the Court in a bench trial.

## IV. Attorney's Fees

Defendants are only entitled to recover attorney's fees if they can establish the elements set forth in 26 U.S.C. § 7430.

///

///

///

# V. Abandonment of Issues

No pleaded claims or affirmative defenses have been abandoned, however as discussed above the Court has rejected some of the affirmative defenses advanced by Daniel, Denise, and Nicole Dimacale. *See* document number 91.

Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney
THOMAS D. COKER
Assistant United States Attorney
Chief, Tax Division

Dated: February 14, 2023        /s/
GAVIN GREENE
Assistant United States Attorney
Attorneys for the United States of America