A. Lavar Taylor, Bar No. 129512
ltaylor@taylorlaw.com
Lisa O. Nelson, Bar No. 259585
lnelson@taylorlaw.com
TAYLOR NELSON AMITRANO LLP
3 Hutton Centre Drive, Suite 500
Santa Ana, CA 92707
(714) 546-0445 Tel
(714) 546-2604 Fax

Attorneys for the Defendants Denise and Daniel Dimacale

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Denise Dimacale, et al.,<br><br>Defendants.<br><br>_____<br>And related Cross and Counterclaim Actions | Case No. 2:21-cv-06012-CBM-RAO<br><br>MEMORANDUM OF CONTENTIONS OF FACT AND LAW OF DEFENDANTS DENISE DIMACALE AND DANIEL DIMACALE<br><br>Honorable Consuelo B. Marshall<br>Courtroom 8D<br><br>Pre-Trial Conference<br>   Date: March, 7, 2023<br>   Time: 2:30pm<br><br>Trial (Est. 2 days) beginning:<br>   Date: April 4, 2023<br>   Time: 10:00 am |

Pursuant to Local Rule 16-4, Defendants Denise and Daniel Dimacale ("Defendants"), by and through their undersigned counsel, hereby submit their Memorandum of Contentions of Fact and Law as to this action by the United States of America ("Plaintiff") against Defendants.

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................... 1

II.     PLAINTIFF'S CLAIMS AGAINST DEFENDANTS ......................... 3

    A. Plaintiff's Claim #1: To Declare that the Irrevocable Trust Owns the
    Subject Property as the Nominee of Denise as her Sole and Separate
    Property ............................................................................................... 4

    B. Plaintiff's Claim #2a: To Set Aside Alleged Fraudulent Conveyance Under
    Cal. Civ. Code § 3439.04(a)(1) ................................................... 12

    C. Plaintiff's Claim #2b: To Set Aside Alleged Fraudulent Conveyance Under
    Cal. Civ. Code § 3439.04(a)(2)(B) .............................................. 18

III.    Plaintiff's Claim #3: To Foreclose Its Lien Against the Subject Property ....... 20

IV.     CLAIMS OF DANIEL AND DENISE AGAINST PLAINTIFF .................... 23

V.      EVIDENTIARY ISSUES ............................................................... 24

VI.     ATTORNEY'S FEES ...................................................................... 25

VII.    OTHER MATTERS ........................................................................ 25

i

# TABLE OF AUTHORITIES

## Cases

*Eldridge v. Eldridge*, 398 S.C. 112 (2012) ........................................................9

*Ferrante v. Casey (In re Ferrante),* case no. CC-14-1222 (B.A.P. 9th Cir. Aug. 26, 2015) ........................................................................................7

*Fourth Inv. LP v. United States,* 720 F.3d 1058 (9th Cir. 2013) ....................1,4

*Huffman v. Comm'r*, 978 F.2d 1139 (9th Cir. 1992) ......................................25

*In re Gustie,* 32 B.R. 466, 473 (Bankr. D. Mass. July 22, 1983), 36 B.R. 473 (D. Mass. 1984) ....................................................................................14

*Knudsen v. Comm'r*, 793 F.3d 1030 (9th Cir. 2015)......................................25

*Laycock v. Hammer, 141 Cal. App. 4th 25 (2006)* ..........................................6
*Parkmerced Co. v. San Francisco,* 149 Cal. App. 3d 1091 (1983) ...............15
*Pergament v. Yerushalmi (In re Yerushalmi),* 487 B.R. 98, 100 (Bankr. E.D.N.Y. 2012) ........................................................................................7
*Premier Capital Funding Inc. v. Earle (In re Earle),* 307 B.R. 276 (Bankr. S.D. Ala. 2002) ..........................................................................................6
*Seay v. Ferrante*, case no. G040346 (Cal. Ct. App. Mar. 27, 2009) ...............6
*United States v. Rodgers*, 461 U.S. 677 (1983) ............................................22

## Statutes

11 U.S.C. 524(a) ........................................................................23,24
Internal Revenue Code §7430....................................................................25
Cal. Civ. Code § 3439.04(a)(1) ..........................................................2,3,12,13
Cal. Civ. Code § 3439.04(a)(2)(B) ......................................................2,3,13,18

## Treasury Regulations

Treas. Reg.  (26 C.F.R.) § 25.2702-5(c). ......................................................4

## Rules

36 B.R. 473 (D. Mass. 1984) ......................................................................15
IRS Rev. Rul. 59-505 ................................................................................14

