1   E. MARTIN ESTRADA
United States Attorney
2   THOMAS D. COKER
3   Assistant United States Attorney
Chief, Tax Division
4   GAVIN L. GREENE (Cal. Bar No. 230807)
5   Assistant United States Attorney
6        Federal Building, Suite 7211
         300 North Los Angeles Street
7        Los Angeles, California 90012
8        Telephone: (213) 894-4600
         Facsimile: (213) 894-0115
9        E-mail: Gavin.Greene@usdoj.gov

10

11  Attorneys for the United States of America

12

13              UNITED STATES DISTRICT COURT
                CENTRAL DISTRICT OF CALIFORNIA
14                    WESTERN DIVISION

15

16  United States of America,              Case No. 2:21-cv-06012-CBM-RAO

17       Plaintiff,                        United States of America's Trial Brief

18
         v.                                Local Rule 16-10
19
20  Denise Dimacale, et al.,               Trial before the Honorable Consuelo
                                           B. Marshall
21       Defendants.
22                                         Date:        May 30, 2023
                                           Time:        8:30 a.m.
23  And related Cross and Counterclaim     Courtroom:   8D
24  Actions.                               Location:    First Street Courthouse
                                                        350 West First Street
25                                                      Los Angeles, California
26

27

28

                              1

1

## United States of America's Trial Brief

2    Pursuant to Local Rule 16-10, the United States of America hereby

3 submits its Trial Brief to: (1) address Defendants' claim that the United

4 States must prove that the subject property was Denise Dimicale's sole and

5 separate property; (2) address the cases cited in the memoranda of facts and

6 law filed by defendants Nicole Dimacale [ECF document number 100] and

7 Denise and Daniel Dimacale [ECF document number 105]; and (3) request

8 that the Court grant the motion in limine to exclude the testimony of

9 Samantha Kittle [ECF document number 96] because it is irrelevant.[1]

10 **A. The Government does not need to prove that the subject property**

11 **is Denise Dimacale's sole and separate property**

12    The parties agree that to establish that the Trust holds the subject

13 property as a nominee of Denise Dimacale, the United States must show

14 that: (1) the Trust is the nominee of Denise Dimacale; and (2) Denise

15 Dimacale has an ownership interest in the property based on the nominee

16 theory of ownership [Final pretrial conference order, ECF document number

17 109, 5:24-26]. However, Defendants have cited no controlling authority

18 establishing their claim that the Government must prove Denise Dimacale's

19 ownership interest in the subject property is her sole and separate property

20 [*id.* at 6:1-5]. Defendants appear to contend that if Denise Dimacale owns the

21 subject property—because the Trust holds the property as her nominee—

22 then it is community property [*id.* at 14:23-15:10]. But community property

23 "is liable for a debt incurred by either spouse during marriage … regardless

24 of whether one or both spouses are parties to the debt or to a judgment for

25 the debt." Cal. Fam. Code § 910(a); *In re McIntyre*, 222 F.3d 655, 658 (9th

26

27

28

---

[1] Unless otherwise noted, all references to ECF document numbers refer to 2:21-cv-06012-CBM.

1  Cir. 2000) (granting creditors recourse against the whole community estate

2  on debts of only one spouse). Thus, whether the subject property is

3  community property, or Denise Dimacale's separate property, it is liable for

4  her outstanding tax liability. And, in any event, the undisputed facts show

5  that prior to the transfer of the property to the Trust, it was the sole and

6  separate property of Denise [*see* Exhibit 22].

7  **B. Response to Trial Briefs**

8         The cases cited by Defendants do not support their defenses to the

9  Government's claim. They either present useful counterfactual situations

10 illustrating the trust's nominee status, or involve statutory issues of state

11 law that are not at issue here. *Premier Capital Funding Inc. v. Earle (In re*

12 *Earle)*, 307 B.R. 276 (Bankr. S.D. Ala. 2002) found no fraudulent conveyance

13 into a qualified personal residence trust (QPRT) and *Pergament v.*

14 *Yerushalmi (In re Yerushalmi)*, 487 B.R. 98 (Bankr. E.D.N.Y. 2012) found no

15 grounds to pierce a QPRT. But unlike the individuals in those cases, Denise

16 Dimacale transferred the subject property during litigation which rendered

17 her insolvent, and withdrew equity to pay her personal debts. In *Eldridge v.*

18 *Eldridge*, 398 S.C. 113 (2012), the court considered whether the suit was

19 timely under South Carolina state law. In this case, the timeliness of the suit

20 is not at issue [ECF 109, 12:7-21]. Neither *Laycock v. Hammer*, 141 Cal. App.

