DAVID J. WARNER (Cal. Bar No. 261718)
dwarner@hsdtaxlaw.com
**HOLTZ, SLAVETT & DRABKIN, APLC**
10940 Wilshire Boulevard, Suite 2000
Los Angeles, CA 90024
Telephone: (310) 550-6200
Fax: (310) 774-3904

Attorney for Defendants Nicole Dimacale, as an individual, and Nicole Dimacale, as the trustee of the NCD Qualified Personal Residence Trust

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Denise Dimacale, et al.,<br><br>Defendants.<br>───────────────<br>And related Cross and Counterclaim Actions | Case No. 2:21-cv-06012-CBM-RAO<br><br>DEFENDANT NICOLE DIMACALE'S TRIAL BRIEF<br><br>Hon. Consuelo B. Marshall<br>Courtroom 8D<br><br>**Trial (Est. 2 Days) Beginning**:<br>Date: May 30, 2023<br>Time: 10:00 a.m. |

Pursuant to Local Rule 16-10, Defendants Nicole Dimacale, as an individual, and Nicole Dimacale, as the trustee ("Trustee") of the NCD Qualified Personal Residence Trust (the "Irrevocable Trust") (collectively, the "Nicole Defendants") respectfully submit the following trial brief.

///
///
///
///

# **TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................6

II.     PLAINTIFF CANNOT AND SHOULD NOT PREVAIL ON CLAIM #1 (THE
"NOMINEE" THEORY) BECAUSE THE IRREVOCABLE TRUST IS NOT THE
"NOMINEE" OF DENISE. ....................................................8

    A.      Plaintiff Cannot Prevail on Claim #1 Because the Irrevocable Trust is not the
Nominee of Denise Based on All Facts and Circumstances and the Actions of
Denise and Daniel Over the Past 25 Years..........................8

    B.      Plaintiff Cannot Prevail on Claim #1 Because Courts that Have Analyzed
QPRTs Have Consistently Concluded that a QPRT Settlor's Creditors Cannot
Reach Assets Held in a Valid QPRT. ...................................10

III.    PLAINTIFF CANNOT PREVAIL ON CLAIM #1 (THE "NOMINEE" CAUSE
OF ACTION) UNLESS PLAINTIFF PROVES ELEMENT #3—THAT DENISE'S
INTEREST IN THE PROPERTY IS HER SOLE AND SEPARATE PROPERTY........13

IV.     PLAINTIFF CANNOT PREVAIL ON CLAIM #2 OR CLAIM #3
(FRAUDULENT TRANSFER THEORIES) BECAUSE THE TRANSFER OF BARE
LEGAL TITLE IN APRIL 2003 TO FACILITATE A HELOC TRANSACTION IS NOT
A FRAUDULENT TRANSFER.........................................15

    A.      Plaintiff Cannot Prevail on Claim #2 or Claim #3 Because Plaintiff Has the
Burden to Prove a Transfer of Beneficial Ownership in the Property, and the
Transfer in April 2003 was Solely a Transfer of Bare Legal Title. ...........17

DEFENDANT NICOLE DIMACALE'S TRIAL BRIEF

B.     Plaintiff Cannot Prevail on Claim #2 Because, Under Element #3, Plaintiff Has the Burden to Prove Actual Intent to Defraud, and Plaintiff Cannot Meet This Burden...................................................................................................22

C.     Plaintiff Cannot Prevail on Claim #3 Because, Under Element #2, Plaintiff Has the Burden to Prove the Transfer Was for Less than Reasonably Equivalent Value, and the April 2003 Transfer Was for Equivalent Value. ...........................23

D.     In Conclusion, Plaintiff Cannot Meet Its Burden on Claim #2 or Claim #3..24

V.   CONCLUSION...........................................................................................25

DEFENDANT NICOLE DIMACALE'S TRIAL BRIEF

# TABLE OF AUTHORITIES

**Cases**

*Airwork Corp. v. Markair Express, Inc.* (*In re Markair Inc.*), 172 B.R. 638 (B.A.P. 9th Cir. 1994) ................................................................................................ 18

*Artesanias Hacienda Real S.A. de C.V. v. North Mill Capital LLC* (*In re Wilton Armitale, Inc.*), 968 F.3d 273 (3rd Cir. 2020) ...................................................... 14

*Dumas v. Mantle* (*In re Mantle*), 153 F.3d 1082 (9th Cir. 1998) ...................... 13

*Eldridge v. Eldridge*, 398 S.C. 112 (2012) ........................................................ 10

*Estate of Spirtos v. One San Bernadino County Case Numbered SPR 02211*, 443 F.3d 1172 (9th Cir. 2006) ........................................................................... 14

*Ferrante v. Casey* (*In re Ferrante*), case no. CC-14-1222 (B.A.P. 9th Cir. Aug. 26, 2015) .................................................................................................... 10

*Fourth Invest. LP v. United States*, 720 F.3d 1058 (9th Cir. 2013) .................... 8

*In re Foam Systems Co.*, 92 B.R. 406 (9th Cir. BAP 1988) ............................... 18

*In re Guevarra* (*Guevarra v. Whatley*), 638 B.R. 120 (B.A.P. 9th Cir. 2022) ........... 18, 19

*In re Rogal*, 112 F. Supp. 712 (S.D. Cal. 1953) ........................................ 19, 21

*In re Schwartz*, 954 F.2d 569, 572 (9th Cir.1992) ............................................ 14

*Johnson v. Johnson*, 192 Cal. App. 3d 551 (1987) .................................. 18, 19, 21

*Laycock v. Hammer*, 141 Cal. App. 4th 25 (2006) ........................................... 11

*Leeds LP v. United States*, 807 F. Supp. 2d 946, 967 (S.D. Cal. 2011), *aff'd sub nom.*, *Fourth Inv. LP v. United States*, 720 F.3d 1058 (9th Cir. 2013). ........................ 8

*Majewsky v. Empire Constr. Co., Ltd.*, 2 Cal. 3d 478, 485 (1970) .................... 18

*McGee v. Allen*, 7 Cal.2d 468 (1936) ............................................................... 19

