A. Lavar Taylor, Bar No. 129512
ltaylor@taylorlaw.com
Lisa O. Nelson, Bar No. 259585
lnelson@taylorlaw.com
TAYLOR NELSON AMITRANO LLP
3 Hutton Centre Drive, Suite 500
Santa Ana, CA 92707
(714) 546-0445 Tel
(714) 546-2604 Fax

Attorneys for the Defendants Denise and Daniel Dimacale

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| United States of America, | Case No. 2:21-cv-06012-CBM-RAO |
| Plaintiff, | DEFENDANTS' DENISE DIMACALE AND DANIEL DIMACALE TRIAL BRIEF |
| v. | |
| Denise Dimacale, et al., | Local Rule 16-10 |
| Defendants. | Trial before the Honorable Consuelo B. Marshall |
| | Date:          May 30, 2023 |
| | Time:          8:30 a.M. |
| | Courtroom:   8D |
| | Location:    First Street Courthouse |
| | 350 West First Street |
| | Los Angeles, California |
| And related Cross and Counterclaim Actions | |

i

# **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................. 1

II.  THE "NOMINEE" CAUSE OF ACTION HAS NO MERIT— PLAINTIFF
     CANNOT CARRY ITS BURDEN OF PROOF BECAUSE THE FACTS
     DEMONSTRATE THAT THE TRUST IS NOT ACTING AS THE
     "NOMINEE" OF DENISE .................................................................. 4

III. PLAINTIFF CANNOT PREVAIL ON THE "NOMINEE" CAUSE OF
     ACTION UNLESS PLAINTIFF PROVES THAT THE TRUST HOLDS THE
     SUBJECT PROPERTY AS DENISE'S SOLE AND SEPARATE
     PROPERTY ..................................................................................... 12

IV.  THE FRAUDULENT CONVEYANCE CAUSE OF ACTION HAS NO
     MERIT - PLAINTIFF CANNOT SUSTAIN ITS BURDEN TO SHOW THAT
     THE TRANSFER OF RECORD TITLE TO THE SUBJECT PROPERTY IN
     APRIL OF 2003 WAS A FRAUDULENT TRANSFER UNDER EITHER
     SECTION OF CALIFORNIA LAW ................................................... 18

V.   CONCLUSION ................................................................................. 25

# TABLE OF AUTHORITIES

## Cases

*Artesanias Hacienda Real S.A. de C.V. v. North Mill Capital LLC (In re Wilton Armitale, Inc.),* 968 F.3d 273 (3rd Cir. 2020) ........................... 15

*Dumas v. Mantle (In re Mantle),* 153 F.3d 1082, 1085 (9th Cir. 1998) .......... 16

*Estate of Spirtos v. One San Bernadino County Case Numbered SPR 02211,* 443 F.3d 1172 (9th Cir. 2006) ...................................................... 15

*Ferrante v. Casey (In re Ferrante),* case no. CC-14-1222 (B.A.P. 9th Cir. Aug. 26, 2015) .................................................................................... 11,12

*Fourth Inv. LP v. United States,* 720 F.3d 1058-1070 (9th Cir. 2013) ................... 4,5,6,7

*Goldberg v. Ellett (In re Ellett), 254 F.3d 1135 (9th Cir. 2001)* ...................... 16

*Guevarra v. Whatley (In re Guevarra),* 638 B.R. 120 (9th Cir. BAP 2022) ................... 22

*In re Gustie,* 32 B.R. 466, 473 (Bankr. D. Mass. July 22, 1983), 36 B.R. 473 (D. Mass. 1984) ........................................................................ 20,23

*Herbert v. United States, IRS (In re Herbert),* 1998 Bankr. LEXIS 617 (9th Cir. B.A.P. 1998) ................................................................................... 16

*Johnson v. Johnson,* 192 Cal. App. 3d 551, 555, 556 (1987) ...................... 21

*Nordvik v. Comm'r IRS,* 67 F.3d 1489 (9th Cir. 1994) ......................... 24

*Laycock v. Hammer, 141 Cal. App. 4th 25 (2006)* ......................... 10

*Leeds LP v. United States,* 807 F. Supp. 2d 946, 967 (S.D. Cal. 2011) ....................... 4

*Liodas v. Sahadi,* 19 Cal. 3d 278 (1977) ......................... 18

Majewsky v. Empire Constr. Co., 2 Cal. 3d 478 (1970) ......................... 22

*McGranahan v. Dillard (In re Dillard)*, 2007 Bankr. LEXIS 3836 (E.D. Cal. 2007) .... 21

*Parkmerced Co. v. San Francisco,* 149 Cal. App. 3d 1091 (1983) ......................... 21

*Pergament v. Yerushalmi (In re Yerushalmi),* 487 B.R. 98, 100 (Bankr. E.D.N.Y. 2012) .................................................................................... 11

*Premier Capital Funding Inc. v. Earle (In re Earle),* 307 B.R. 276 (Bankr. S.D. Ala. 2002) ......................... 10

*Schwartz v. United States* (In re Schwartz), 954 F.2d 569, 572 (9th Cir.1992) .................................................................................... 16

*Seay v. Ferrante*, case no. G040346 (Cal. Ct. App. Mar. 27, 2009) ......................... 9,10

*Siegel v. Boston (In re Guar. Sale Corp.),* 220 B.R. 660 (9th Cir. BAP 1998) ............... 20