## Misc.

IRS Rev. Proc. 2003-42, 2003-1 C.B. 993 ....................................................5

ii

# I. INTRODUCTION

Plaintiff is attempting to foreclose its lien for unpaid income taxes assessed against Denise Dimacale ("Denise") for the tax year 1996 against real property located at 1794 Port Tiffin Circle Newport Beach, CA 92660 ("the Subject Property").  This property is currently owned by an irrevocable trust established by Denise and her husband, Daniel Dimacale ("Daniel"), called the NCD Qualified Personal Residence Trust (the "Irrevocable Trust").  The Subject Property was transferred to the Irrevocable Trust by Denise and her husband, Daniel Dimacale ("Daniel"), on August 20, 1997, long before any existing tax liens arose against Denise.  This means that plaintiff has no lien on the Subject Property on which it could possibly foreclose unless plaintiff succeeds in one of two causes of action set forth in the Complaint in the present action.

Plaintiff first seeks a ruling that the Irrevocable Trust holds the subject property as the "nominee" of Denise as her sole and separate proper. See Complaint at  ¶¶ 81-88. In this context, the use of the term "nominee" means that plaintiff is asserting that Denise, and not the Trustee of the Irrevocable Trust, is the true owner of the Subject Property. *See, e.g., Fourth Inv. LP v. United States,* 720 F.3d 1058 (9th Cir. 2013).

But Denise has not personally paid any of the expenses associated with maintaining the Subject Property. Daniel Dimacale has always made the mortgage payments out of his personal earnings. Daniel has always paid the property taxes out of his personal earnings. Daniel has always paid down the line of credit taken out to

maintain and improve the Subject Property out of his personal earnings. Daniel has always paid the utilities out of his personal earnings.

Plaintiff also seeks to set aside purported "transfers" of the Subject Property which plaintiff argues were fraudulent pursuant to Cal. Civ. Code § 3439.04(a)(1) because the transfers were supposedly made with actual intent to hinder, delay, or defraud the United States. Plaintiff argues alternatively that the purported transfers were fraudulent pursuant to Cal. Civ. Code § 3439.04(a)(2)(B), because Denise supposedly did not receive reasonably equivalent value in exchange for the transfer, and she intended to incur, or reasonably should have believed that she would incur, tax debts beyond her ability to pay as they became due. See Complaint at ¶¶ 90-91.

Notably, plaintiff does NOT seek to set aside the initial transfer of the Subject Property from Daniel and Denise in August of 1997 to the Irrevocable Trust. Rather, the purported "transfers" which form the basis of the fraudulent conveyance action brought by plaintiff consist of transfers of bare legal title to the Subject Property in connection with a) a December, 2002 refinancing of the Subject Property owned by the Irrevocable Trust and b) securing a line of credit for the purpose of maintaining and improving the Subject Property in April of 2003.

Regarding the refinancing of the Subject Property in December of 2002, the Irrevocable Trust held record title to the Subject Property both before the refinancing and after the refinancing. It was the intent of Daniel and Denise that the Irrevocable Trust

retain beneficial ownership of the Subject Property during the refinancing process for the 1-day period in which record title was not in the name of the Trust.

Regarding the line of credit secured by the Subject Property which was obtained in April of 2003, the Irrevocable Trust held record title to the Subject Property both before the line of credit was obtained and after the line of credit was obtained. It was the intent of both Daniel and Denise that the Irrevocable Trust retain beneficial ownership of the Subject Property during the process of obtaining the line of credit secured by the Subject Property and the brief period of time during which record title was not in the name of the Irrevocable Trust.

The Irrevocable Trust has always held record title to the Subject Property except for these brief two periods, including the five-year period prior to the refinancing in December of 2002 and during the 20 year period since the line of credit was obtained in April of 2003.

## II. PLAINTIFF'S CLAIMS AGAINST DEFENDANTS

Plaintiff asserts the following causes of action:  1) to declare that the Subject Property is owned by the Irrevocable Trust as the "nominee" of Denise as her sole and separate property, 2) to set aside the specific transfers discussed above as "fraudulent conveyances" under Cal. Civ. Code § 3439.04(a)(1) and/or Cal. Civ. Code § 3439.04(a)(2)(B), and 3) to foreclose the lien of the IRS against the Subject Property if plaintiff prevails on either of the first two causes of action.

## A. Plaintiff's Claim #1: To Declare that the Irrevocable Trust Owns the Subject Property as the Nominee of Denise as her Sole and Separate Property

**Elements of Claim #1**:

Plaintiff must prove that the Irrevocable Trust holds the Subject Property:

a) as the agent/nominee of Denise, and

b)  as Denise's sole and separate property.