21 4th 25 (2006) nor *Seay v. Ferrante,* case no. G040346 (Cal. Ct. App. Mar. 27,

22 2009), *2009 Cal. App. Unpub. LEXIS 2518* involved the United States, which

23 is not limited by the remedies available to other judgment lienholders.

24      ***In re Earle***

25      In *In re Earle*, the bankruptcy court held that "in transferring the real

26 property to a [QPRT], for estate-planning purposes, at her accountant's

27 suggestion, [Ms. Earle] did not actually intend to hinder, delay, or defraud

28 creditors, within meaning of the Alabama fraudulent transfer statute[.]" 307

1    B.R. at 293. To reach this conclusion, the bankruptcy court considered

2    objective factors similar to Cal. Civ. Code § 3439.04(b). *See id.* at 291-293.

3    Unlike Denise Dimacale, the bankruptcy court determined that Ms. Earle

4    did not transfer the property under threat of lawsuit [*id.* at 292], the transfer

5    did not represent substantially all her assets [*id.*], she was not insolvent

6    after the transfer [*id* at 293], and she did not incur substantial debt shortly

7    after the transfer [*id.*]. Moreover, Ms. Earle only had a single transfer to the

8    trust, and did not transfer the property back to herself to refinance the

9    property and pay off her personal debts.

10        Though distinguishable on its facts, the reasoning of the court in *In re*

11    *Earle* supports a finding that the transfer from Denise Dimacale to the Trust

12    on April 23, 2003 was fraudulent under California law and should be

13    avoided. Unlike Ms. Earle, Denise Dimacale transferred the subject property

14    to the Trust after the stipulated decision was entered against her in Tax

15    Court and she was insolvent after the transfer because the subject property

16    was essentially her only asset.

17        ***In re Yerushalmi***

18        In *In re Yerushalmi*, Joseph (Debtor) and Malka Yerushalmi purchased

19    the property at issue in 1983 with a mortgage of $200,000. 487 B.R. at 101.

20    In 1989, they borrowed over $1,000,000. *Id.* In 1995, they formed the QPRT.

21    *Id.* In 1996, Debtor transferred his 50% interest in the property to Malka,

22    and then she transferred her 100% interest in the property to the QPRT. *Id.*

23    at 103. In 2002, Malka commenced a divorce proceeding against Debtor. *Id.*

24    at 102. In 2003, Joseph and Malka Yerushalmi consolidated the mortgages

25    at a more favorable interest rate but did not take any equity out of the

26    property at that time. *Id.* 101. Debtor had a law practice with Amnon

27    Shiboleth, which dissolved in 1995. *Id.* at 102. Shiboleth sued Debtor in

28    1998, and judgment was entered in 2007. *Id.*

1    The chapter 7 bankruptcy trustee brought an adversary proceeding

2    claiming that debtor's QPRT was his alter ego [*id.* at 100], which depended

3    on state law. In New York, to pierce the veil of a corporation a plaintiff must

4    show that: "(1) the owner exercised complete domination of the corporation

5    with respect to the transaction at issue; and (2) the owner used this

6    domination to commit a fraud or wrong against the plaintiff which resulted

7    in injury to the plaintiff." *Id.* at 109. The court noted that Debtor caused the

8    QPRT to be formed in 1995 and the Residence was transferred into the

9    QPRT in 1996 *at a time when the Debtor had significant assets and*

10   *disposable income. Id.* at 111. Although the Debtor's law partnership

11   dissolved in 1995, the litigation was not commenced until 1998. *Id.*

12   Moreover, the only transaction conducted by the QPRT since its inception

13   was to refinance the mortgage at a lower rate [*id.* at 112], which did not

14   cause any equity to be taken out of the property, and there was "nothing else

15   about [the transaction] that would suggest that the Debtor was holding

16   himself out as the 'owner' of the property." *Id.* Based on these facts, the

17   bankruptcy court found that "Debtor did not engage in any conduct or enter

18   into any transaction that would be inconsistent with the QPRT's ownership

19   of the property[.]" *Id.*

20   The case at issue is very different. Unlike Mr. Yerushalmi, at the time

21   Denise Dimacale transferred the subject property to the Trust, she did not

22   have significant assets or disposable income, and the Tax Court had entered

23   a stipulated judgment establishing her tax liability of about $700,000 for tax

24   year 1996. The transfer rendered her insolvent. Moreover, when she

25   refinanced the property, not only did she repeatedly represent on the loan

26   documents that she was the owner, but she used the proceeds from the loan

27   to pay personal debts. Like *In re Earle,* the reasoning of the court in *In re*

28

1   *Yerushalmi* supports a finding that the Trust held title to the subject

2   property as the nominee of Denise Dimacale.