*McGranahan v. Dillard* (*In re Dillard*), Case No. 06-20596-A-7, 2007 Bankr. LEXIS 3836, 2007 WL 3237165 (Bankr. E.D. Cal. Oct. 30, 2007) ............... 18, 19, 20, 21, 22

*Parkmerced Co. v. San Francisco*, 149 Cal. App. 3d 1091 (1983) .................... 18

*Pergament v. Yerushalmi* (*In re Yerushalmi*), 487 B.R. 98 (Bankr. E.D.N.Y. 2012) . 10, 12

*Premier Capital Funding Inc. v. Earle* (*In re Earle*), 307 B.R. 276 (Bankr. S.D. Ala. 2002)................................................................................................10, 11

*Seay v. Ferrante*, case no. G040346 (Cal. Ct. App. Mar. 27, 2009) ...........................10, 11

*Siegel v. Boston* (*In re Sale Guaranty Corp.*), 220 B.R. 660 (B.A.P. 9th Cir. 1998), *aff'd*, 199 F.3d 1375 (9th Cir. 1999)......................................................................18, 21

*Torrez v. Torrez* (*In re Torrez*), 63 B.R. 751 (B.A.P. 9th Cir. 1986) .........................19, 21

**Statutes**

11 U.S.C. § 362(a) ...........................................................................................14

26 U.S.C. § 6321 ...............................................................................................8

Cal. Civ. Code § 856 ........................................................................................19

**Other Authorities**

IRS Rev. Proc. 2003-42, 2003-1 C.B. 993 .....................................................9

IRS Rev. Rul. 69-505, 1969-2 C.B. 179 .........................................................24

IRS Rev. Rul. 76-157, 1976-1 C.B. 306 .........................................................24

IRS Rev. Rul. 77-359, 1977-2 C.B. 24 ...........................................................24

**Regulations**

Treas. Reg. § 25.2702-5(c) ..............................................................................8

# I.    **INTRODUCTION**

Plaintiff in this case is the United States of America ("Plaintiff"), acting for its agency, the Internal Revenue Service (the "IRS").  Plaintiff seeks to foreclose on a federal tax lien for unpaid taxes assessed against Denise Dimacale ("Denise") for her taxable year 1996.  Plaintiff asserts that the IRS's tax lien attaches to certain real property located in Newport Beach, California (the "Property").  However, the Property is not owned by Denise—it is owned by the Trustee, as the trustee of the Irrevocable Trust. The Irrevocable Trust has owned the Property since 1997—that is, for over 25 years. Denise and her husband, Daniel Dimacale ("Daniel"), transferred the Property to the Irrevocable Trust on August 20, 1997—years before the IRS had a federal tax lien for Denise's unpaid taxes.

In 1997, Denise and Daniel wanted to provide for their (at that time) 11-year-old daughter, Nicole.  Denise and Daniel met with an estate planning attorney, Steven Kray, who recommended that Denise and Daniel set up the Irrevocable Trust as part of their estate plan.

The Irrevocable Trust is a Qualified Personal Residence Trust ("QPRT").  The QPRT was established by IRS rules and regulations.  These rules set out the terms that a QPRT must follow.  Stated another way, if a QPRT does not follow these rules, then it no longer qualifies as a QPRT.  These IRS rules require the QPRT to be an irrevocable trust and that the grantors must live in the property as their principal residence.  These IRS rules require that the QPRT be for a set term of years.  (In this case, the Irrevocable Trust's QPRT term is 30 years and expires in August 2027—four years from now.) These IRS rules also require the grantor to pay all expenses associated with the property.

After forming the Irrevocable Trust, Denise and Daniel complied with the IRS's QPRT rules.  They filed U.S. gift tax returns in 1997 shortly after creating the Irrevocable Trust and transferring the Property to the Irrevocable Trust.  This step is necessary because, under the IRS QPRT rules, the Irrevocable Trust's beneficiary (Nicole) will

receive title to the Property at the end of the trust term (in August 2027). Thus, in 1997, Nicole received a present gift equal to the value in 1997 to receive title to the Property in 2027 (30 years later).

Since 1997, Denise and Daniel have resided in the Property pursuant to the terms of the Irrevocable Trust and under the IRS's QPRT rules. Since 1997, Daniel (and not Denise) has consistently paid the mortgage, property taxes, utilities, and other maintenance pursuant to the terms of the Irrevocable Trust and under the IRS's QPRT rules. For over 25 years, Denise and Daniel have complied with the IRS's QPRT rules and the terms of the Irrevocable Trust.

**Significantly, Plaintiff does not argue that the Irrevocable Trust is a sham or that the August 1997 transfer of the Property to the Irrevocable Trust should be set aside as a fraudulent conveyance**. In addition, Plaintiff abandoned its original theory that a refinance transaction related to the Property in 2002 was a fraudulent conveyance. Thus, Plaintiff's remaining theories are that (1) the Irrevocable Trust is the nominee of Denise, or (2) a home equity line of credit (HELOC) transaction to make necessary improvements to the Property was a fraudulent transfer.

As discussed in detail below, these facts and others demonstrate that the Irrevocable Trust does not own the Property as the nominee of Denise. These facts also demonstrate that the HELOC transaction in April 2003 was not a fraudulent transfer. Instead, the April 2003 transfer was merely a transfer of bare legal title to restore record title back to the Irrevocable Trust. Thus, Plaintiff cannot prevail on any of its causes of action. Without a nominee situation (Claim #1) or fraudulent transfer (Claim #2 and Claim #3), Plaintiff's federal tax lien does not attach to the Property. Thus, Plaintiff is not entitled to foreclose because there is no lien that attaches to the Property.

Therefore, the Court should find in full for the Nicole Defendants and deny in full the relief sought by Plaintiff.