*Siegel v. Newman (In re Sale Guar. Corp.),* 199 F.3d 1375 (9th Cir. 2000) ................... 22

iii

**<u>Statutes</u>**

Cal. Civ. Code § 3439.04(a)(1) ........................................................................... 20

Cal. Civ. Code § 3439.04(a)(2)(B) .................................................................. 18,20

Cal. Civ. Code §3439.01(a)(4) ........................................................................... 18

11 U.S.C. §362(a) ................................................................................................ 16

**<u>Treasury Regulations</u>**

26 C.F.R. §25.2702-5 ............................................................................................ 8

**<u>Rules</u>**

Internal Revenue Code 1031 ............................................................................... 22

Internal Revenue Code 7481 ............................................................................... 24

Internal Revenue Code 7483 ............................................................................... 24

iv

# I. INTRODUCTION

Pursuant to Local Rule 16-10, Defendants Denise and Daniel Dimacale ("Defendants"), by and through their undersigned counsel, hereby submit this Trial Brief.

Plaintiff, on behalf of the IRS, is attempting to foreclose its lien for unpaid income taxes assessed against Denise Dimacale ("Denise") for the tax year 1996 against real property located at 1794 Port Tiffin Circle Newport Beach, CA 92660 ("the Subject Property"). This property is not owned by Denise. Rather, the Subject Property is owned by an irrevocable trust called the NCD Qualified Personal Residence Trust (the "Irrevocable Trust"). The Irrevocable Trust has owned the Subject Property for more than 25 years. The Subject Property was transferred to the Irrevocable Trust by Denise and Daniel Dimacale ("Daniel") on August 20, 1997, many years before any existing tax liens arose against Denise.

**Importantly, the government does not challenge this August, 1997 transfer of the Subject Property to the Irrevocable Trust by Daniel and Denise as a fraudulent conveyance**. There are good reasons why this is so. At the time of this transfer, neither Daniel nor Denise were aware of any meaningful liabilities other than the mortgage securing the loan they took out to acquire the Subject Property. They consulted with an attorney, Steven Kray ("Attorney Kray"), because they wanted to set up an estate plan for the benefit of their daughter, Nicole. After consulting with Attorney Kray, Daniel and Denise established the Irrevocable Trust and transferred the Subject Property to the

Irrevocable Trust.  They set up the Irrevocable Trust for one reason—to establish an estate plan that provided for their daughter Nicole.

The Irrevocable Trust is a Qualified Personal Residence Trust ("QPRT").  The IRS itself has established special rules governing QPRTs. These special rules, discussed in greater detail below, **require** the grantors/creators of the QPRT to live in the property that is transferred to the QPRT as their residence for the entire term of the QPRT, without paying rent.  (In the present case the term of the QPRT is 30 years ending in 2027.)  These rules also **require** the grantors/creators to pay for the maintenance and upkeep of the residence (e.g., mortgage payments, property taxes, utilities) that is transferred to the QPRT during the term of the QPRT.  These rules also prohibit the QPRT from owning any other assets other than the residence.

In connection with transferring ownership of a residence to the QPRT, the creators of the QPRT must file gift tax returns reflecting the value of the gift to the beneficiary of the QPRT as of the date on which the property is transferred to the QPRT. That gift is the present value of the beneficiary's fee simple interest in the property that becomes effective at the end of the QPRT's term (but which irrevocably vests in the beneficiary when the property is transferred to the QPRT). At the end of the QPRT's term (30 years here), the residence that was transferred to the QPRT is owned outright by the beneficiary of the QPRT (Nicole Dimacale in the present case).

Daniel and Denise, following the creation of the QPRT and the irrevocable transfer of the subject property to the QPRT, complied with the IRS's rules that govern QPRTs.  They filed gift tax returns with the IRS shortly after creating the QPRT reflecting the present value of the vested and irrevocable fee simple ownership of the Subject Property by the trust beneficiary, effective August of 2027.  They have resided in the subject property since creating the QPRT, without paying rent, as required by the QPRT rules. Daniel, who established the QPRT along with Denise has consistently paid the mortgage on the Subject Property during the past 25+ years, as required by the QPRT rules. (Denise has not personally paid these mortgage payments because she has not had a paying job.)  Daniel has also consistently paid the property taxes on the Subject Property, and he has consistently paid the upkeep of and the utilities for the Subject Property during the past 25+ years, as required by the QPRT rules. (Denise has not personally paid these costs because she has not had a paying job.) No property other than the Subject Property has been transferred to the QPRT, as is required by the QPRT rules.

In late 2002, the property owned by the QPRT was refinanced, and record title was temporarily transferred to Denise and then back to the Irrevocable Trust in a period of 24 hours. While there was some "cash out" from this transaction that went to pay the creditors of Daniel and Denise, the amount of "cash out" has been more than repaid by Daniel and Denise as the result of mortgage payments that they have made over the past 20 years. During the last 20 years the Irrevocable Trust has remained the record owner of

3

the Subject Property. At the end of the QPRT's term, in 2027, the Subject Property will

be owned outright by Nicole Dimacale (the beneficiary), and both Daniel and Denise

will no longer have the right to live in the Subject Property.

As is discussed below, the "totality of the circumstances" demonstrates that the

QPRT does not own the Subject Property as the "nominee" of Denise.  Similarly, the

facts demonstrate that Subject Property was never fraudulently conveyed to the QPRT in

April of 2003, which was long after the transfer of the Subject Property to the QPRT in

1997.  Because the Plaintiff cannot carry its burden of proof on either cause of action,

Plaintiff has no lien on the Subject Property on which it could possibly foreclose.