**Burden of Proof**

Plaintiff must prove these elements by a preponderance of the evidence.

**Case Law Relating to Claim #1 and the Legal Contentions of Daniel and Denise:**

Whether a third party is holding property as the "nominee" of a taxpayer is governed by state law of the relevant state. *Fourth Invest. LP v. United States,* 720 F.3d 1058 (9th Cir. 2013).  The Subject Property is located in California, and the Trust was formed in California. Daniel and Denise reside in California. Thus, the relevant state law in this case is California law. *Id.*

The Irrevocable Trust is a qualified personal residence trust ("QPRT").  A QPRT is defined in Treas. Reg.  (26 C.F.R.) § 25.2702-5(c). The IRS's QPRT rules require that the transferor live in a personal residence for a defined term (usually a set number of years). After that term, the trust terminates and distributes the personal residence to the

beneficiary. The IRS rules provide that to be a QPRT, the trust document must contain certain required terms. *Id.*

These terms include (but are not limited to) that (1) the trust must be irrevocable, (2) the trustor/transferor must use the residence as their personal residence during the trust term, and (2) the trust must only hold the personal residence. Id. The IRS QPRT regulations have been in place since 1992. In 2003, the IRS drafted a sample declaration of trust (trust document) that meets the requirements of a QPRT. *See* IRS Rev. Proc. 2003-42, 2003-1 C.B. 993. The IRS revenue procedure specifically states that "[i]n order to qualify as a QPRT, the governing instrument must contain all the provisions required under the regulations." Id., section 5.01(1).

The IRS revenue procedure's sample trust declaration provides that the trustor "retains no right, title, or interest in any trust asset except as specifically provided in this trust instrument." Id., section 4. In addition, during the term of the QPRT, the IRS's rules provide that "the Transferor shall have the exclusive rent-free use, possession, and enjoyment of the Residence." Id. (emphasis added).  Lastly, the IRS rules state, "The Transferor shall be responsible for the payment of all costs associated with the Residence, including but not limited to mortgage payments, property taxes, utilities, repairs, maintenance, and insurance." Id. (emphasis added).  As a part of transferring a personal residence into a QPRT, the trustor must file an IRS Form 709 gift tax return to report the interest transferred to the QPRT beneficiary.

Specifically, at the end of the QPRT trust term, the beneficiary receives title to the personal residence and the trust terminates. The beneficiary's right to the property in the future is a present gift subject to U.S. gift tax in the year the QPRT is formed.

Creditors of a QPRT's settlor have attempted to reach real property held inside of a QPRT. There are at least three cases in which courts have held that creditors cannot reach real property held in a QPRT: (1) *Seay v. Ferrante*, (2) *In re Earle,* and (3) *In re Yerushalmi.* Each of these cases supports the conclusion that, based on the facts of the present case, Daniel and Denise should prevail on this claim.

In *Seay v. Ferrante*, case no. G040346 (Cal. Ct. App. Mar. 27, 2009), a California Court of Appeal addressed the legal effect of setting up a QPRT under California law. In that case, a creditor of the QPRT's settlor attempted to collect a debt of the settlor from real property held in the QPRT. The California Court of Appeal rejected this attempt, stating that the QPRT is irrevocable and California law provides that a settlor's creditors cannot reach assets in an irrevocable trust. *See Laycock v. Hammer*, 141 Cal. App. 4th 25 (2006). In Laycock (quoted by the court in *Seay v. Ferrante*), the California Court of Appeals concluded as follows:

> "[B]y expressly giving settlors' creditors the right to reach only the assets of revocable trusts, the Legislature . . . has clearly indicated an intention that creditors are to be bound by the terms of an irrevocable trust to the same extent settlors, beneficiaries and other claimants are bound by such an instrument."

Id. at 31.

In *Premier Capital Funding Inc. v. Earle (In re Earle),* 307 B.R. 276 (Bankr. S.D. Ala. 2002), a bankruptcy court considered whether the bankruptcy trustee could reach real property held in a debtor's QPRT. In *Earle*, the bankruptcy trustee alleged that the debtor had either fraudulently transferred the real property into the QPRT or that the QPRT was the debtor's alter ego. The bankruptcy court in *Earle* disagreed with the trustee's assertions, holding that there was no fraudulent transfer upon the creation of the QPRT under Alabama's version of the uniform fraudulent transfers act. *Id.* at 301. The bankruptcy court in *Earle* focused on the IRS's QPRT rules, including (1) the fact that a federal agency (the IRS) prescribed the QPRT rules, (2) there was a completed gift to the QPRT beneficiary when the debtor settled the QPRT, (3) the real property is transferred from the QPRT to the trust beneficiaries upon completion of the trust term, and (4) the QPRT places restrictions on the use of the property during the trust term. Id. at 291-92. The bankruptcy court in Earle concluded as follows regarding the QPRT: "A transfer may frustrate and/or incidentally affect a creditor, but that is not enough to prove fraud, particularly where there is a legitimate reason proven for the transfer. Here, that reason was valid estate planning." Id. at 296.[1]