3         ***Eldridge v. Eldridge***

4         In *Eldridge v. Eldridge*, the father created a revocable trust for the

5   benefit of himself and his wife. 398 S.C. at 116. When she died, their two

6   sons were named as co-successor trustees. *Id*. In 1999, the father formed a

7   QPRT, which held title to a Florida condominium. *Id*. The QPRT had a term

8   of eight years, and if the father died during that time, the property would

9   transfer to the revocable trust. *Id*. In 2001, the father married Frances

10   Eldridge. *Id*. In 2002, he sold the Florida condominium and purchased a

11   home in Hilton Head, South Carolina. *Id*. at 117. The property was initially

12   placed in the revocable trust, rather than the QPRT. *Id*. In 2003, the home

13   was transferred to the father and Frances Eldridge as joint tenants with the

14   right of survivorship. *Id*. In 2006, the father died, and Frances Eldridge

15   transferred the property to her own trust. *Id*. The father's sons filed suit

16   against Frances Eldridge. *Id*.

17         The lower court determined that the suit was untimely under South

18   Carolina law, but the Supreme Court of South Carolina determined that it

19   was timely. Since the issue of timeliness under South Carolina law is not

20   present in this case, *Eldridge* is not relevant. And the timeliness of the suit

21   is not at issue [ECF 109, 12:7-21].

22         ***Laycock v. Hammer***

23         In *Laycock v. Hammer*, Ellison purchased a life insurance policy,

24   created an irrevocable life insurance trust, and assigned his interest to an

25   irrevocable trust. 141 Cal. App. 4th at *27. Hammer obtained a money

26   judgment against Ellison, and then Ellison died. *Id*. at *28. California

27   Probate Code section 18200 provides that if a settlor retains the power to

28   revoke the trust, the trust property is subject to the claims of the settlor's

1   creditors. The trial court determined that "[t]he evidence Hammer presented

2   did not raise any material inference that Ellison had control or ownership of

3   the trust." *Id.* at \*29. The only documents that perhaps raised an inference of

4   control or ownership by Ellison were the documents that listed him as co-

5   trustee on the insurance policy account. *Id.* at \*33. The court concluded that

6   there was no law prohibiting trustors from being trustees or co-trustees of an

7   irrevocable trust. *Id.*

8       *Laycock* involved the creditor's claims under California Probate Code

9   section 18200. The United States is not proceeding under that statute and is

10  not limited by the remedies available to other judgment lienholders.

11  Moreover, the plaintiff in *Laycock* did not argue fraudulent conveyance in

12  the trial court. In this case, the IRS tax lien attaches to all property and

13  rights to property, including property held by nominees. *See Fourth Inv. LP*

14  *v. United States*, 720 F.3d 1058, 1066 (9th Cir. 2013).

15      ***Seay v. Ferrante***

16      In *Seay v. Ferrante*, Robert Ferrante established a trust and conveyed

17  title to his residence to the trust in 1994. *2009 Cal. App. Unpub. LEXIS* at

18  \*2. Ferrante had the right to use the residence for 20 years and his children

19  had a remainder interest in the trust assets. *Id.* at \*3. In 2004, William Seay

20  obtained a money judgment for about $2,500,000 against Ferrante. *Id.* at \*2

21  Seay filed a petition requesting an order that the trust was invalid. *Id.* at \*3

22  Maria Ferrante—the mother of the children with a remainder interest in the

23  trust assets—moved to dismiss the petition. *Id.* The motion to dismiss was

24  granted. *Id.* at \*4.

25      The court determined that under California law, "[a] money judgment

26  may be enforced against an interest in a trust…but a beneficiary's interest is

27  not subject to execution." *Id.* at \*7 (citations omitted). "Rather, the proper

28  method of enforcement is by petition for an order directing sale of the

1   beneficiary's interest in the trust." *Id*. Seay did not seek to reach Ferrante's

2   interest as a beneficiary of the trust, but instead petitioned only to declare

3   the trust invalid and have its assets sold as the property of Seay. *Id*. at *9.