///

///

## II.   <u>PLAINTIFF CANNOT AND SHOULD NOT PREVAIL ON CLAIM #1 (THE "NOMINEE" THEORY) BECAUSE THE IRREVOCABLE TRUST IS NOT THE "NOMINEE" OF DENISE.</u>

**A.   Plaintiff Cannot Prevail on Claim #1 Because the Irrevocable Trust is <u>not</u> the Nominee of Denise Based on All Facts and Circumstances and the Actions of Denise and Daniel Over the Past 25 Years.**

In this case, Plaintiff has the burden of proof on the "nominee" cause of action. *See Leeds LP v. United States*, 807 F. Supp. 2d 946, 967 (S.D. Cal. 2011), *aff'd sub nom.*, *Fourth Inv. LP v. United States*, 720 F.3d 1058 (9th Cir. 2013).

The IRS's federal tax lien attaches to all property and rights to property of the taxpayer. 26 U.S.C. (I.R.C.) § 6321. Under a nominee theory of ownership, the IRS's federal tax lien can attach to property held in the name of a nominee for the benefit of the taxpayer. *See Fourth Invest. LP v. United States*, 720 F.3d 1058 (9th Cir. 2013).

State law determines whether property is held in the name of a nominee. While certain factors can be helpful, this determination is based on all facts and circumstances. *Id.* at 1069-70. The overall inquiry is about who is the beneficial owner of the property. *Id.* at 1068.

**In this case, it is significant that Plaintiff is not challenging the transfer of the Property to the Irrevocable Trust, and Plaintiff is not alleging that the Irrevocable Trust is a sham.**

The Property is owned by the Trustee, as trustee of the Irrevocable Trust, and the Irrevocable Trust is a QPRT. A QPRT is defined in Treas. Reg. § 25.2702-5(c). The IRS's QPRT rules **require** that the transferor live in a personal residence for a defined term (usually a set number of years). After that term, the trust terminates and distributes the personal residence to the beneficiary. The IRS rules provide that to be a QPRT, the trust document must contain certain required terms. *Id.* These terms include (but are not

limited to) that (1) the trust **must be irrevocable**, (2) the grantor **must use the residence as their personal residence** during the trust term, and (2) the trust must only hold the personal residence.   *Id.*

The IRS QPRT regulations have been in place since 1992.  In 2003, the IRS drafted a sample declaration of trust (trust document) that meets the requirements of a QPRT.  *See* IRS Rev. Proc. 2003-42, 2003-1 C.B. 993.  The IRS revenue procedure specifically states that "[i]n order to qualify as a QPRT, the governing instrument must contain all the provisions required under the regulations."  *Id.*, section 5.01(1).

The IRS revenue procedure's sample trust declaration provides that the trustor "retains no right, title, or interest in any trust asset except as specifically provided in this trust instrument."  *Id.*, section 4.  In addition, during the term of the QPRT, the IRS's rules provide that "**the Transferor shall have the exclusive rent-free use, possession, and enjoyment of the Residence**."  *Id.* (emphasis added).  Lastly, the IRS rules state, "**The Transferor shall be responsible for the payment of all costs associated with the Residence**, including but not limited to mortgage payments, property taxes, utilities, repairs, maintenance, and insurance."  *Id.* (emphasis added).

In this case, Denise and Daniel hired a competent estate planning attorney, Attorney Kray, to assist with drafting an estate plan.  Attorney Kray recommended the Irrevocable Trust, and Attorney Kray helped Denise and Daniel set up the Irrevocable Trust.  Denise and Daniel then made an irrevocable gift by transferring the Property to the Irrevocable Trust, and they properly filed IRS gift tax returns to report this irrevocable gift in 1997.

For over 25 years, Denise and Daniel **followed the IRS's QPRT rules**.  The IRS's QPRT rules **required** Denise and Daniel to use the Property as their principal residence and **required** Denise and Daniel to pay the costs associated with the Property.  Furthermore, Plaintiff has never claimed that Denise and Daniel did not comply with the IRS's QPRT rules.

Denise and Daniel's actions over the past 25 years have been consistent with the

Property being beneficially owned by the Irrevocable Trust for the benefit of their daughter, Nicole.  Therefore, under the standard for a nominee analysis, the beneficial ownership of the Property is with the Irrevocable Trust (for the benefit of Nicole). Denise is not, and has not been, the beneficial owner of the Property for over 25 years while the Property has been in the Irrevocable Trust.

Therefore, the Irrevocable Trust is not the nominee of Denise, and Plaintiff cannot prevail on Claim #1.  As such, the Court should find in full for the Nicole Defendants on Claim #1.

**B.      Plaintiff Cannot Prevail on Claim #1 Because Courts that Have Analyzed QPRTs Have Consistently Concluded that a QPRT Settlor's Creditors <u>Cannot</u> Reach Assets Held in a Valid QPRT.**

Multiple courts have concluded that creditors of a QPRT's grantor **cannot** reach real property held in a valid QPRT, including (1) *Seay v. Ferrante*, (2) *In re Earle*, and (3) *In re Yerushalmi*.[1]  Each of these three cases will be discussed below.

**Before discussing these cases, it is worth remembering that Plaintiff in this case is not alleging (and has never alleged) that the Irrevocable Trust is a sham or**

---

[1] In the case of *Ferrante v. Casey* (*In re Ferrante*), case no. CC-14-1222 (B.A.P. 9th Cir. Aug. 26, 2015), the bankruptcy appeal panel held in an unpublished opinion that the bankruptcy trustee could reach real property in the trust because the trust failed to qualify as a QPRT (the trust contained terms that violated the IRS rules).  *Ferrante* is distinguishable from the facts of this case because the Irrevocable Trust in this case is a valid QPRT that complies with all IRS rules.

In another case, *Eldridge v. Eldridge*, 398 S.C. 112 (2012), the beneficiaries of a QPRT sued the trustee for breach of fiduciary duty, and the South Carolina Supreme Court agreed that the trustee breached his duty when he transferred the real property out of a QPRT.