There is no dispute that, unless the Court rules in favor of plaintiff on one of the

causes of action in question, the IRS does not have a lien against the Subject Property.

The Court should thus hold for defendants Daniel and Denise Dimacale on both causes

of action.

## II. THE "NOMINEE" CAUSE OF ACTION HAS NO MERIT— PLAINTIFF CANNOT CARRY ITS BURDEN OF PROOF BECAUSE THE FACTS DEMONSTRATE THAT THE TRUST IS NOT ACTING AS THE "NOMINEE" OF DENISE

Plaintiff cannot prove that the Trust is acting as the "nominee" of

Denise.  The Plaintiff has the burden of proof on this cause of action. *Leeds LP v. United*

*States*, 807 F. Supp. 2d 946, 967 (S.D. Cal. 2011), *aff'd sub nom. Fourth Inv. LP v.*

*United States*, 720 F.3d 1058 (9th Cir. 2013).

In *Fourth Inv. LP, supra*, the Ninth Circuit stated that "a nominee is one who holds bare legal title to property for the benefit of another" (citation omitted). 720 F.3d at 1066. The Ninth Circuit went on to hold that it is state law that applies for purposes of determining whether a third party is the taxpayer's nominee and further held that California Supreme Court "would adopt the uniform set of factors generally recognized by federal courts." *Id.,* at 1069.

The Ninth Circuit then went on to discuss the factors generally relied upon by federal courts when determining whether a third party is acting as the "nominee" of the taxpayer. The Court indicated that the trial court must look at a number of different factors, but further indicated that the "totality of the circumstances" determines whether the third party is acting the taxpayer's nominee, with none of the listed factors being dispositive. 720 F.3d at 1069-1070.

The Ninth's Circuit's admonition that no single factor is dispositive and that it is the "totality of the circumstances" which determines whether a third party is the "nominee" of the taxpayer is important in cases like the present one, where the facts are dramatically different than the facts *Fourth Inv. LP, supra*. One key difference is that, in the present case, Daniel Dimacale, who is a third party not liable for the taxes owed by Denise, is living in the Subject Property, as he is required to do pursuant to the terms of the QPRT. Daniel has the right and obligation to live in the Subject Property, independent of the rights and obligations of Denise. Moreover, it is Daniel Dimacale

who has been paying the mortgage on the Subject Property (as required by the IRS's own rules and the QPRT agreement) and who has been paying the property taxes, utilities and maintenance of the Subject Property for at least 20 years.

It makes no sense to conclude that the Irrevocable Trust holds the Subject Property as the "nominee"" of Denise under these circumstances, *i.e.,* when Daniel has the obligation to reside in the Subject Property along with Denise and when Daniel – not Denise – has been making all of the mortgage payments and paying other expenses relating to the Subject Property.  The government's theory is not supported by the facts.

There are other significant differences between the present matter and the facts in *Fourth Inv. LP v. United States, supra,* which demonstrate that the government's "nominee" theory lacks merit. For example, in the present matter, Daniel and Denise made the initial transfer of the Subject Property to the Irrevocable Trust at a time when they were unaware of any meaningful debts (aside from the mortgage against the Subject Property). They made this transfer after consulting with an attorney about setting up an estate plan for the benefit of their daughter.  **The government is not challenging the transfer of the Subject Property to the QPRT as a fraudulent conveyance.  The government effectively acknowledges that it cannot prove that this transfer, which was an actual transfer of property to the Irrevocable Trust, was a fraudulent conveyance.  Having conceded the validity of the transfer of the Subject Property to**

6

**the Irrevocable Trust for fraudulent conveyance purposes, the government places itself in a difficult position.**

The present circumstances are very different from the circumstances in the *Fourth Inv. LP* case, where the taxpayers (the Ballantynes) engaged in "a series of complex transactions involving shell entities created and controlled by the Ballantynes." 720 F.3d at 1062-1063.  The Ballantynes did not timely record a deed purportedly transferring ownership of the residence and supposedly entered into a "lease" of the residence from the purported owner of the property without paying the rent required under that "lease." *Id.*

Daniel and Denise, by contrast, retained counsel for the purpose of setting up a QPRT, set up the QPRT at a time when they believed that they had no meaningful debts aside from the mortgage on the subject property, and have followed the rules governing QPRTs for the last 26 years.

To further continue the analogy of transferring property to a QPRT to the transferring property to an irrevocable trust while retaining a life estate, assume for sake of argument that Denise (along with Daniel) had retained a life estate in the Subject Property following the 1997 transfer to an irrevocable trust (that was not a QPRT) and that, as is the case here, the government did not challenge the initial transfer of the property to the irrevocable trust. As holders of a life estate, they would have exercised day to day control over the property, could have resided in the property during the entire

term of the life estate, would have paid the mortgage against the subject property during the life estate, and would have paid the property taxes and additional costs of upkeep of the property during the life estate. But those actions would not have supported a conclusion that the irrevocable trust owned the property as Denise's "nominee." Any exercise of "control" over the property during their life estate that was consistent with them owning a life estate would not support a conclusion that the irrevocable trust was a "nominee" of Denise merely based on the exercise of such control.

In the present case, both Daniel and Denise retained the right to live in the Subject Property for 30 years, something less than a life estate. These retained interests were explicitly defined in the Trust Agreement, which imposed affirmative obligations on both Daniel and Denise under rules established by the IRS itself for QPRTs.