---

[1] In the case of *Ferrante v. Casey (In re Ferrante),* case no. CC-14-1222 (B.A.P. 9th Cir. Aug. 26, 2015), the bankruptcy appeal panel held in an unpublished opinion that the bankruptcy trustee could reach real property in the trust because the trust failed to qualify as a QPRT (the trust contained terms that violated the IRS rules). Ferrante is

*(footnote cont'd on next page)*

7

The case of *Pergament v. Yerushalmi (In re Yerushalmi),* 487 B.R. 98, 100 (Bankr. E.D.N.Y. 2012), also involved an unsuccessful effort by the creditors of the settlor of a QPRT to collect against real property owned by the QPRT. The bankruptcy court in *Yerushalmi* rejected the request to "pierce" the QPRT under New York's alter ego theory, stating that, while the Debtor retained the use and enjoyment of the real property after it was transferred to the QPRT and continued to pay all expenses associated with the [real property], those facts are consistent with the requirements of a valid QPRT.  The grantor of a qualified personal residence trust retains the right to live at the residence rent free but has to pay all costs associated with the residence for the duration of the trust term. *Id.* at 111-12.

What is particularly notable about these three cases is that the factors which are cited by the plaintiff here, *e.g.,* that Daniel and Denise continue to live in the Subject Property, that they paid the mortgage and property taxes  relating to the Subject Property, and they and claimed the related  tax deductions on their individual income tax returns, were determined by the three courts in question to support the  position of the defendants in those cases because these factors were all consistent with the rules governing the establishment and maintenance of QPRTs. In the present case, the factors cited by plaintiff in support of its argument actually support the position of Daniel and

---

distinguishable from the facts of this case because the Trust in this case is a valid QPRT that complies with all IRS rules.

Denise, because those factors are consistent with the rules governing the establishment and maintenance of QPRTs.

There are also cases where the validity and formalities of a QPRT were respected in other contexts. Of particular interest is *Eldridge v. Eldridge*, 398 S.C. 112 (2012). In *Eldridge*, the South Carolina Supreme Court agreed that the trustee in violation of his fiduciary duty when he transferred the real property out of a QPRT and allowed the beneficiary of the QPRT to bring suit for damages. This case is notable because, in the present matter, the fact that Daniel and Denise took some "cash out" for the purpose of paying their personal creditors during the course of the refinancing of the Subject Property in December of 2002 was arguably a potential breach of fiduciary duty by Daniel and Denise as to Nicole. That potential breach has been remedied, however, because, over the 20-year period since the refinancing, the increase in the balance due on the mortgage against the subject property has been reduced to the mortgage balance that existed at the time of the refinancing in December of 2002. In essence, the funds removed by Daniel and Denise in connection with the refinancing of the property to pay their personal debts have been repaid. The primary purpose of the refinancing was to lower to interest rate on the mortgage as it existed as of December, 2002. And during the last 20 years, title to the Subject Property has remained in the name of the Irrevocable Trust, with no further refinancings.

*See also Reidy v. Reidy*, 2021 IL App (1st) 200733-U, where the Court held that a QPRT was a valid and enforceable trust in the context of a divorce action.

**Factual Contentions of Daniel and Denise Relating to Claim #1 and the Evidence Relied Upon by Daniel and Denise**

The evidence and facts that will be produced at trial will demonstrate that the plaintiff's Claim #1 is without merit.  Numerous facts demonstrate that the Subject Property is not being held by the Irrevocable Trust as Denise's sole and separate property.   These facts include the following:

- The Irrevocable Trust was set up on the advice of an estate planning attorney who established a comprehensive estate plan for Daniel and Denise;

- Daniel and Denise both filed federal gift tax returns reflecting that they had irrevocably given Nicole the present value of her right to own the Subject Property in fee simple after the expiration of the time period during which Daniel and Denise had the right to live in the Subject Property;

- The Irrevocable Trust provisions comply with the rules established by the IRS regarding the creation and maintenance of QPRTs;

- Daniel and Denise have continued to reside in the Subject Property, as required by the QPRT rules, at all times since the Irrevocable Trust was established and the Subject Property was conveyed to the Irrevocable Trust;