4   Such action is not authorized by the California Code of Civil Procedure. *Id*.

5        *Seay* is not relevant to this case. It involved what a creditor may do

6   under California state law. It did not involve claims of the Government

7   seeking to enforce federal rights. Moreover, it did not involve nominee or

8   fraudulent conveyance claims. In this case, the United States does not seek

9   to have the Trust declared invalid under California state law. Rather, the

10  United States seeks a determination that the Trust holds the subject

11  property as a nominee of Denise Dimacale. *See Fourth Inv. LP v. United*

12  *States*, 720 F.3d at 1070.

13  **C. Defendants should be precluded from calling Samantha Kittle**

14  **because her testimony is not relevant**

15        Denise and Daniel Dimacale were represented by an attorney in Tax

16  Court, and they resolved that case by stipulation. They were again

17  represented by an attorney in district court, who opposed the United States'

18  motion for summary judgment [Case number 8:12-cv-01601-CBM, ECF

19  document number 66] and filed a partial cross motion for summary judgment

20  [*id*. at document number 48] on their behalf. At the end of that process, the

21  Court entered judgment for the United States establishing Denise

22  Dimacale's tax liability for tax year 1996.

23        Despite admitting that "the merits of the underlying tax liability for

24  1996 is *res judicata*" [ECF document number 103, 10:6-9], Defendants intend

25  to call Samantha Kittle as an expert witness to "discusses the workpapers of

26  the IRS agent who conducted the audit and addresses the question of

27  whether the deficiencies asserted by the IRS were actually owed prior to the

28  capitulation of Daniel and Denise to the IRS." *Id*. at 7:19-22. Specifically, Ms.

1   Kittle asserts that: (1) that the IRS overstated the additional income, (2) that

2   the audit appears incomplete, and (3) that if the "Dimacales had been

3   properly advised by tax professionals, they likely would not have had an

4   amount due and owing" for tax year 1996. *Id.* at 8:1-12.

5        The Dimacales cite *In re Palmer*, 207 F.3d 566 (9th Cir. 2000), which

6   they allege permits them to "look at the question of whether…they actually

7   owed the deficiencies asserted by the IRS." ECF document number 103,

8   10:18-21. In that case, the IRS issued a statutory notice of deficiency to Gale

9   Palmer. *In re Palmer*, 207 F.3d at 567. He filed a timely petition with the

10  Tax Court. *Id.* The IRS filed an answer with affirmative allegations of fraud,

11  and since Palmer failed to respond, the allegations were deemed admitted.

12  *Id.* The IRS then filed a motion for summary judgment, which was

13  unopposed, and ultimately granted. *Id.* Gale and Julie Palmer then filed for

14  chapter 7 bankruptcy. *Id.* The IRS asserted that the tax liabilities were non-

15  dischargeable because of tax fraud. *Id.* The Ninth Circuit determined that

16  the alleged tax fraud was not actually litigated, because "[f]or all practical

17  purposes, Palmer's adverse fraud ruling in the Tax Court was the product of

18  a default." *Id.* at 568. In the prior litigation, Denise Dimacale was

19  represented by counsel, she litigated the issue of her tax liability for tax year

20  1996, and she lost. Judgment was entered against her on the merits. There is

21  no dispute that her tax liability for tax year 1996 is res judicata, and the

22  ///

23  ///

24  ///

25

26

27

28

9

1     reasoning in *In re Palmer* does not support her effort to relitigate the

2     question of whether she actually owed the deficiencies asserted by the IRS.

3

4                                            Respectfully submitted,

5

6                                            E. MARTIN ESTRADA
                                           United States Attorney

7                                            THOMAS D. COKER
                                           Assistant United States Attorney

8                                            Chief, Tax Division

9

10    Dated: May 23, 2023             /s/

11                                            GAVIN GREENE
                                           Assistant United States Attorney

12                                            Attorneys for the United States of America

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Certificate of Compliance**

The undersigned, counsel of record for the United States, certifies that this brief contains 2,724 words, which complies with the word limit of L.R. 11-6.1.

E. MARTIN ESTRADA
United States Attorney
THOMAS D. COKER
Assistant United States Attorney
Chief, Tax Division

Dated: May 23, 2023                        /s/
GAVIN GREENE
Assistant United States Attorney
Attorneys for the United States of America