**an invalid QPRT.**

In *Seay v. Ferrante*, case no. G040346 (Cal. Ct. App. Mar. 27, 2009), a California Court of Appeal considered QPRTs under California law.  In *Seay v. Ferrante*, a creditor of the QPRT's settlor attempted to collect from real property held in the QPRT.  The California Court of Appeal rejected this attempt, stating that **the QPRT is irrevocable and California law provides that a <u>settlor's creditors cannot reach assets in an irrevocable trust</u>**.  *See Laycock v. Hammer*, 141 Cal. App. 4th 25 (2006).  In *Laycock* (quoted by the court in *Seay v. Ferrante*), the California Court of Appeals concluded, "[B]y expressly giving settlors' creditors the right to reach only the assets of revocable trusts, the Legislature . . . has clearly indicated an intention that creditors are to be bound by the terms of an irrevocable trust to the same extent settlors, beneficiaries and other claimants are bound by such an instrument." *Id.* at 31.

In *Premier Capital Funding Inc. v. Earle* (*In re Earle*), 307 B.R. 276 (Bankr. S.D. Ala. 2002), a bankruptcy court considered whether the bankruptcy trustee could reach real property held in a debtor's QPRT.  In *Earle*, the bankruptcy trustee alleged that the debtor had either fraudulently transferred the real property into the QPRT or that the QPRT was the debtor's alter ego.

The bankruptcy court in *Earle* disagreed with the trustee, holding that there was no fraudulent transfer upon the creation of the QPRT under Alabama's version of the uniform fraudulent transfers act.  *Id.* at 301.  The bankruptcy court in *Earle* focused on the IRS's QPRT rules, including (1) the fact that a federal agency (the IRS) prescribed the QPRT rules, (2) there was a completed gift to the QPRT beneficiary when the debtor settled the QPRT, (3) the real property is transferred from the QPRT to the trust beneficiaries upon completion of the trust term, and (4) the QPRT places restrictions on the use of the property during the trust term.  *Id.* at 291-92.  The bankruptcy court in *Earle* concluded about the QPRT, "A transfer may frustrate and/or incidentally affect a creditor, but that is not enough to prove fraud, particularly where there is a legitimate reason proven for the transfer.  Here, that **reason was valid estate planning**." *Id.* at 296.

The case of *Pergament v. Yerushalmi* (*In re Yerushalmi*), 487 B.R. 98, 100 (Bankr. E.D.N.Y. 2012), also involved a QPRT settlor's creditors attempting to collect on real property held inside a QPRT.  The bankruptcy court in *Yerushalmi* rejected the request to "pierce" the QPRT under New York's alter ego theory, stating:

> While it is true the Debtor retained the use and enjoyment of the [the real property] after it was transferred to the QPRT and continued to pay all expenses associated with the [real property], **those facts are consistent with the requirements of a valid QPRT**. The grantor of a qualified personal residence trust retains the right to live at the residence rent free but has to pay all costs associated with the residence for the duration of the trust term . . . .

*Id.* at 111-12 (emphasis added).  The bankruptcy court in *Yerushalmi* found that the debtor "did not engage in any conduct or enter into any transaction that would be inconsistent with the QPRT's ownership of the property . . . ." *Id.* at 112.  Thus, the bankruptcy trustee could not reach the property under a fraud or alter ego theory.

While nominee and alter ego theories of liability use different elements and factors, they are based on a similar idea that while legal title of property is held in the name of one person, beneficial ownership is held in the name of another.  In these three above cases, the courts all rejected attempts by creditors to claim that a QPRT's settlor is the beneficial owner of QPRT assets.  Our office is not aware of (and Plaintiff has not cited) any case in which a court considered a valid QPRT and determined that the QPRT was the nominee of the settlor.  On the contrary, there are at least three cases (cited above) in which courts have concluded that a settlor's creditors cannot reach real property held in a QPRT.

Furthermore, these three cases are highly analogous to the Irrevocable Trust in this case.  Like the QPRTs in the above-cited cases, Denise and Daniel properly formed the Irrevocable Trust to comply with all the IRS's QPRT requirements.  Like the QPRTs in

the above-cited cases, Denise and Daniel properly transferred the Property to the Irrevocable Trust.  Like the QPRTs in the above-cited cases, Denise and Daniel complied for over 25 years with the IRS's QPRT rules.

Therefore, like the three courts cited above, this court should determine that Denise's creditor (Plaintiff) cannot reach the Property held in the Irrevocable Trust. Therefore, the court should find in full for the Nicole Defendants on Claim #1.

## III.   PLAINTIFF CANNOT PREVAIL ON CLAIM #1 (THE "NOMINEE" CAUSE OF ACTION) UNLESS PLAINTIFF PROVES ELEMENT #3—THAT DENISE'S INTEREST IN THE PROPERTY IS HER SOLE AND SEPARATE PROPERTY.

As stated on pages 5 and 6 of the final pretrial conference order in this case (ECF Doc. No. 109), the parties disagree on whether Plaintiff must prove two or three elements as part of its nominee cause of action.  The Nicole Defendants contend that Plaintiff must prove that Denise's interest in the Property is her sole and separate property.  Plaintiff alleges that it does not need to prove the Property is Denise's sole and separate property; instead, Plaintiff believes that it need only prove that the Irrevocable Trust is Denise's nominee.  For the reasons stated below, Plaintiff is incorrect, and Plaintiff in this case must prove that the Property is Denise's sole and separate property.

Daniel filed for Chapter 7 bankruptcy on in March 2005 (case no. 8:05-bk-11530-ES in the U.S. Bankruptcy Court for the Central District of California).  On a bankruptcy petition date, several things occur at once.

First, the Chapter 7 trustee takes possession of all property of the bankruptcy estate, including all community property that exists on the petition date.  *See, e.g.*, *Dumas v. Mantle* (*In re Mantle*), 153 F.3d 1082, 1085 (9th Cir. 1998) ("We agree that under California law, division of property is the event that will sever the liability of community

property for community debts, and, until division, all community property of the divorcing couple is property of the bankruptcy estate pursuant to [11 U.S.C.] § 541(a)(2).").

Second, the Chapter 7 trustee represents all creditors and owns all lawsuits existing as of the bankruptcy petition date.  *See, e.g.*, *Estate of Spirtos v. One San Bernadino County Case Numbered SPR 02211*, 443 F.3d 1172 (9th Cir. 2006); *Artesanias Hacienda Real S.A. de C.V. v. North Mill Capital LLC* (*In re Wilton Armitale, Inc.*), 968 F.3d 273 (3rd Cir. 2020).