Thus, under terms of the Irrevocable Trust and the IRS's own rules, Daniel and Denise were both **required** to live in the Subject Property as their personal residence for 30 years, without paying rent. Treasury Regulation 26 C.F.R. §25.2702-5. Revenue Procedure 2003-42, 2003-1 C.B. 993). Under the terms of the Irrevocable Trust and the IRS's own rules, Daniel and Denise were both **required** to pay the mortgage on the Subject Property and maintain the Subject Property, *i.e.,* pay the property taxes, utilities, etc., during the 30-year period in which they were obligated to reside in the Subject Property. *Id.* Both Daniel and Denise were prohibited from placing any assets in the

QPRT other than the residential property. *Id.* Both Daniel and Denise were required to file gift tax returns and were prohibited from placing any other assets in the QPRT.

An obligation/right to reside in residential property under a QPRT is different from a retained life estate. That is because the owner of a life estate in real property is not **<u>required</u>** to live in that property. Nor is the owner of a retained life estate required to comply with all of the additional assortment of rules and regulations that apply to a taxpayer who is residing in a property owned by a QPRT which they established.

In the present case, both Daniel and Denise complied with the requirements governing QPRTs.  The government has never argued that they did not comply with the requirements governing QPRTs.

Multiple courts have recognized that the creditors of a person who establishes a QPRT and then resides the property held by the QPRT in accordance with the rules governing QPRTs and who otherwise complies with the rules governing QPRTs cannot pierce the QPRT by relying on the fact that the creator of a QPRT complies with those rules. There are at least three cases in which courts have held that creditors of the grantor of a QPRT cannot reach real property held in a QPRT: (1) *Seay v. Ferrante*, (2) *In re Earle*, and (3) *In re Yerushalmi.*  Each of these cases supports the conclusion that, based on the facts of the present case, Daniel and Denise should prevail on this claim.

In *Seay v. Ferrante,* case no. G040346 (Cal. Ct. App. Mar. 27, 2009), a California Court of Appeal addressed the legal effect of setting up a QPRT under California law. In

that case, a creditor of the QPRT's settlor attempted to collect a debt of the settlor from real property held in the QPRT. The California Court of Appeal rejected this attempt, stating that the QPRT is irrevocable and California law provides that a settlor's creditors cannot reach assets in an irrevocable trust. *See Laycock v. Hammer*, 141 Cal. App. 4th 25 (2006). In *Laycock* (quoted by the court in *Seay v. Ferrante*), the California Court of Appeals concluded as follows:

> "[B]y expressly giving settlors' creditors the right to reach only the assets of revocable trusts, the Legislature . . . has clearly indicated an intention that creditors are to be bound by the terms of an irrevocable trust to the same extent settlors, beneficiaries and other claimants are bound by such an instrument."

Id. at 31.

In *Premier Capital Funding Inc. v. Earle (In re Earle),* 307 B.R. 276 (Bankr. S.D. Ala. 2002), a bankruptcy court considered whether the bankruptcy trustee could reach real property held in a debtor's QPRT. In Earle, the bankruptcy trustee alleged that the debtor had either fraudulently transferred the real property into the QPRT or that the QPRT was the debtor's alter ego. The bankruptcy court in *Earle* disagreed with the trustee's assertions, holding that there was no fraudulent transfer upon the creation of the QPRT under Alabama's version of the uniform fraudulent transfers act. *Id.* at 301. The bankruptcy court in *Earle* focused on the IRS's QPRT rules, including (1) the fact that a federal agency (the IRS) prescribed the QPRT rules, (2) there was a completed gift to the

QPRT beneficiary when the debtor settled the QPRT, (3) the real property is transferred from the QPRT to the trust beneficiaries upon completion of the trust term, and (4) the QPRT places restrictions on the use of the property during the trust term. Id. at 291-92. The bankruptcy court in *Earle* concluded as follows regarding the QPRT:

> "A transfer may frustrate and/or incidentally affect a creditor, but that is not enough to prove fraud, particularly where there is a legitimate reason proven for the transfer. Here, that reason was valid estate planning."
>
> *Id.*, at 296.

The case of *Pergament v. Yerushalmi (In re Yerushalmi),* 487 B.R. 98, 100 (Bankr. E.D.N.Y. 2012), also involved an unsuccessful effort by the creditors of the settlor of a QPRT to collect against real property owned by the QPRT. The bankruptcy court in *Yerushalmi* rejected the request to "pierce" the QPRT under New York's alter ego theory, stating that, while the Debtor retained the use and enjoyment of the real property after it was transferred to the QPRT and continued to pay all expenses associated with the [real property], those facts are consistent with the requirements of a valid QPRT.  The grantor of a qualified personal residence trust retains the right to live at the residence rent free but has to pay all costs associated with the residence for the duration of the trust term. *Id.*, at 111-12.[1]

_____

[1] Because Daniel and Denise complied with the rules governing QPRTs, the unpublished opinion in *Ferrante v. Casey (In re Ferrante),* case no. CC-14-1222 (B.A.P. 9th Cir. Aug. 26, 2015), has no application here, In *Ferante v. Casey*, the Bankruptcy Appellate *(footnote cont'd on next page)*

To summarize, the trust is not the "nominee" of Denise. Daniel resides in the Subject Property, as required by the QPRT rules.  It is Daniel, not Denise, who has been making the mortgage payments on the Subject Property.  It is Daniel, not Denise, who has been paying the property taxes o the Subject Property and who has been paying the utilities on the subject property and the general upkeep of the property.  The fact that Denise, along with Daniel, has resided in the Subject Property for the past 26 years, and the fact that Daniel and Denise—through Daniel, have paid the mortgage, property taxes, and other expenses shows only that Denise, along with Daniel, has complied with the rules governing QPRTs.