- Daniel has continued to pay all mortgage payments, property taxes, utilities and other maintenance costs relating to the Subject Property, as required by the QPRT rules;

- Daniel and Denise have continued to claim the tax deductions for mortgage interest and property taxes, which is consistent with the QPRT rules;

- Daniel and Denise have lived in the Subject Property without paying any rent, as required by the QPRT rules;

- Title to the Subject Property has remained in the name of the Irrevocable Trust during the past 26 years, except for the very brief times discussed above, when the Subject Property was refinanced and a line of credit taken out to improve and maintain the Subject Property; and

- Daniel and Denise obtained refinancing on the advice of a loan broker and believed at the time of the refinancing and at the time they secured the line of credit that the temporary transfers of record title were not problematical and intended for the Irrevocable Trust to retain actual ownership of the Subject Property at all times.

Particularly problematical for plaintiff are the facts relating to plaintiff's assertion that the Subject Property was the sole and separate property of Denise. First, it has been the income of Daniel that has been used to make mortgage payments, pay property taxes, pay utilities, and to maintain and improve the Subject Property throughout the

11

Irrevocable Trust's ownership of the Subject Property. Denise has generally not worked outside the home during this period.

Second, the terms of the Irrevocable Trust instrument itself specifically state that Daniel has the right, and the obligation, to live in the Subject Property until 2027, at which time Nicole Dimacale will become the outright owner of the Subject Property. The QPRT Irrevocable Trust could have been set up in a manner that only allowed and required Denise to reside in the Subject Property for the applicable terms of years. That did not happen. Instead, the QPRT Irrevocable Trust was set up so that both Daniel and Denise have the right and obligation to live in the Subject Property.

These facts are utterly and completely inconsistent with plaintiff's assertion that the Subject Property is being held by the Irrevocable Trust as the agent/nominee for Denise as her sole and separate property.

## B. Plaintiff's Claim #2a: To Set Aside Alleged Fraudulent Conveyance Under Cal. Civ. Code § 3439.04(a)(1)

**Elements of Claim #2a:**

Plaintiff, as a creditor, must prove the following:

a) The debtor made a transfer of property;

b) The creditor had a claim that arose before or after the transfer of property was made;

c) The debtor made the transfer of property with the actual intent to hinder, delay or defraud the creditor.

**Burden of Proof**

Plaintiff must prove these elements by a preponderance of the evidence.

**Case Law Relating to Claim #2a and the Legal Contentions of Daniel and Denise:**

The present case is different from most, if not all fraudulent conveyance actions brought against an irrevocable trust to recover property previously transferred to the irrevocable trust.  **That is because plaintiff is not seeking to set aside the initial transfer of the Subject Property from Daniel and Denise to the Irrevocable Trust.** Instead, plaintiff is seeking to set aside as purportedly fraudulent transfers of bare legal title back to the Irrevocable Trust made in connection with a refinancing of the Subject Property and in connection with the securing of a line of credit taken out for the purpose of maintaining and improving the Subject Property.   The two transfers in question were the "back end" of  related transfers of bare legal title in and out of the Irrevocable Trust for the purpose of securing  a) a lower interest rate on the existing loan against the Subject Property and b) a line of credit needed to maintain and improve the Subject Property.  Neither of these transactions, whether viewed in isolation or viewed as part of a larger picture, support a finding of fraudulent intent.

California Civil Code § 3439.04(a)(1) requires the party raising a fraudulent transfer prove "actual intent" to defraud creditors. The California Civil Code codified 11 factors to use to determine whether there is actual intent to defraud. See § 3439.04(b).

13

The 11 factors under California law are: (1) transfer to an insider, (2) debtor retained control of the property, (3) transfer disclosed or concealed, (4) threat of being sued, (5) transfer of substantially all debtor's assets, (6) whether debtor absconded, (7) debtor removed or concealed assets, (8) consideration received, (9) debtor was insolvent, (10) transfer before debt incurred, and (11) transferred essential business assets. Id.

Daniel and Denise are not aware of (and Plaintiff has not cited) any cases in which refinancing a mortgage to achieve manageable payment terms is a fraudulent transfer (a) with the "actual intent" to defraud creditors, or (b) for less than fair value with the intent to defraud creditors. Furthermore, the IRS has ruled that mirrored transfers—one from A to B and the other is from B back to A can be reasonably equivalent consideration. See IRS Rev. Rul. 59-505 (finding that reciprocal transfers are an exchange for consideration).