Third, the automatic stay protects the bankruptcy debtor and prevents an existing creditor from collecting or attempting to collect against any property of the estate.  *See* 11 U.S.C. § 362(a).  Any action taken by a creditor in violation of the automatic stay is void ab initio.  *See In re Schwartz*, 954 F.2d 569, 572 (9th Cir.1992).

In this case, if the Property were community property, then the Property would have been part of the bankruptcy estate in Daniel's bankruptcy case.  As such, if the Property were community property, the Chapter 7 trustee could have exercised control and sold the Property for the benefit of creditors (including the IRS).  This would have allowed the Property (as community property) to benefit all creditors—not just the IRS.

Furthermore, any actions against the Property (as community property) while the bankruptcy case were pending would have been void ab initio.  The IRS filed a "nominee" notice of federal tax lien against the Property on July 15, 2005—while the bankruptcy case was pending and while the Chapter 7 trustee's fraudulent transfer action against the Property was pending.  If the Property were community property, then the IRS's filing of this lien would be void ab initio as a violation of the automatic stay in bankruptcy.

Stated another way—both things cannot be true: The Property cannot be community property at the same time as the IRS's nominee lien is valid.  The lien can only be valid if the Property is Denise's sole and separate property.  As discussed in detail in Section II, above, the Irrevocable Trust is not the nominee of Denise, and Denise

has no interest in the Property.  However, even if this court determines that Denise has an interest in the Property through her nominee (the Irrevocable Trust), Plaintiff must still prove that the Property is Denise's sole and separate property.

As such, Plaintiff must prove the third element of Claim #1—that the Property is Denise's sole and separate property.

## IV.  PLAINTIFF CANNOT PREVAIL ON CLAIM #2 OR CLAIM #3 (FRAUDULENT TRANSFER THEORIES) BECAUSE THE TRANSFER OF BARE LEGAL TITLE IN APRIL 2003 TO FACILITATE A HELOC TRANSACTION IS NOT A FRAUDULENT TRANSFER.

Plaintiff has the burden to prove that the alleged fraudulent transfer was done with "actual intent to hinder, delay, or defraud the creditor" (Claim #2).  Alternatively, Plaintiff must prove both that (1) Denise did not receive reasonably equivalent value in exchange for the transfer, and (2) Denise intended to incur or believed she would incur a debt beyond her ability to pay (Claim #3).  Plaintiff cannot meet its burden on either of these claims.

**Plaintiff is not arguing that the initial transfer of the Property to the Irrevocable Trust was a fraudulent transfer or that the Irrevocable Trust is a sham. In this case, Plaintiff also has abandoned the allegation in its complaint that the Trust refinancing the mortgage secured by the Property in 2002 was a fraudulent transfer.**

Thus, Plaintiff is left with one potential basis for a fraudulent transfer—a HELOC transaction in April 2003.  For the reasons stated below, the HELOC transaction is not a fraudulent transfer, and Plaintiff cannot meet its burden to prove the elements necessary for a fraudulent transfer.

///

Plaintiff has not cited to any cases or other authority that (1) a HELOC transaction is a fraudulent transfer, or (2) a transfer of bare legal title is a fraudulent transfer. Therefore, Plaintiff cannot meet its burden on this cause of action.

In early 2003, Nicole was 16 years old, and the Irrevocable Trust still had 24 years left in its term.  Denise, acting as trustee of the Irrevocable Trust at that time, identified that the Property needed certain necessary improvements to maintain the Property. Raymond Arocho, the loan officer, recommended that a $100,000 HELOC could be used to make the improvements to the Property.  Mr. Arocho stated that the only way to obtain the HELOC was to briefly transfer bare legal title to the Property out of the Trust and back into the Trust.  Mr. Arocho stated in 2003 that it was industry practice for real property held in trust to be transferred out of, and back into, the trust as part of a HELOC transaction.

Denise, acting as trustee of the Irrevocable Trust, followed Mr. Arocho's advice and direction and transferred bare legal title for the Property to Denise and Daniel as individuals on March 14, 2003.  On March 14, 2003, the HELOC transaction closed.  On April 23, 2003 (40 days later), Denise transferred bare legal title to the Property back to Denise, as trustee of the Irrevocable Trust. Thus, bare legal title for the Property was held outside of the Irrevocable Trust solely for 40 days to facilitate the HELOC transaction. During the HELOC transaction in March and April 2003, Denise and Daniel always intended for beneficial ownership of the Property to stay in the Irrevocable Trust.  Denise (acting as trustee) only transferred bare legal title to the Property out of the Irrevocable Trust at the requirement of the HELOC lender.

After transfer of the Property to the Irrevocable Trust in 1997, bare legal title to the Property was held outside the Trust for a total of 41 days out of a total of 9,407 days through the date of the filing of this trial brief.  This equals 0.4% of the time.  The following timeline reflects these two small blips where bare legal title was transferred temporarily outside the Irrevocable Trust: (1) One day for the 2002 refinance transaction, and (2) 40 days for the HELOC transaction.  Other than these two blips, the Property has

been held in the Irrevocable Trust for over 25 years:



There are three key reasons why the HELOC transaction is **not** a fraudulent transfer and Plaintiff cannot meet its burden on Claim #2 or Claim #3.  Each of these reasons will be discussed in separate sections below.

**A. Plaintiff Cannot Prevail on Claim #2 or Claim #3 Because Plaintiff Has the Burden to Prove a Transfer of Beneficial Ownership in the Property, and the Transfer in April 2003 was Solely a Transfer of Bare Legal Title.**

Plaintiff claims the April 2003 HELOC transaction was a fraudulent transfer under Cal. Civ. Code § 3439.04(a)(1) (Claim #2) or § 3439.04(a)(2)(B) (Claim #3).  As part of Claim #2 and Claim #3, Plaintiff has the burden to prove a transfer of beneficial ownership in the Property from Denise (as an individual) to the Irrevocable Trust in April 2003.