The government cannot and should not prevail on this cause of action.

## III. PLAINTIFF CANNOT PREVAIL ON THE "NOMINEE" CAUSE OF ACTION UNLESS PLAINTIFF PROVES THAT THE TRUST HOLDS THE SUBJECT PROPERTY AS DENISE'S SOLE AND SEPARATE PROPERTY

At the Pre-Trial Conference, the Court acknowledge that the parties disagree about the elements that must be proven by plaintiff for Plaintiff to prevail on the "nominee" cause of action.  Daniel and Denise contend that the government must prove that the Irrevocable Trust holds the Subject Property as the nominee of Denise as her sole and separate property. The government argues that it only needs to prove that the Irrevocable Trust holds the Subject Property as Denise's nominee, without the need to prove that the

_____

Panel held in an unpublished opinion that the bankruptcy trustee could reach real property in the trust because the trust failed to qualify as a QPRT (the trust contained terms that violated the IRS rules). Ferrante is distinguishable from the facts of this case because the Trust in this case is a valid QPRT that complies with all IRS rules.

Irrevocable Trust holds the subject property as Denise's sole and separate property.   The government is wrong.

The argument in support of the Defendants' position can be summarized as follows. At the time that Daniel filed his Chapter 7 bankruptcy, in March, 2005, ownership of any property that was community property as of the date of the filing of bankruptcy petition became "property of the estate" and was owned by Mr. Joseph, the Bankruptcy Trustee.  Thus, if the Subject Property had been community property at the time of Daniel's filing of the Chapter 7 bankruptcy, the Chapter 7 Trustee could have exercised control over the Subject Property and sold it for the benefit of creditors (which included the IRS). That could have been done without filing a fraudulent conveyance lawsuit.

Furthermore, had the Chapter 7 Trustee successfully asserted that the Subject Property was community property, the filing of the lien notice by the IRS against the Subject Property back in 2005, when the Chapter 7 Trustee's fraudulent conveyance action was pending, would have been void ab initio as a violation of the automatic stay. The Subject Property would have been "property of the estate" which would have been liquidated by the Chapter 7 Trustee, and any efforts by the IRS to collect against that property of the estate would have been void ab initio as violating the automatic stay.

What this means is that the ONLY possible way that the IRS's initial recording of the "nominee" tax lien notice against the Subject Property back in 2005 was valid, given

13

that the "nominee" tax lien notice was recorded while the Chapter 7 Trustee was pursuing the first fraudulent conveyance action, was if its "nominee" theory was that the Irrevocable Trust was holding the Subject Property as Denise's sole and separate property.  Had the IRS's theory been that the Irrevocable Trust was holding the Subject Property as the "nominee" of Denise as community property, the Subject Property would have been "property of the bankruptcy estate" under the actual control of the Chapter 7 Trustee, and the recording of the nominee tax lien notice would have been a violation of the automatic stay and therefor void, if the nominee theory was correct.[2]

Stated differently, any property that was held by Denise as her sole and separate property as of the date of Daniel's bankruptcy petition did not become property of the bankruptcy estate and could not be pursued by the Chapter 7 Trustee in Daniel's bankruptcy. Accordingly, the IRS could only avoid violating the automatic stay by pursuing the Subject Property on a "nominee" theory if its theory was that the Irrevocable Trust was holding the Subject Property as the "nominee" of Denise as her sole and separate property.

Given these circumstances, the IRS should only be able to prevail now if it can prove that the Irrevocable Trust holds the Subject Property as the nominee of Denise as her sole and separate property. Any other ruling by the Court would impermissibly allow the IRS to play fast and loose with the federal courts by allowing the IRS to rely on a

---

[2] The Chapter 7 Trustee's complaint alleged that the Subject Property was the sole and separate property of Denise.

theory now that, if successful would have prevented the IRS from ever pursuing the
Subject Property in the first place because the Chapter 7 Trustee would have exercised
legal control over the Subject Property.

There are four important principles of bankruptcy law that underly this conclusion.
First, a chapter 7 trustee represents all creditors and is supposed to take possession of all
"property of the estate" and liquidate that property for the benefit of creditors.   The
chapter 7 trustee also owns all lawsuits existing as of the date of the bankruptcy. *See, e.g,*
*Estate of Spirtos v. One San Bernadino County Case Numbered SPR 02211*, 443 F.3d
1172 (9th Cir. 2006), *Artesanias Hacienda Real S.A. de C.V. v. North Mill Capital LLC
(In re Wilton Armitale, Inc.),* 968 F.3d 273 (3rd Cir. 2020). Thus, it was the Chapter 8
Trustee who had the exclusive right and power to pursue assets of the Bankruptcy Estate,
including lawsuits.

Thus, in the present case, it was ONLY the Chapter 7 Trustee who had the right to
both exercise control over all "property of the estate" as defined in section 541(a) of the
Bankruptcy Code and to pursue pre-bankruptcy causes of action for the benefit of
community creditors.  *Id., see also " Commodity Futures Trading Comm'n v. Weintraub,*
471 U.S. 343, 352, (1985); *In re Moore,* 110 B.R. 924, 927 (Bankr. C.D. Cal. 1990).