More importantly, if nothing other than bare legal title to the Subject Property was transferred, i.e., if actual ownership of the Subject Property remained with the Irrevocable Trust at all times, there was no transfer of property to begin with, making it impossible for plaintiff to prove that there was a fraudulent conveyance. *See, e.g., In re Gustie,* 32 B.R. 466, 473 (Bankr. D. Mass. July 22, 1983) ("In conclusion, I find that Joseph Gustie did not fraudulently convey the Weston property to Frank and Isabelle Gustie because Joseph held only bare record title to the property. His financial condition

14

was not affected by either receipt of or by the retransfer of title."), *affirmed,* 36 B.R. 473 (D. Mass. 1984). That is the precise situation in the present case.

Under California law, it is possible to transfer base legal title to property, without transferring actual ownership, even in a tax context. *See Parkmerced Co. v. San Francisco,* 149 Cal. App. 3d 1091 (1983). In *Parkmerced*, bare legal title to real property was transferred from a corporation to a new corporation and then back to the original corporation as part of a merger. The California Court of Appeal held that the transfer out and back to the original owner was a transfer of "bare legal title" whereas beneficial ownership stayed with the original corporation. *Id.* The corporations always intended for the first corporation to be the beneficial owner. As such, the transfer of bare legal title was not a "transfer" that required reassessment of property taxes (the taxes at issue in Parkmerced). *Id.*

**Affirmative Defenses Relied Upon by Daniel and Denise**

Daniel and Denise raised the affirmative defense of *res judicata*. The factual and legal basis of this affirmative defense is set forth in their Opposition to the plaintiff's Motion for Summary Judgment. This Court ruled that this affirmative defense is not available to Daniel or Denise, for reasons stated in the Court's ruling. Daniel and Denise will not repeat their factual and legal contentions here. They acknowledge that the Court's ruling on this affirmative defense remains the law of the case unless and until the Court's ruling is modified or reversed on appeal. Nevertheless, Daniel and Denise wish

15

to make clear that they continue to disagree with the Court's ruling on this issue and will, if necessary, pursue an appeal of the Court's ruling.

### Factual Contentions of Daniel and Denise Relating to Claim #2a and the Evidence Relied Upon by Daniel and Denise

Daniel and Denise will rely on their own testimony, the testimony of Denise and Daniel's estate planning attorney (Steven B. Kray), the testimony of Denise's loan officer for the HELOC refinance (Ray Arocho), and the testimony of Samantha Kittle to show that the transfers of bare legal title in connection with refinancing and the HELOC transaction was not a fraudulent transfers. The facts which support their position include the facts recited above in the discussion of Claim #1. Those facts will not be repeated here but are incorporated herein by reference. The following additional facts support the position of Daniel and Denise:

- After the Property was placed in Trust in 1997, bare legal title to the Property was held outside the Trust for a total of 41 days out of a total of 9,752 days through the date of the filing of this memorandum. This equals 0.4% of the time. The following timeline reflects these two small blips:

- There were two quitclaim deeds in 2003. The first (on March 14, 2003) from Denise (as trustee) to Denise and Daniel, and the second (on April 23, 2003) from the Dimacales back to Denise (as trustee).

- The two 2003 transfers mirrored each other—one is from A to B and the other from B back to A.

- The transfers were intended to be only of bare legal title, as it was always intended that the Subject Property be owned by the Trust.

- The two 2003 HELOC-related transfers, when viewed together, are part of transaction intended to permit the borrowing of funds to maintain and improve the Subject Property.

- The 2002 transfers, when viewed together, are part of a transaction intended to lower the interest rate on the mortgage and to lower the monthly mortgage payments.

- The mirrored transfers of bare legal title were "nothing out," nothing in" and thus were for reasonably equivalent value.

- Denise, acting as trustee of the Trust, transferred bare legal title of the Subject Property outside the Irrevocable Trust solely at the request and requirement of the bank's loan officer, Ray Arocho.

- In 2002 and 2003, it was industry practice to transfer trust-held real property out of, and back into, trust as part of a loan refinancing.

- Daniel and Denise used the "cash out" in the December 2002 refinancing to pay their creditors.

17

- Denise and Daniel either did not owe any money to the IRS or had other assets outside the Trust such as a malpractice action.

- Denise and Daniel did not conceal the initial transfer of the Subject Property to the IRS and in fact advised the IRS of this initial transfer by filing gift tax returns with the IRS. Daniel and Denise did not seek to conceal the transfers of bare legal title—all the transactions related to the Property were recorded and available in the public record.

- Denise and Daniel were not insolvent around the time of either the HELOC transaction or the refinancing.

- Denise and Daniel did not own the Property before or after the HELOC transaction or before or after the refinancing.