However, Denise never had beneficial ownership in the Property in 2003.  The transfers of record title to the Property in March and April 2003 were **solely transfers of bare legal title**.  Denise (as an individual) merely held bare legal title to facilitate the HELOC transaction at the request of the lender.  Denise and Daniel always intended for beneficial ownership of the Property to remain with the Irrevocable Trust during the HELOC transaction.

Whether an individual holds only bare legal title or a beneficial interest in property is an issue determined by state law (specifically California law).  *See, e.g.*, *Siegel v. Boston* (*In re Sale Guaranty Corp.*), 220 B.R. 660, 663-64 (B.A.P. 9th Cir. 1998), *aff'd*, 199 F.3d 1375 (9th Cir. 1999).

California law allows for the transfer of bare legal title without the transfer of beneficial ownership.  *See, e.g.*, *McGranahan v. Dillard* (*In re Dillard*), Case No. 06-20596-A-7, 2007 Bankr. LEXIS 3836, 2007 WL 3237165 (Bankr. E.D. Cal. Oct. 30, 2007); *see also Parkmerced Co. v. San Francisco*, 149 Cal. App. 3d 1091 (1983).  Specifically, California law allows for the **imposition of a "<u>resulting trust</u>" when one person owns the equitable or beneficial interest in property, but bare legal title is in the name of another**.  *See Majewsky v. Empire Constr. Co., Ltd.*, 2 Cal. 3d 478, 485 (1970).  Courts impose a resulting trust as a remedy when the transferee was "never intended to take beneficial interest through the transaction." *See Airwork Corp. v. Markair Express, Inc.* (*In re Markair Inc.*), 172 B.R. 638, 642 (B.A.P. 9th Cir. 1994) (citing *In re Foam Systems Co.*, 92 B.R. 406, 408 (9th Cir. BAP 1988)).  This determination is based on the intentions of the parties.  *Id.*

Multiple courts interpreting California law have imposed resulting trusts when bare legal title is placed in the name of another, so that a person can obtain a real estate loan or complete a real estate transaction.  *See, e.g.*, *In re Guevarra* (*Guevarra v. Whatley*), 638 B.R. 120 (B.A.P. 9th Cir. 2022) (uncle/debtor only held bare legal title to nephew's property when uncle co-signed on loan to help nephew obtain a home mortgage); *Siegel*, 220 B.R. at 663-64 (I.R.C. § 1031 exchange accommodator only held bare legal title to cash beneficially owned by its clients); *Dillard*, 2007 Bankr. LEXIS 3836, at *5 (wife only held bare legal title when husband added her to title at requirement of lender to refinance mortgage on real property); *Johnson v. Johnson*, 192 Cal. App. 3d 551, 555, 556 (1987) (son only held bare legal title to mother's real property placed in son's name to obtain more favorable loan terms).

**Under California law, a lien creditor or judgment creditor cannot prevail against a resulting trust**.  *See, e.g.*, *Torrez v. Torrez* (*In re Torrez*), 63 B.R. 751, 754 (B.A.P. 9th Cir. 1986); *In re Rogal*, 112 F. Supp. 712, 717 (S.D. Cal. 1953).  Only a bona fide purchaser for value without notice of a resulting trust can upset the terms of a resulting trust.  *See* Cal. Civ. Code § 856; *Rogal*, 112 F. Supp. at 717.  A lien holder or judgment creditor is **not** a bona fide purchaser under California law.  *See, e.g.*, *McGee v. Allen*, 7 Cal.2d 468, 473 (1936).  In these cases cited above applying California law (including *Guevarra*, *Dillard*, *Johnson*, *Torrez*, and *Rogal*), creditors of the person holding bare legal title could not reach the real property at issue because the person did not hold a beneficial interest.  *See, e.g.*, *Dillard*, 2007 Bankr. LEXIS 3836, at *9-10.  In addition, **courts have rejected creditor's attempts to claim that the transfer of bare legal title is a fraudulent transfer**.  *See, e.g.*, *id.* at *9.

For example, in *Dillard*, a husband transferred bare legal title to property that he owned into the name of himself and his wife as joint tenants at the request of a lender.  *Id.* at *2.  The husband was in the process of refinancing the loan secured by the real property, and the lender required that his wife be on title.  *Id.*  Several years after the refinancing finished, the wife transferred her interest back to her then ex-husband.  *Id.* at *3.  Less than one year after this transfer of bare legal title back to her ex-husband, the ex-wife filed for Chapter 7 bankruptcy.  *Id.*  The Chapter 7 trustee then filed an adversary proceeding, stating that the ex-wife's transfer was a fraudulent transfer under the California Uniform Voidable Transactions Act (the same statutes that Plaintiff seeks to set aside the April 2003 HELOC transaction).  *Id.* at *4.

The court in *Dillard* rejected the Chapter 7 trustee's claim that this was a fraudulent transfer and determined that the ex-wife never beneficially owned the real property at issue.  *Id.* at *9.  The court in *Dillard* stated:

When the defendant [the ex-husband] placed the debtor [the ex-wife] on the title to the Manteca property, he **did so**

1    **without any intention of conveying beneficial title to her**.

2    There is no dispute on this point. Both the debtor and the

3    defendant agree that **the transfer to the debtor was done at the**

4    **request of a lender**. The debtor acquiesced only to

5    accommodate the defendant. Both understood and agreed that

6    <u>**the defendant remained the beneficial owner of the entire**</u>

7    <u>**property**</u> despite the transfer to the debtor. <u>**The later deed from**</u>

8    <u>**the debtor to the defendant merely restored record title to the**</u>

9    <u>**defendant. The defendant held beneficial title at all relevant**</u>

10   <u>**times**</u>.

11          . . .

12          California courts will impose a resulting trust in cases

13   where <u>**the beneficial owner allows record title to be placed in**</u>

14   <u>**the name of another so the beneficial owner is able to obtain**</u>

15   <u>**financing that would be unavailable if title had been placed**</u>

16   <u>**in the beneficial owner's name**</u>.