Second, all community property that exists on the date one spouse files a chapter 7
bankruptcy petition becomes "property of the estate" that is administered by the Chapter
7 bankruptcy trustee. *See, e.g.,   Dumas v. Mantle (In re Mantle),* 153 F.3d 1082, 1085

15

(9th Cir. 1998).  Thus, if one spouse files for Chapter 7 Bankruptcy in a community property state such as California, all community property belongs to the Chapter 7 Trustee.  *Brace v. Speier (In re Brace),* 908 F.3d 531 (9th Cir. 2018)**.**  The only property owned by either spouse that does not become property of the bankruptcy estate to be liquidated by the Chapter 7 Trustee for the benefit of creditors of the spouse that filed bankruptcy AND creditors of the community is the sole and separate property of the spouse that did not file for bankruptcy.  *Id.*

Third, any action by a pre-petition creditor to collect against property of the bankruptcy estate is a violation of the automatic stay imposed by Bankruptcy Code §362(a). *Goldberg v. Ellett (In re Ellett),* 254 F.3d 1135 (9th Cir. 2001). Thus, had the Subject Property being pursued by the Chapter 7 Trustee in his fraudulent conveyance action been community property, the efforts by the IRS to perfect a lien against the Subject Property would have violated the automatic stay, and the IRS's violations of the automatic stay would have been sanctionable.  *See Herbert v. United States, IRS (In re Herbert),* 1998 Bankr. LEXIS 617 (9th Cir. B.A.P. 1998).

Fourth, any action taken by a creditor in violation of the automatic stay is void ab initio. *Schwartz v. United States* (*In re Schwartz*), 954 F.2d 569, 572 (9th Cir.1992). Thus, had the IRS attempted to pursue any property that was "property of the estate" in Daniel's chapter 7 bankruptcy case, those actions would have been void.

16

This leads to the conclusion that the IRS must prove that the Irrevocable Trust holds the Subject Property as the Nominee of Denise as her sole and separate property. That is the only theory that could have prevented the Chapter 7 Trustee from exercising complete control over the Subject Property back in 2005/2006. In other words, had the IRS not argued that the Subject Property was held by the Irrevocable Trust as the nominee of Denise as her sole and separate property, the Chapter 7 Trustee would have owned the property and the IRS would not have been able to pursue the Subject Property today.

Of course, plaintiff's evidence will not prove that the Irrevocable Trust holds the Subject Property as the nominee of Denise, for the reasons articulated above.  In the present situation, where a) Daniel is living in the Subject Property (and is required to do so), b) Daniel is the only person who has been making the mortgage payments, and c) Daniel is the only person who has been paying the property taxes and providing for the upkeep of the Subject Property, it is not possible for plaintiff to prove that the Irrevocable Trust holds the Subject Property as the "nominee" of Denise as her sole and separate property.

**IV. THE FRAUDULENT CONVEYANCE CAUSE OF ACTION HAS NO MERIT - PLAINTIFF CANNOT SUSTAIN ITS BURDEN TO SHOW THAT THE TRANSFER OF RECORD TITLE TO THE SUBJECT PROPERTY IN APRIL OF 2003 WAS A FRAUDULENT TRANSFER UNDER EITHER SECTION OF CALIFORNIA LAW**

Plaintiff bears the burden of proving all of the necessary elements to establish that there was a fraudulent transfer from Denise to the Irrevocable Trust in April of 2023 under California Civil Code § 3439.01(a)(4).   *See Liodas v. Sahadi*, 19 Cal. 3d 278 (1977).  Plaintiff similarly bears the burden of proving the elements of a fraudulent conveyance under California Civil Code § 3439.04(a)(2)(B).  Plaintiff cannot meet this burden.

Plaintiff's fraudulent conveyance action is extremely unusual given the facts of this case.  The Subject Property was actually transferred from Daniel and Denise to the Irrevocable Trust back in August of 1997, some 26 years ago.  That is the only real transfer of property that occurred.  Daniel and Denise did not seek to hide that transfer from the IRS.  Indeed, they both filed gift tax returns with IRS to reflect the value of the gift associated with this transfer. The government does not seek to set aside this particular transfer as a fraudulent conveyance.

In 2002, the Subject Property was refinanced.  For a very short time, record title to the Subject Property was transferred out of the name of the Irrevocable Trust to facilitate the refinancing.  This was done because it was not otherwise possible to refinance the then-existing loan secured by the Subject Property.  The transfer of record title out of

Irrevocable Trust and then back into the Irrevocable Trust was done for one reason, and one reason only, to obtain more favorable loan terms (interest rate). The intent of all involved was that the Irrevocable Trust would remain the owner of the Subject Property.

The government does not seek to set aside the transfer of record title to the Subject Property back to the Irrevocable Trust in connection with refinancing as a fraudulent conveyance.

Finally, there was the transfer of record title to the Subject Property out of the Irrevocable Trust and then back to the Irrevocable Trust (after a short period of time) to obtain a HELOC to be used for maintaining and improving the Subject Property. The process of obtaining the HELOC began in January of 2003, and on March 14, 2003 record title was temporarily transferred out the name of the Irrevocable Trust. That same day a deed of trust in favor of the lender which extended the HELOC. For reasons unknown, record title to the Subject Property was not transferred back to the Irrevocable Trust until April 23, 2003.

All relevant parties intended for the Irrevocable Trust to remain the beneficial owner of the Subject Property, and that intent is supported by the objective facts. For the next 20 years, record title to the Subject Property remained in the name of the Irrevocable Trust, where it remains today. Daniel and Denise complied with all of the requirements to maintain a valid QPRT during that same 20-year period.