- The HELOC refinancing had nothing to do with any potential liabilities.

- The HELOC was consistent with Denise's obligation, as trustee of the Trust, to preserve Trust property for the benefit of the Trust's beneficiary.

## C. Plaintiff's Claim #2b: To Set Aside Alleged Fraudulent Conveyance Under Cal. Civ. Code § 3439.04(a)(2)(B)

**Elements of Claim #2b:**

Plaintiff, as a creditor, must prove the following elements:

1. A transfer made by a debtor;

2. The debtor did not receive reasonably equivalent value in exchange for the transfer; and

18

3. The debtor intended to incur, or believed or reasonably should have believed
that they would incur, debts beyond their ability to pay as they became due.

**Burden of Proof**

Plaintiff must prove each of these elements by a preponderance of the evidence.

**Case Law Relating to Claim #2b and the Legal Contentions of Daniel and
Denise:**

As noted above, there cannot be a fraudulent conveyance if there was only a
transfer of bare legal title.  Daniel and Denise rely on the authorities discussed above in
the discussion of Claim 2a.

Furthermore, if no debt was owed to the creditor, the transfer as to that creditor
cannot be fraudulent.  Furthermore, even if there was a transfer and even if a debt was
owed to the creditor, if the debtor is not insolvent after the transfer, there is no fraudulent
conveyance under this section.

**Affirmative Defenses Relied Upon by Daniel and Denise**

Daniel and Denise raised the affirmative defense of *res judicata*.  The factual and
legal basis of this affirmative defense is set forth in their Opposition to the plaintiff's
Motion for Summary Judgment. This Court ruled that this affirmative defense is not
available to Daniel or Denise, for reasons stated in the Court's ruling.  Daniel and Denise
will not repeat their factual and legal contentions here.  They acknowledge that the
Court's ruling on this affirmative defense remains the law of the case unless and until the

Court's ruling is modified or reversed on appeal.  Nevertheless, Daniel and Denise wish to make clear that they continue to disagree with the Court's ruling on this issue and will, if necessary, pursue an appeal of the Court's ruling.

### Factual Contentions of Daniel and Denise Relating to Claim #2b and the Evidence Relied Upon by Daniel and Denise

Daniel and Denise rely on the factual contentions discussed above in connection with Claim #1 and Claim #2a.  Those contentions will not be repeated in detail here and are incorporated herein.

Of particular note, are the facts relating to the transfer of bare legal title, which support the conclusion that there was no "transfer" for purposes of the fraudulent conveyance laws. **Again, it is important that plaintiff has not sought to set aside the initial transfer of the Subject Property to the Irrevocable Trust.**

Also of particular note are the facts relating to the non-existence of any tax liability as of the date of the "transfers" in question as well as the fact that, to the extent there was a tax liability, there was a corresponding asset in the form of a malpractice action which was equal in value to the tax liability.

## III. Plaintiff's Claim #3: To Foreclose Its Lien Against the Subject Property

### Elements of Claim #3

Plaintiff must prove the following elements to prevail on this claim

a. Denise owns the Subject Property, and

b. The is a federal tax lien against Denise which attaches to this Property.

**Burden of Proof**

Plaintiff must prove each of these elements by a preponderance of the evidence.

**Case Law Relating to Claim #3 and the Legal Contentions of Daniel and Denise**

Should plaintiff prevail on claim #1, claim #2a or claim #2b, Denise will own the Subject Property to which a federal tax lien against Denise can attach. If such a lien exists, and Denise owns the Subject Property, there is no dispute that the Court has the ability to order a foreclosure sale of the Subject Property, subject to the discussion below.

Daniel and Denise, in opposition to the plaintiff's Motion for Summary Judgment, argued that the IRS did not have valid lien because the IRS had failed to prove that it validly revoked the previously issued certificates of release of federal tax lien. The Court ruled against Daniel and Denise on this issue. Daniel and Denise will not repeat the factual and legal basis for their argument herein. They acknowledge that the Court's ruling is the law of the case unless that ruling is modified or reversed on appeal. But they wish to make clear that they continue to contest the Court's ruling and may challenge that ruling on appeal in the event that there is adverse ruling to them on the merits of claims 1, 2a and/or 2b.