17

18   *Id.* at *5-6 (emphasis added).

19          Thus, the court in *Dillard* determined that the ex-wife never was the beneficial

20   owner of the real property.  *Id.* at *9.  Instead, she only held bare legal title to help

21   facilitate a refinance transaction.  *Id.* at *5.  As such, the court found that the ex-wife held

22   title solely for the beneficial ownership of the ex-husband applying the law of resulting

23   trusts.  *Id.* at *6.  Based on this resulting trust, there was no transfer of beneficial

24   ownership that could be a fraudulent transfer, and the creditors could not reach the

25   property.  *Id.* at *9.  As the court in *Dillard* stated,

26

27          [T]he property transferred to the defendant [ex-husband] by the

28          debtor [ex-wife] was not property of the debtor. She <u>**merely**</u>

**restored record title to the true owner of the property**, the
defendant. Because it was the defendant's property, not the
debtor's, **there was no fraudulent or preferential transfer** of
the property of the debtor.

*Id.* (emphasis added).

Like *Dillard*, courts applying California law have imposed resulting trusts and
denied creditor's claims of a fraudulent transfers in multiple cases, including *Gueverra*
(Ninth Circuit Bankruptcy Appeal Panel), *Siegel* (Ninth Circuit Bankruptcy Appeal
Panel), *Torrez* (Ninth Circuit Bankruptcy Appeal Panel), and *Rogal* (District Court for
the Southern District of California), and *Johnson* (California Court of Appeal).  Resulting
trusts have been imposed under California law inside and outside of bankruptcy.  *See,
e.g.*, *Johnson*, 192 Cal. App. 3d 551 (imposing a resulting trust outside of bankruptcy).

In this case, Plaintiff incorrectly points to Denise (as an individual) transferring
bare legal title to the Property back to the Irrevocable Trust in April 2003 as a fraudulent
transfer.  Denise and Daniel never intended to hold beneficial ownership to the Property
in 2003.  Instead, Denise and Daniel intended for beneficial ownership of the Property to
be held the entire time with the Irrevocable Trust.  Denise (acting as trustee of the
Irrevocable Trust) only transferred bare legal title to the Property in March 2003 at the
request of the HELOC lender to facilitate that loan.

Like in *Dillard*, the Irrevocable Trust in this case could not obtain a HELOC while
legal title was held in the Irrevocable Trust.  Thus, Denise, acting as trustee of the
Irrevocable Trust, transferred bare legal title to the Property out of the Irrevocable Trust
in March 2003 solely to facilitate the HELOC transaction.  Like *Dillard*, Denise, acting
as trustee of the Irrevocable Trust, never intended for beneficial ownership of the
Property to be transferred outside the Irrevocable Trust.  Like *Dillard*, beneficial
ownership of the Property stayed in the Irrevocable Trust.

Therefore, like the bankruptcy court in *Dillard*, Denise's transfer of bare legal title in the Property back to the Irrevocable Trust in April 2003 was not a fraudulent transfer. Instead, the April 2003 transfer of bare legal title "merely restored record title" of the Property back to the Irrevocable Trust.

Thus, the Property was never Denise's property in 2003—it was always the Irrevocable Trust's property. As such, there was no transfer of the Property in 2003. Therefore, there could not have been a fraudulent transfer in 2003.

As such, Plaintiff cannot meet its burden on Claim #2 or Claim #3, and this court should find in full for the Nicole Defendants.

**B. Plaintiff Cannot Prevail on Claim #2 Because, Under Element #3, Plaintiff Has the Burden to Prove Actual Intent to Defraud, and Plaintiff Cannot Meet This Burden.**

Plaintiff has the burden to prove that Denise had the actual intent to defraud creditors when she transferred bare legal title to the Property back to the Irrevocable Trust in April 2003.

As analyzed in Section IV.A, above, Denise as an individual only briefly held bare legal title to the Property. Denise never held a beneficial interest in the Property at the time of the HELOC transaction in 2003. In addition, there must be a "transfer" of beneficial ownership for the California Civil Code provision to apply. In this case, there was no such transfer of beneficial ownership (only of bare legal title).

**Furthermore, Plaintiff has not cited any cases in which a HELOC transaction was a fraudulent transfer.** The Nicole Defendants also are not aware of any cases in which a HELOC transaction was a fraudulent transfer. The absence of any citations or authorities to support Plaintiff's action speaks volumes. There are no cases to support Plaintiff's position because Plaintiff's position has no legal support—obtaining a HELOC

to make improvements to real estate does not defraud any creditor.  This is because the property and the creditors who have a lien against such property are in the same financial position before and after the transaction.

Therefore, Plaintiff cannot meet its burden to prove that there was actual intent by Denise to defraud Plaintiff.  As such, Plaintiff cannot prevail on Claim #2, and the Nicole Defendants should prevail in full on Claim #2.

**C. Plaintiff Cannot Prevail on Claim #3 Because, Under Element #2, Plaintiff Has the Burden to Prove the Transfer Was for Less than Reasonably Equivalent Value, and the April 2003 Transfer Was for Equivalent Value.**

In this case, the transfers of bare legal title **were of reasonably equivalent value**.  In March 2003, Denise, acting as trustee of the Irrevocable Trust, transferred bare legal title of the Property to Denise, as an individual.  Forty days later in April 2003, Denise, as an individual, transferred bare legal title back.  These two transactions mirror each other and must be viewed in conjunction.  After all, the first transfer of bare legal title (from the Irrevocable Trust to Denise as an individual) would not have happened without the second transfer of bare legal title back to the Irrevocable Trust.  These two transfers of bare legal title were dependent on each other.

As discussed in Section IV.A, above, there was no transfer of beneficial ownership in the Property in 2003.  However, even if this court determines that there was a transfer of beneficial ownership for 40 days in March and April 2003, these transfers were of reasonably equivalent value as discussed below.