Obtaining the HELOC for that purpose was consistent with the requirement that Daniel and Denise pay for the maintenance and upkeep of the Subject Property during the term of the QPRT.  Transfer of record title was done in order to obtain the HELOC.

There an important fact that defeats both of the government's fraudulent conveyance causes of action, both the "actual intent to defraud" cause of action brought under California Civil Code § 3439.04(a)(1)  and the "constructive fraud" cause of action brought under Cal. Civ. Code § 3439.04(a)(2)(B), namely that only record title was transferred out of the Irrevocable Trust, and only Record title was transferred back to the Irrevocable Trust.  In other words, no property (other than bare legal title) was transferred back to the Irrevocable Trust on April 23, 2003.  Because no property was transferred at that time, there was no fraudulent conveyance.

California law, along with additional case law, supports this result.  For an example of a case outside of California where a court concluded that there was no fraudulent conveyance because the transfer in question was only a transfer of record title, not of beneficial ownership, see *In re Gustie,* 32 B.R. 466, 473 (Bankr. D. Mass. July 22, 1983) ("In conclusion, I find that Joseph Gustie did not fraudulently convey the Weston property to Frank and Isabelle Gustie because Joseph held only bare record title to the property. His financial condition was not affected by either receipt of or by the retransfer of title."), *affirmed,* 36 B.R. 473 (D. Mass. 1984). That is the precise situation in the present case.

Under California law, the same result follows. Notably, it is possible to transfer base legal title to property, without transferring actual ownership, even in a tax context. *See Parkmerced Co. v. San Francisco*, 149 Cal. App. 3d 1091 (1983). In *Parkmerced*, bare legal title to real property was transferred from a corporation to a new corporation and then back to the original corporation as part of a merger. The California Court of Appeal held that the transfer out and back to the original owner was a transfer of "bare legal title" whereas beneficial ownership stayed with the original corporation. *Id.* The corporations always intended for the first corporation to be the beneficial owner. As such, the transfer of bare legal title was not a "transfer" that required reassessment of property taxes (the taxes at issue in Parkmerced). *Id.*

This principle has been recognized by at least one trial court in the context of a refinancing of the property at issue, based on principles endorsed by the California Supreme Court.  The trial court's opinion can be found at *McGranahan v. Dillard (In re Dillard)*, 2007 Bankr. LEXIS 3836 (E.D. Cal. 2007).   In *Dillard*, the trial court stated that California courts will impose a resulting trust in cases where the beneficial owner allows record title to be placed in the name of another so the beneficial owner is able to obtain financing that would be unavailable if title had been placed in the beneficial owner's name, citing *Johnson v. Johnson,* 192 Cal. App. 3d 551, 555, 556 (1987).

The result in Dillard was based on the concept of a "resulting trust," where title to property is held in the name of a third party but beneficial ownership of that property

21

remains with the "true owner." This concept was discussed by the California Supreme Court in the case of *Majewsky v. Empire Constr. Co.,* 2 Cal. 3d 478 (1970).

The result in *Dillard* was recently relied on by the 9th Circuit Bankruptcy Appellate Panel in *Guevarra v. Whatley (In re Guevarra),* 638 B.R. 120 (9th Cir. BAP 2022). In that case, the Court acknowledged that, where the debtor went on title to the property in question to facilitate a purchase of the property by a third party, there was a resulting trust in favor of the beneficial owner of the property at issue. (The debtor had failed to timely preserve this argument on appeal and was raising this argument in the context of asking the Court to allow an amendment of his exemptions.)

This concept was previously endorsed by the Bankruptcy Appellate Panel and the Ninth Circuit in the case of *Siegel v. Boston (In re Guar. Sale Corp.),* 220 B.R. 660 (9th Cir. BAP 1998), *aff'd, Siegel v. Newman (In re Sale Guar. Corp.),* 199 F.3d 1375 (9th Cir. 2000), in a slightly different tax context. In *Siegel*, a company that acted as an accommodator of tax-free exchanges of real property under section 1031 of the Internal Revenue Code filed for Chapter 7 bankruptcy at a time when the company had legal ownership of the real properties that its clients were seeking to exchange under section 1031. The Bankruptcy Appellate Panel and the Ninth Circuit held that the beneficial ownership of the subject real properties remained with the customers of the section 1031 facilitator, based on the notion of a resulting trust, notwithstanding that legal ownership was in the name of bankrupt company.

22

The most important factor in these cases is the intent of the parties. Where transfer of legal title was not intended to transfer beneficial ownership, the parties attempting to rely on bare record title to get anything more than bare legal title all lost.  The parties who had beneficial ownership prevailed, even though they did not have legal title.

In the present case, all of the evidence supports the conclusion that the Irrevocable Trust retained beneficial ownership of the Subject Property at all times.  Thus, the deed transferring record title back to the Irrevocable Trust on April 23, 2003 did not transfer anything to the Trust other than bare legal title.  In the absence of the transfer of any property, there can be no fraudulent conveyance under either section of the California Civil Code relied upon by Plaintiff. *See, e.g., In re Gustie, supra.*

There is an additional flaw in the government's theory that the April 23, 2003 deed was recorded to defraud creditors.  There is no meaningful evidence of fraudulent intent.  The factual circumstances surrounding this transfer of record title, discussed above, do not support a finding that there was any intent to defraud. The evidence shows that it was intended that beneficial ownership remain with the Irrevocable Trust at all times.