21

Courts have a limited amount of discretion regarding the issuance of a foreclosure sale order where the rights of third parties are involved. *United States v. Rodgers*, 461 U.S. 677 (1983). Daniel is not liable for the taxes in question, having discharged his personal liability in chapter 7 bankruptcy. Under the terms of the Irrevocable Trust, Daniel, a third party, has the right to live in the Subject Property for the next 4 years. If plaintiff prevails on the "nominee" claim, the Court will have (improperly) determined that Daniel has no right to live in the subject property for the next 4 years. If plaintiff prevails on one or both of the fraudulent conveyance claims, the resulting judgment would NOT apply to the original transfer of the subject property to the Irrevocable Trust, which established Daniel's right to live in the Subject Property until 2027. Thus, Daniel should be compensated for the value of that right if the Subject Property is sold.

Denise, as the taxpayer, has very few, if any, rights under *Rodgers, supra.* Nevertheless, Denise does have the ability to seek a temporary stay of any foreclosure order, to allow her to voluntarily sell the Subject Property, assuming that there is no appeal from a ruling in favor of plaintiff on the first or second claim. The purpose of such a temporary stay would be for the purpose of effectuating a voluntary sale of the property.[2]

A voluntary sale of the property would result in the property being sold for a higher price than if the property was sold at a foreclosure sale. Why is that important? If

---

[2] Such a stay would be distinct and apart from any stay that might be requested pending appeal of an ruling by this Court that is adverse to Daniel and Denise.

the Subject Property is sold, there will be a large taxable gain to the owner of the Subject Property.  The Subject Property was purchased for less than $1 million. The current estimated value of the Subject Property, per Zillow, is about $4.4 million, with a value range between $3.8 million and $5.1 million.   A sale at $3.8 million will generate capital gain income of roughly $3 million, with federal and state taxes of roughly $1 million.

Also, sale at the lower end of the range would not satisfy both the IRS and FTB tax liabilities. If there is going to be a sale of the Subject Property, the property should be sold at the highest possible price so that a) both the IRS and the FTB can be paid in full, and b) there may be proceeds from the sale which can be used to pay some or all of the taxes resulting from the sale of the property.

**Factual Contentions of Daniel and Denise Relating to Claim #3 and the Evidence Relied Upon by Daniel and Denise**

There is no meaningful dispute that the sale of the Subject Property will trigger a significant taxable gain.  The purchase price of the Subject Property is in the record as being less than $1 million.

# IV. CLAIMS OF DANIEL AND DENISE AGAINST PLAINTIFF
## Daniel

Daniel Counterclaimed against Plaintiff seeking a declaration that certain actions were taken by Plaintiff against Daniel in violation of the Discharge Injunction imposed by 11 U.S.C. 524(a) and seeking a declaration prohibiting Plaintiff from taking any

23

further actions against Daniel in violation of this Discharge Injunction.  Given that the Discharge Injunction imposed by 11 U.S.C. 524(a) continues to apply, and given that Plaintiff has not engaged in any further actions against Daniel in violation of the Discharge Injunction since the filing of the complaint, Daniel is abandoning his counterclaim against Plaintiff.

**Denise**

Denise Counterclaimed against Plaintiff seeking a declaration that certain actions were taken by Plaintiff against Daniel in violation of the Discharge Injunction relating to community property imposed by 11 U.S.C. 524(a) and seeking a declaration prohibiting Plaintiff from taking any further actions against Denise in violation of this community property Discharge Injunction.  Given that the community property Discharge Injunction imposed by 11 U.S.C. 524(a) continues to apply and given that Plaintiff has not engaged in any further actions against Denise in violation of the Discharge Injunction since the filing of the complaint, Denise is abandoning her counterclaim against Plaintiff.

## V. EVIDENTIARY ISSUES

Plaintiff has filed a Motion in Limine with respect to the testimony of Expert Witness Samantha Kittle CPA.  Daniel and Denise have filed an Opposition to that Motion. The Court should deny Plaintiff's Motion for the reasons set forth in the Opposition.

# VI. ATTORNEY'S FEES

Under section 7430 of the Internal Revenue Code, a "prevailing party" in an action involving the Internal Revenue Service can seek an award of Attorney's fees and costs. *See generally Knudsen v. Comm'r*, 793 F.3d 1030 (9th Cir. 2015), <u>*Huffman v. Comm'r*,</u> 978 F.2d 1139 (9th Cir. 1992).   Should they prevail at trial, Daniel and Denise will pursue a motion for fees under section 7430.

# VII. OTHER MATTERS

**Jury Trial-**

Neither party has requested a trial by jury.

**Bifurcation-**

Neither Daniel nor Denise request that trial issues be bifurcated.

Respectfully submitted,

Law Offices of A. Lavar Taylor, LLP

Dated:  February 14, 2023       __/s/A. Lavar Taylor_____
A. LAVAR TAYLOR

Attorney for Defendants, Denise and Daniel Dimacale

25