Plaintiff incorrectly argues that Denise's transfer of bare legal title to the Property to the Irrevocable Trust was for no consideration.  However, to make this argument, Plaintiff asks the court to not look behind the curtain and only consider one day in April 2003—without considering the context of why bare legal title was transferred back to the

Irrevocable Trust in April 2003.  Plaintiff's view on this issue is legally and factually incorrect, and the March 2003 and April 2003 transfers must be viewed together.  Plaintiff does not cite to any authority for why reciprocal transfers should not be viewed in conjunction with each other.

Plaintiff's own agency (the IRS) has ruled on several occasions that reciprocal transfers should be viewed together as an exchange for consideration, even when each transfer on its own appears to be gratuitous and for no consideration.  *See* IRS Rev. Rul. 69-505, 1969-2 C.B. 179 (finding that reciprocal transfers are an exchange for consideration); *see also* IRS Rev. Rul. 77-359, 1977-2 C.B. 24; IRS Rev. Rul. 76-157, 1976-1 C.B. 306.  For example, in Rev. Rul. 69-505, two individuals, *A* and *B*, transferred interests in real property to a trust.  When viewed separately, these two transfers appeared gratuitous and for no consideration.  However, the IRS ruled that these two transfers were instead a reciprocal exchange—where the consideration for one transfer was the second transfer.

Similarly, in this case, the Irrevocable Trust transferred bare legal title to the Property to Denise as an individual in March 2003 to facilitate the HELOC.  In the next month, Denise transferred bare legal title to the Property back to the Irrevocable Trust.  These two reciprocal transfers are for the same consideration (the Property), and this consideration is for full value.  Therefore, the March 2003 and April 2003 transfers of bare legal title were an exchange for reasonably equivalent value, and Plaintiff cannot meet its burden on element #2 of Claim #3.  As such, the court should find in full for the Nicole Defendants on Claim #3.

## D. In Conclusion, Plaintiff Cannot Meet Its Burden on Claim #2 or Claim #3.

As analyzed in detail above, Denise never held beneficial ownership of the Property in 2003.  During the HELOC transaction, Denise merely held bare legal title to

help facilitate the HELOC transaction and at the requirement of the HELOC lender. Denise and Daniel never intended for Denise to hold beneficial ownership. Instead, Denise and Daniel always intended for the Property to beneficially owned by the Irrevocable Trust. This intention is evidenced by the facts in this case—that bare legal title to the Property was in the Irrevocable Trust 99.6% of the time with only 41 days where bare legal title was held outside the Irrevocable Trust.

To the extent that Denise held bare legal title as an individual in 2003, the court should follow California law and the law of resulting trusts. In this situation, Denise never owned the Property as an individual in 2003—the Irrevocable Trust owned it the entire time. As such, there was no "transfer" of the Property because it was owned by the Irrevocable Trust the entire time, and there could not be a fraudulent transfer.

Furthermore, Plaintiff cannot cite to any cases where a HELOC transaction was a fraudulent transfer. Therefore, Plaintiff cannot meet its burden on Claim #2 or Claim #3, and the Court should find in full for the Nicole Defendants on Claim #2 and Claim #3.

## V.   **CONCLUSION**

Plaintiff cannot prevail on any of its three claims.

For Claim #1 (the nominee theory), Plaintiff cannot meet its burden that the Irrevocable Trust is the nominee of Denise. For over 25 years, Denise and Daniel followed the IRS's QPRT rules for the Irrevocable Trust. In addition, Plaintiff does not allege that the Irrevocable Trust ever failed to comply with the IRS's QPRT rules.

For Claim #2 and Claim #3 (the fraudulent transfer theories), Plaintiff also cannot meet its burden. Plaintiff cannot cite to any evidence that Denise (as an individual) was a beneficial owner of the Property in 2003, and Plaintiff cannot cite to any case law that a HELOC transaction is a fraudulent transfer. Plaintiff believes that transfer of bare legal

title to facilitate a HELOC transaction is a fraudulent transfer. However, this belief is not supported by any case law and contradicts California law related to resulting trusts.

Furthermore, Plaintiff does not claim that the Irrevocable Trust is a sham or that the initial transfer to the Irrevocable Trust over 25 years ago in 1997 was fraudulent. Over 25 years ago, Denise and Daniel sought to plan for their future and to provide for their minor daughter, Nicole. After this initial transfer and irrevocable gift, the Property has been held in the Irrevocable Trust for over 25 years. In about 4 years, the Irrevocable Trust's term will be complete, and Nicole will take fee simple title to the Property. Denise and Daniel sought the advice of a competent estate planner and then followed the IRS's QPRT rules for over 25 years. This is not a "nominee" situation, and there was no fraudulent transfer.

Without a nominee situation (Claim #1) or fraudulent transfer (Claim #2 and Claim #3), Plaintiff's federal tax lien does not attach to the Property. Thus, Plaintiff is not entitled to foreclose because there is no lien that attaches to the Property, and this court should find that Plaintiff cannot foreclose on the Property or order the sale of the Property.

Lastly, the Nicole Defendants emphasize that Plaintiff cannot prevail on its claims for the reasons stated above. However, if the court finds for Plaintiff, then the Nicole Defendants respectfully request that the court not order the sale of the Property by the government. The Nicole Defendants understand that there is a considerable difference between the current fair market value of the Property and the tax basis for the Property. This means that a sale would generate millions of dollars in capital gains that would create new tax liabilities for Denise and Daniel. Thus, the sale of the Property would resolve old tax liabilities at the expense of creating new, massive income tax liabilities for Denise and Daniel.

///

///

///

As such, the Nicole Defendants respectfully request that the Court deny all of Plaintiff's claims and find in full for the Nicole Defendants.

Respectfully submitted,

HOLTZ, SLAVETT & DRABKIN, APLC

DATED:  May 23, 2023                    By:

David J. Warner

Attorney for the Nicole Defendants

## **LOCAL RULE 11-6.2**

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for the Nicole Defendants, certifies that this brief contains 6,927 words, which complies with the word limit of L.R. 11-6.1.

HOLTZ, SLAVETT & DRABKIN, APLC

DATED: May 23, 2023          By: _____

David J. Warner

Attorney for the Nicole Defendants