There is an additional flaw in the government's theory that the April 23, 2003 deed was a "constructive" fraudulent conveyance.  The process of obtaining the HELOC began in January of 2003, and the transfer of record title out of the irrevocable Trust occurred in March of 2003, before the Tax Court entered the stipulated decision and that

23

decision became final in September of 2003. The transfer of record title back to the Irrevocable Trust, viewed in that context, did not affect the net worth of Denise at all.

Furthermore, because Denise more likely than not did not owe the tax amounts reflected in the stipulated decision, she acquired a malpractice action against the attorney who advised her to give up in the Tax Court action at the point in time that she irrevocably gave up her right to challenge the asserted taxes for the years 1996/1997. Thus, assuming arguendo that the April 23, 2003 deed actually transferred something of value, there was no change in her net worth as the result of her concession of the Tax Court case.  Notably, that concession did not become final until 90 days after the entry of the Tax Court's decision. See Internal Revenue Code §§ 7481, 7483, *Nordvik v. Comm'r IRS,* 67 F.3d 1489 (9th Cir. 1994).  The decision was entered on April 1, 2003, and the stipulated decision became final on July 3, 2003, well after the recordation of the deed on April 23, 2003.

The government's fraudulent conveyance theories are not supported by the facts. The intent of all of the relevant parties was that the Irrevocable Trust remain the owner of the Subject Property the entire time.  The deed recorded on April 23, 2003 merely transferred bare record title back to the Irrevocable Trust, where it has remained for over 20 years.

Given that there was not fraudulent conveyance and true ownership of the Subject Property has remained with the Irrevocable Trust for many, many years, the liens of the

IRS against Denise Dimacale do not attach to the subject property. Thus, the Subject Property cannot be sold by the IRS.

## V. CONCLUSION

The government's theories have no merit. It is not possible for the Irrevocable Trust to be the "nominee" of Denise based on the facts of this case, when it is Daniel, not Denise, who has been paying the mortgage payments, property taxes, utilities and general maintenance of the Subject Property, and when Daniel was also a party to the QPRT and is required to live in the Subject Property for the 30 year term of the QPRT.

The government's fraudulent conveyance theory likewise lacks any merit. The government is not seeking to set aside the transfer of the subject property from Daniel and Denise to the Irrevocable Trust (QPRT) made in 1997.  Nor is the government seeking to set aside the transfer of record title to the Irrevocable Trust in connection with the refinancing of the loan against the Subject Property in 2002, which was not intended to alter the Trust's ownership of the Subject Property.

The government instead focuses only on a transfer of record title that was done to facilitate obtaining a home equity line of credit, a process that started in January of 2003. This was not a substantive transfer of the property.  It was a transfer of record title only to facilitate obtaining a home equity line of credit. No substantive "transfer" of property occurred.  And even if the Court were to treat this transfer of record title as a "transfer" of property, the government cannot prove that the transfer was fraudulent under the relevant California statutes.

Finally, Daniel and Denise emphasize that they have a strong motive to oppose the government's efforts to sell the Subject Property to pay Denise's taxes aside from their desire to make good on their legal promise to their daughter when they established the QPRT back in 1997. Should the government prevail in their efforts to sell the Subject Property, a sale of the Subject Property will generate several millions of dollars in capital gains, generating additional very large federal and California income tax liabilities. The tax basis of the Subject Property is low, as it was purchased for $888,000.00. See stipulation of facts at ¶4. The value of the Subject Property is much higher, so a sale of the Subject property would likely satisfy Denise's federal tax liability.

But any such sale would also generate a seven-figure taxable capital gain. Denise (and possibly Daniel) would go from the frying pan to the fire and would be saddled with new, very large, income tax liabilities that would likely haunt them for the rest of their lives.

Respectfully submitted,

Taylor Nelson Amitrano LLP

Dated:  May 23, 2023          /s/A. Lavar Taylor
                             A. LAVAR TAYLOR

                             Attorney for Defendants, Denise and Daniel
                             Dimacale

26

## <u>LOCAL RULE 11-6.2</u>

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for the Defendants, Denise and Daniel Dimacale certifies that this brief contains 6,978 words, which complies with the word limit of L.R. 11-6.1.

Respectfully Submitted,

Taylor Nelson Amitrano LLP

Dated:  May 23, 2023       <u>/s/A. Lavar Taylor</u>
A. LAVAR TAYLOR
Attorney for Defendants, Denise and Daniel Dimacale

27

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF ORANGE

On May 23, 2023, I served the documents named below on the parties in this action as follows: **DEFENDANTS' DENISE DIMACALE AND DANIEL DIMACALE TRIAL BRIEF** on the following parties in this action by transmitting electronically a true copy of thereof to the following email addresses:

| Party | Represented By | Service Via Email At |
|-------|----------------|----------------------|
| Plaintiff United States of America | Gavin L. Greene, AUSA | Gavin.greene@usdoj.gov |
| Defendant Nicole Dimacale | David Warner | dwarner@hsdtaxlaw.com |
| Defendant Franchise Tax Board | John Keith Deputy Attorney General | john.keith@doj.ca.gov |

To the best of my knowledge, the transmission was reported as complete, and no error was reported that the electronic transmission was not complete.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare that I am employed in the office of a member of the bar of this court at which direction the service was made.

Executed on May 23, 2023 at Santa Ana, California.



_____
Lisa O. Nelson

28